IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
                                         )
RESOLUTE FP CANADA INC.,                 )
                 Plaintiff,              )
                                         )
        v.                               )        Court No. 23-00095
                                         )
UNITED STATES,                           )
                 Defendant,              )
                 and                     )
COMMITTEE OVERSEEING ACTION FOR          )
LUMBER INTERNATIONAL TRADE               )
INVESTIGATIONS OR NEGOTIATIONS;          )
AND SIERRA PACIFIC INDUSTRIES            )
                                         )
                 Defendant-Intervenors.  )
_____  )

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

                                    BRIAN M. BOYNTON
                                    Principle Deputy Assistant Attorney General

                                    PATRICIA M. McCARTHY
                                    Director

                                    CLAUDIA BURKE
                                    Deputy Director

OF COUNSEL:                         STEPHEN C. TOSINI
Jared M. Cynamon                    Senior Trial Counsel
U.S. Department of Commerce         U.S. Department of Justice
Office of the Chief Counsel         Civil Division
  for Trade Enforcement and Compliance   Commercial Litigation Branch
Washington, D.C.                    P.O. Box 480, Ben Franklin Station
Telephone: (202) 353-0521           Washington, D.C. 20044
                                    Tel.: (202) 616-5196
                                    Email: stephen.tosini@usdoj.gov

February 26, 2024                   Attorneys for the United States

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 .......................................................................2

I.    Administrative Decision Under Review .................................................................2

II.   Issues Presented for Review .................................................................................3

STATEMENT OF FACTS .......................................................................................................3

ARGUMENT .........................................................................................................................6

I.    Standard of Review ..............................................................................................6

II.   Commerce's Final Results Are Supported By Substantial Evidence And In Accordance
      With Law .............................................................................................................7

      A.    Legal Framework ........................................................................................8

      B.    Commerce's Determination That Revocation Of The Order Would Likely Lead
            To The Continuation Or Recurrence Of Dumping Is Supported By Substantial
            Evidence And In Accordance With Law ........................................................9

      C.    Commerce Correctly Declined To Consider Individual Issues From Underlying
            Proceedings, Such As Differential Pricing Methodology, Relevant To Its
            Analysis And Lawfully Issued Final Results on An Order-Wide Basis ...............10

            1.    Resolute's Contentions Regarding The Correct Margins To Report
                  Ignore The Legal Framework For Sunset Reviews ...................................10

            2.    Commerce Lawfully Followed The Statute And Legislative History To
                  Assess Whether Revocation Would Likely Lead To Continuation Of
                  Dumping On An Order Wide Basis .......................................................12

III.  Commerce Lawfully Determined That Good Cause To Consider Other Factors Pursuant
      To 19 U.S.C. § 1675a(c)(2) Did Not Exist And Determined It Would Be In Error To
      Report To The ITC A *De Minimis* Dumping Margin For Resolute ...............................15

      A.    Commerce Did Not Abuse Its Discretion .......................................................15

      B.    Commerce Acted Reasonably In Conducting Its Sunset Review ..........................18

CONCLUSION .....................................................................................................................21

**Cases**

*American Silicon Technologies v. United States,*
    273 F. Supp. 2d 1342 (Ct. Int'l Trade 2003) ............................................................... 16

*Bowles v. Seminole Rock & Sand Co.,*
    325 U.S. 410 (1945) ..................................................................................................... 6

*Consol. Fibers, Inc. v. United States,*
    535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) ............................................................... 6

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) ..................................................................................................... 5

*Corus Staal BV v. Dep't of,*
    *Com.,* 395 F.3d 1343 (Fed. Cir. 2005).......................................................................... 17

*Dillinger Huttenwerke v. United States,*
    193 F. Supp. 2d 1339 (Ct. Int'l Trade 2002) ........................................... 10, 11, 18, 19

*Dongtai Peak Honey Indus. Co. v. United States,*
    777 F.3d 1343 (Fed. Cir. 2015) ................................................................................... 6

*Fujitsu Gen. Ltd. v. United States,*
    88 F.3d 1034 (Fed. Cir. 1996) ..................................................................................... 5

*Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States,*
    28 F.Supp. 3d 1317 (Ct. Int'l Trade 2014) ................................................................. 6

*Koyo Seiko Co. v. United States,*
    551 F.3d 1286 (Fed. Cir. 2008) ................................................................................. 17

*Matsushita Elec. Indus. Co. v. United States,*
    750 F.2d 927 (Fed. Cir. 1984) ..................................................................................... 5

*Mid Continent Steel & Wire, Inc. v. United States,*
    31 F.4th 1367 (Fed. Cir. 2022) ................................................................................... 16

*Mid Continent Steel & Wire, Inc. v. United States,*
    940 F.3d 662 (Fed. Cir. 2019) ................................................................................... 15

*Mid Continent Steel & Wire, Inc. v. United States,*
    No. 15-00213, 2024 WL 546362 (Ct. Int'l Trade Feb. 12, 2024) ............................ 15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................. 18

*Murray v. Schooner Charming Betsy*,
    6 U.S. 64 (1804) .................................................................................... 17

*NMB Sing. Ltd v. United States*,
    557 F.3d 1316 (Fed. Cir. 2009) ............................................................. 18

*Sahaviriya Steel Indus. Pub. Co. v. United States*,
    649 F.3d 1371 (Fed. Cir. 2011) ............................................................. 14

*SKF USA, Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2011) ............................................................... 6

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) .......................................................... 15, 16

*Stupp Corporation v. United States*,
    619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) ........................................ 15

*Timken Co. v. United States*,
    354 F.3d 1334 (Fed. Cir. 2004) ............................................................. 17

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ................................................................................ 6

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ................................................................................ 5

**Statutes**

19 U.S.C. § 1675a(c) ................................................................... *passim*

19 U.S.C. § 1675(c) ......................................................... 7, 10, 19

19 U.S.C. § 1675(d) ............................................................... 13, 14

19 U.S.C. § 1677f-1(c)(1) ................................................................ 12

19 U.S.C. § 3511(a) ......................................................................... 12

19 U.S.C § 3512(c)(1) ...................................................................... 17

19 U.S.C. § 3512(d) ......................................................................... 12

**Regulations**

19 C.F.R. § 351.218(b) ....................................................................... 7

19 C.F.R. § 351.308(f) ........................................................................................................ 19

**Administrative Decisions**

*Certain Preserved Mushrooms from Chile, India, Indonesia, and the People's Republic of
China: Final Results of the Expedited Third Sunset Reviews of the Antidumping Duty Order*s,
80 Fed. Reg. 39,053 (Dep't of Commerce July 8, 2015). ......................................................... 20

*Certain Softwood Lumber Products from Canada: Final Results of the Expedited First Sunset
Review of the Antidumping Duty Order,*
88 Fed. Reg. 20,479 (Dep't of Commerce Apr. 6, 2023)...................................................... 1, 2

*Certain Steel Nails From the Republic of Korea, Malaysia, Taiwan, and the Socialist Republic of
Vietnam: Final Results of the Expedited First Sunset Reviews of the Antidumping Duty
Orders,*
85 Fed. Reg. 194 (Dep't of Commerce Oct. 6, 2020) ....................................................... 15, 16

*Continuation of Countervailing and Antidumping Duty Orders on Oil Country Tubular Goods
From Argentina, Italy, Japan, Korea and Mexico, and Partial Revocation of Those Orders
From Argentina and Mexico With Respect to Drill Pipe,*
66 Fed. Reg. 38,630 (Dep't Commerce July 25, 2001)............................................................ 13

*Corrosion Resistant Carbon Steel Flat Products from Germany and the Republic of Korea:
Final Results of Full Sunset Reviews,*
77 Fed. Reg. 72.827 (Dep't of Commerce Dec. 6, 2012)......................................................... 19

*Initiation of Five-Year (Sunset) Reviews,*
87 Fed. Reg. 73,757 (Dep't of Commerce Dec. 1, 2022)........................................................... 2

*Persulfates from the People's Republic of China: Notice of Final Results of Expedited Second
Sunset Review of Antidumping Duty Order,*
73 Fed. Reg. 11,868 (Dep't of Commerce Mar. 5, 2008). ......................................................... 8

*Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and
Countervailing Duty Orders; Policy Bulletin,*
263 Fed. Reg. 18,871 (Dep't of Commerce Apr. 16, 1998)....................................................... 7

*Proposed Modification to Regulation Concerning the Revocation of Antidumping and
Countervailing Duty Orders*;
76 Fed. Reg. 15,233 (Dep't Commerce Mar. 21, 2011).......................................................... 13

*Welded Line Pipe From the Republic of Korea and the Republic of Turkey: Final Results of the
Expedited First Sunset Reviews of the Antidumping Duty Orders,*
86 Fed. Reg. 12,172 (Dep't of Commerce Mar. 2, 2021)86 Fed. Reg. ..................................... 15

Other Authorities

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,
    H.R. Doc. 103-316, Vol. 1 (1994) .........................................................................3

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
                                        )
RESOLUTE FP CANADA INC.,                )
                                        )
           Plaintiff,                   )
                                        )
           v.                           )      Court No. 23-00095
                                        )
UNITED STATES,                          )
                                        )
           Defendant,                   )
                                        )
           and                          )
                                        )
COMMITTEE OVERSEEING ACTION FOR         )
LUMBER INTERNATIONAL TRADE              )
INVESTIGATIONS OR NEGOTIATIONS;         )
AND SIERRA PACIFIC INDUSTRIES,          )
                                        )
           Defendant-Intervenors.       )
_____)

## **ORDER**

Upon consideration of plaintiff's motion for judgment on the administrative record,

defendant's response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied and, it is further

ORDERED that the Department of Commerce's Final Results are sustained and, it is

further

ORDERED that judgment is entered for the United States.


Dated: _____        _____
            New York, NY                         SENIOR JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

_____
                                                            )
RESOLUTE FP CANADA INC.,                 )
                                                            )
       Plaintiff,                                    )
                                                            )
       v.                                              )      Court No. 23-00095
                                                            )
UNITED STATES,                                   )
                                                            )
       Defendant,                                  )
                                                            )
       and                                           )
                                                            )
COMMITTEE OVERSEEING ACTION FOR   )
LUMBER INTERNATIONAL TRADE          )
INVESTIGATIONS OR NEGOTIATIONS;     )
AND SIERRA PACIFIC INDUSTRIES,        )
                                                            )
       Defendant-Intervenors.                 )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

       Defendant, the United States, respectfully responds to Resolute FP Canada Inc.'s

(Resolute) motion for judgment on the administrative record, challenging the Department of

Commerce's (Commerce) final results of the first expedited sunset review of the antidumping

duty order on softwood lumber from Canada.  The Court should deny Resolute's motion because

Commerce lawfully declined to depart from the statutory framework to retroactively reconsider

methodologies applied in earlier completed segments of the proceeding.

**STATEMENT PURSUANT TO RULE 56.2**

**I.**      **Administrative Decision Under Review**

       The administrative determination under review is *Certain Softwood Lumber Products*

*from Canada:  Final Results of the Expedited First Sunset Review of the Antidumping Duty*

*Order*, 88 Fed. Reg. 20,479 (Dep't of Commerce Apr. 6, 2023) (P.R. 46) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM) (P.R. 45).

## II.    <u>Issues Presented for Review</u>

1.    Whether Commerce lawfully conducted the sunset review to determine that revocation of the order would be likely to lead to the continuation or recurrence of dumping and lawfully provided the International Trade Commission (ITC) with the magnitude of the dumping margin likely to prevail if the order were revoked.

2.    Whether Commerce abused its discretion where it found that, under 19 U.S.C. § 1675a(c)(2), there was insufficient good cause to consider "other factors" in analyzing whether revocation of the order would likely lead to a continuation or recurrence of dumping and reasonably found no basis to report to the ITC a *de minimis* dumping margin for Resolute.

**STATEMENT OF FACTS**

Commerce initiated the first sunset review of the order. *Initiation of Five-Year (Sunset) Reviews*, 87 Fed. Reg. 73,757 (Dep't of Commerce Dec. 1, 2022). The agency notified the ITC that it had not received an adequate substantive response because Resolute (the only participating respondent) did not establish that it made up 50 percent of total exports of Canadian softwood lumber to the United States. P.R. 31; IDM at 1 n4; 19 C.F.R. § 351.218(e)(1)(ii)(A). Commerce thus conducted an expedited, 120-day, sunset review "based on the facts available." 19 C.F.R. § 351.218(e)(1)(ii)(C)(2); IDM at 2. Resolute and Sierra Pacific submitted case briefs, PR 36, 40; and Resolute, Sierra Pacific and COALITION filed rebuttal briefs. PR 41-43. After reviewing the record, Commerce continued the antidumping duty order on softwood lumber from Canada pursuant to 19 U.S.C. § 1675a(c). *Final Results*, 88 Fed. Reg. at 20,480.

Commerce followed the framework set forth in 19 U.S.C. § 1675a(c) and assessed whether revocation would likely lead to the continuation of dumping on an order-wide basis, and determined the magnitude of the dumping margin likely to prevail if the order were revoked. IDM at 8. Relying on its normal methodology, Commerce compared softwood lumber import volumes from the year before imposition of the order (2015) to lumber import volumes after imposition, reasoning that behavior of Canadian softwood lumber producers may have been influenced by the Softwood Lumber Agreement's expiration. *Id*. at 9. Further, Commerce found it baseless to revoke the order as a whole solely on the basis of Resolute's disagreement with the agency's differential pricing methodology, which is subject to pending litigation. *Id*. at 9-18. Commerce also found no good cause warranting consideration of "other price, cost, market, or economic factors as it deems relevant," 19 U.S.C. § 1675a(c)(2), in assessing whether revocation would be likely to lead to continuation or recurrence of dumping. *Id*. at 18. Commerce explained that it was not compelled to recalculate margins from the investigation and administrative reviews and report to the ITC a *de minimis* rate for Resolute. *Id*. at 18, 21-22.

In the investigation, Commerce had found dumping and assigned weighted-average dumping margins ranging from 3.20 percent to 7.28 percent to the respondents (including a rate of 3.20 percent to Resolute). *Id.* at 3. Commerce also had calculated *de minimis* margins for the three subsequent administrative reviews, including 4.92 percent for Canfor in the most recently completed review. *Id*. at 4. Commerce reasoned that entries made "after the issuance of the *Order* were subject to above *de minimis* rates," and thus, because where dumping margins continue to exist, "it is reasonable to assume that dumping would continue if the discipline of the order were removed." *Id*. at 18 (citing Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA) at 890).

Commerce also examined evidence of softwood lumber imports for the periods before and after the issuance of the order and compared import volumes from the year before initiation of the investigation (2015) with the sunset review period (2016-2020 comparison period). *Id*. at 18-19; *see* 19 U.S.C. § 1675a(c)(1)(B). Although import volumes of softwood lumber have fluctuated by up to 13 percent following imposition of the order, import volumes had remained relatively constant or higher during the comparison period. *Id*. at 19; PR 22 at 18, 19, Attachment B. Therefore, given the continued existence of above *de minimis* margins throughout the administrative reviews, Commerce concluded that respondents would be unable to sell at pre-order volumes without dumping. *Id.*; *see also* SAA at 890 (explaining that "{i}f companies continue to dump without the discipline of an order in place it is reasonable to assume that dumping would continue if the discipline were removed."). Commerce thus determined that dumping would likely continue or recur in response to revocation.

Next, Commerce reviewed the magnitude of the dumping margin likely to prevail if the order were revoked and determined that revocation likely would result in a continuation or recurrence of dumping at the magnitude of a weighted-average dumping margin of up to 7.28 percent. *Id.* at 21-22. In the underlying investigation, Commerce had assigned the following dumping margins: 7.28 percent (Canfor); 3.20 percent (Resolute); 7.22 percent (Tolko Industries Ltd. and Tolko Marketing & Services, Ltd.); 5.57 percent (West Fraser Mills); and 6.04 percent (all others). *Id*. at 3, 21-22. Thus, in line with its typical practice, Commerce determined that the weighted average dumping margins from the final determination in the original investigation best represented the margins likely to prevail if the order were revoked because these rates were the only calculated rates reflecting pre-order behavior. *Id*. at 21-22.

Lastly, Commerce concluded that good cause did not exist compelling it to consider any margins other than those from the investigation and previous administrative reviews. *Id*. Resolute had re-raised contentions from earlier segments that Commerce had unlawfully applied its differential pricing analysis. Commerce explained that this methodology remains subject to pending litigation and has been sustained by this Court and the Court of Appeals for the Federal Circuit under circumstances similar to this case. *Id*. at 9-18. Thus, there was no basis to report to the ITC a *de minimis* dumping margin that was not calculated for the investigation. *Id*.

## ARGUMENT

### I. Standard of Review

In reviewing antidumping duty determinations, the Court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

The possibility of drawing two inconsistent conclusions from the evidence in the record does not preclude Commerce's determination from being supported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Moreover, Commerce is accorded deference in antidumping duty determinations. *See, e.g., Fujitsu*, 88 F.3d at 1039 ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.")

Furthermore, Commerce's statutory "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (citation omitted). Similarly, an agency's interpretation of an ambiguous term in its regulation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

Lastly, the Court reviews Commerce's conduct of its administrative proceedings for abuse of discretion. *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343, 1350 (Fed. Cir. 2015); *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 28 F.Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014) (citation omitted). The Court "(1) must consider whether {Commerce's} decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and (2) analyze whether a rational connection exists between {Commerce's} factfindings and its ultimate action." *Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1352-54 (Ct. Int'l Trade 2008). "An Agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently." *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2011) (citation omitted).

## II.    Commerce's Final Results Are Supported By Substantial Evidence And In Accordance With Law

Commerce lawfully concluded that revocation would likely lead to the continuation of dumping, and reasonably determined that the magnitude of dumping likely to prevail if the order were revoked would be up to the highest margin determined in the investigation. Commerce conducted its review pursuant to the statute, congressional intent, and regulations, and there was no basis to revisit the results of earlier proceedings as Resolute suggests.

A.     **Legal Framework**

The purpose of a sunset review is to assess whether "revocation of an antidumping . . . duty order . . . would be likely to lead to continuation or recurrence of dumping . . . and of material injury." 19 U.S.C. § 1675(c); 19 C.F.R. § 351.218(b). Further, 19 U.S.C. § 1675a(c)(1)(A) and (B) provide that Commerce shall consider the weighted-average dumping margins determined in the investigation and subsequent reviews, as well as the volume of imports of the subject merchandise for the period before and the period after the issuance of an order. 19 U.S.C. § 1675a(c)(1)(A)-(B).

The guidance provided by the legislative history accompanying the Uruguay Round Agreements Act, specifically the SAA, the House Report, and the Senate Report explains that Commerce's determinations of the likelihood of recurrence of dumping are made on an order-wide, rather than a company-specific, basis. IDM at 5 (citing SAA; H. Rep. No. 103-826, pt. 1 (1994) (House Report); S. Rep. No. 103-412 (1994) (Senate Report)). The legislative history outlines that "the revocation of an order is likely to lead to continuation or recurrence of dumping when: (a) dumping continued at any level above *de minimis* after the issuance of the order; (b) imports of the subject merchandise ceased after the issuance of the order; or (c) dumping was eliminated after the issuance of the order and import volumes for the subject merchandise declined significantly." *Id*. (citing SAA at 889-90; House Report at 63-64; Senate Report at 52; and *Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders; Policy Bulletin*, 63 Fed. Reg. 18,871, 18,872 (Dep't of Commerce Apr. 16, 1998) (Policy Bulletin)).

Commerce normally determines that revocation of an order is *not* likely to lead to continuation or recurrence of dumping where dumping was eliminated after issuance of the order

and import volumes remained steady or increased.  *Id*. (citing SAA at 889-90; House Report at

64).  Commerce also generally selects the weighted-average dumping margins from the final

determination in the original investigation, as these rates are the only calculated rates that reflect

the behavior of exporters without the discipline of an order in place.  *Id*. (citing SAA at 890); *see*

*also Persulfates from the People's Republic of China:  Notice of Final Results of Expedited*

*Second Sunset Review of Antidumping Duty Order*, 73 Fed. Reg. 11,868 (Dep't of Commerce

Mar. 5, 2008) and accompanying IDM at Comment 2.  Lastly, a "zero or *de minimis* shall *not* by

itself require" Commerce to determine that revocation of an order would not be likely to lead to a

continuation or recurrence of dumping.  19 U.S.C. § 1675a(c)(4)(A) (emphasis added).

### B. Commerce's Determination That Revocation Of The Order Would Likely Lead To The Continuation Or Recurrence Of Dumping Is Supported By Substantial Evidence And In Accordance With Law

Commerce lawfully assessed whether revocation would likely lead to the continuation of

dumping on an order-wide basis, and determined the magnitude of the margin of dumping likely

to prevail if the order were revoked.  IDM at 8.  Relying on its normal sunset methodology

adhering closely to the statute, Commerce compared softwood lumber import volumes from the

year before imposition of the order (2015) to softwood lumber import volumes during the sunset

period because it was reasonable to assume that the behavior of producers of softwood lumber in

Canada may have been influenced by the expiration of the Softwood Lumber Agreement.  *Id*. at

9.  Further, Commerce found revocation of the order as a whole solely on the basis of Resolute's

disagreement with the agency's differential pricing methodology to be baseless.  *Id*. at 9-18.

Commerce also found no good cause warranting consideration of other factors beyond its normal

analysis of whether revocation would be likely to lead to continuation or recurrence of dumping.

*Id*. at 18.  And Commerce explained that it was not compelled to review margins other than those

calculated in the underlying investigation and administrative reviews and report to the ITC a *de minimis* rate specific only to Resolute.  *Id*. at 18, 21-22.

Resolute does not contend that Commerce failed to follow its normal methodology.  And as a result, it must meet its heavy burden of demonstrating that the agency abused its discretion by declining to "consider[] relevant," 19 U.S.C. § 1675a(c)(2), factors beyond those enumerated in the statute, based solely on the suggestion that earlier segments of the proceeding were wrong.

### B. Commerce Correctly Declined To Consider Individual Issues From Underlying Proceedings, Such As Differential Pricing Methodology, Relevant To Its Analysis And Lawfully Issued Final Results on An Order-Wide Basis

Based entirely on its disagreement with the differential pricing methodology, Resolute contends that the sunset review is flawed because of the use of differential pricing in the investigation and further argues that Commerce should have conducted a company-specific review to find that revocation would not likely lead to a recurrence or continuation of dumping as to Resolute.  Resolute Br. 15-24.  Resolute contends that:  (1) without the use of the differential pricing methodology in the investigation, Commerce would have never found dumping as to Resolute, and therefore could not have imposed an antidumping order on Resolute; and (2) Commerce should have made a Resolute-specific finding on the likelihood of the continuation or recurrence of dumping and by proceeding on an order-wide basis, Commerce acted arbitrarily.  *Id*. at 15-24.  Resolute's assertions are misplaced and incorrect.

### 1. Resolute's Contentions Regarding The Correct Margins To Report Ignore The Legal Framework For Sunset Reviews

Commerce reasonably conducted the sunset review under the statute and its typical practice to determine that dumping would likely continue or recur.  First, Resolute misapprehends the purpose of sunset reviews and attempts to relitigate issues from individual segments of this proceeding, some of which are currently pending before a Binational Panel, in

the context of a sunset review. Resolute Br. at 15-21; *In the Matter of Certain Softwood Lumber Products from Canada: Final Affirmative Determination of Sales at Less than Fair Value*, USA-CDA-2017-1904-03 (October 5, 2023) (NAFTA Report). This approach frustrates the purpose of sunset reviews, which is separate and distinct from administrative reviews or investigations.

First, the purpose of sunset reviews is to assess whether revocation of an order would likely lead to the continuation of dumping, and the magnitude of the margin of dumping likely to prevail if the order were revoked based on certain enumerated factors. 19 U.S.C. § 1675(c). Here, Commerce analyzed the record pursuant to the statute and determined that dumping would likely continue or recur in response to revocation, explaining that it is unlikely that respondents would be able to sell at pre-order volumes without dumping because Commerce had found dumping in the investigation and past three administrative reviews. IDM at 9-18. Commerce also found that the margins likely to prevail were up to the highest margin found in the underlying investigation, up to 7.28 percent. *Id*. at 21-22. Commerce thus conducted the sunset review in accordance with the statute, congressional intent, and regulations.

Getting to the core of its argument, Resolute treats sunset reviews as opportunities to relitigate "the weighted average dumping margins determined in the investigation and subsequent reviews." 19 U.S.C. § 1675a(c)(1)(A). Of course, if Congress had envisioned Commerce revisiting individual calculational decisions from earlier segments, it would not have limited the "good cause" paragraph to "*other* price, cost, market, or economic factors as it deems relevant." 19 U.S.C. § 1675a(c)(2) (emphasis added). Following this understanding, the Court has explained that a "sunset review does not provide for recalculation of the original {} rate such that duties on entered imports that were subject to the order must be revised retroactively." *AG der Dillinger Huttenwerke v. United States*, 193 F. Supp. 2d 1339, 1353 (Ct. Int'l Trade 2002).

Instead, Resolute must timely litigate disagreements regarding Commerce's differential pricing methodology following release of the final determination in the investigation, *see* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (2)(B)(iii). Indeed, Resolute is acutely aware of how to challenge the final determination in the investigation and any underlying calculation issues, such as differential pricing.

Further, Commerce's differential pricing methodology, in general, is in active litigation in various actions, so it is *not* the case that merely by challenging the validity of the investigation margin (determined in part based on the differential pricing analysis) Resolute has somehow demonstrated that the margin is *per se* unusable. Despite Resolute's disagreement, the use of differential pricing methodology in the investigation and the resulting company-specific margin are not up for debate in a sunset review five years later. Resolute identifies no authority suggesting that Commerce must reassess margins calculated in investigations or other segments of a proceeding during sunset reviews, nor does it cite any authority suggesting that Commerce should not rely on the margins established in the investigation when conducting sunset reviews. Rather, Commerce relies on margins determined in the investigation because they reflect the behavior of exporters without the discipline of an order in place. IDM at 5-6. This approach is consistent with Commerce's practice as well as with the SAA. *Id*; SAA at 890.

## 2. Commerce Lawfully Followed The Statute And Legislative History To Assess Whether Revocation Would Likely Lead To Continuation Of Dumping On An Order-Wide Basis

Resolute contends that Commerce should have conducted the sunset review on a company-specific basis. Resolute Br. at 18-24. Resolute asserts that: (1) it is entitled to a company-specific determination in the sunset review; and (2) Commerce abused its discretion by not conducting a company specific review within its sunset review. *Id*. This is wrong.

Resolute contends that Commerce unreasonably conducted the sunset review on an order-wide basis and should have made a company-specific finding for Resolute. Resolute Br. at 18-24. This is an incorrect, or at least incomplete, reading of the statute. As an initial matter, the SAA explicitly provides that "Commerce and the Commission will make their sunset determinations on an order-wide, rather than a company-specific, basis." SAA at 879. Commerce also explained that its analysis whether the revocation would likely lead to a continuation of dumping would occur on an order-wide basis. IDM at 5, 7. Resolute identifies no authority controverting the SAA's express language. Rather, "the Congress approve{d}" the SAA explicitly in statutory text, 19 U.S.C. § 3511(a), and directed that the "statement of administrative action approved by the Congress under section 3511(a) of this title shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Resolute also conflates the requirement to "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise" in administrative reviews with the requirement to report to the ITC the margins likely to prevail if an order is revoked in a sunset review. Resolute Br. at 18-19 (citing 19 U.S.C. § 1677f-1(c)(1) and 19 U.S.C. § 1673d(c)(B)(i)(I)-(II), which cover only investigations and administrative reviews). Rather than Resolute's irrelevant cites, 19 U.S.C. § 1675a(c)(3) provides that Commerce shall report the magnitude of the margins that are likely to prevail if orders are revoked and that Commerce "shall normally choose a margin that was determined under section 1673d {investigations} of this title or under subsection (a) or (b)(1) of section 1675 {administrative and changed circumstances reviews} of this title." 19 U.S.C. § 1675a(c)(3);

IDM at 21-22. Here, Commerce followed the section 1675a(c)(3) framework, and all margins exceed *de minimis* levels. *Id*. at 18-19. Commerce determined that "given the continued existence of margins calculated above *de minimis* in the past three most recently completed administrative reviews . . ., as well as dumping found in the initial investigation . . ., it is unlikely that respondents would be able to sell at pre-*Order* volumes without dumping." *Id*. at 19.

Lastly, Resolute argues that Commerce should follow *Oil Country Tubular Goods* and revoke as to Resolute because Commerce had previously partially revoked an order and thus Commerce may revoke an order on a company-specific basis. Resolute Br. at 21-24, citing *Continuation of Countervailing and Antidumping Duty Orders on Oil Country Tubular Goods From Argentina, Italy, Japan, Korea and Mexico, and Partial Revocation of Those Orders From Argentina and Mexico With Respect to Drill Pipe*, 66 Fed. Reg. 38,630 (Dep't Commerce July 25, 2001) (*Oil Country Tubular Goods*). Resolute ignores the context and reasoning behind that atypical determination. The partial revocation did not remove a specific company from the orders. Instead, because the ITC had found in its parallel sunset review that the scope covered two like products and that revocation of the order with respect to one like product (drill pipe) would not be likely to lead to continuation or recurrence of material injury, Commerce revoked the order as to that like product. *Id*. at 38,630 n.7.

Resolute also recognizes that Commerce amended its sunset review regulations in 2011 and explained that it did not interpret 19 U.S.C. § 1675(d)(1) to include company-specific revocations. *Proposed Modification to Regulation Concerning the Revocation of Antidumping and Countervailing Duty Orders*; 76 Fed. Reg. 15,233, 29,877 (Dep't Commerce Mar. 21, 2011) ("the use of the word ''may'' {in 19 U.S.C. § 1675(d)(1)} indicates that revocations under this section of the Act, whether in whole or in part, are not required … and {Commerce} is not

14

required to interpret it to include company-specific revocation"). The Federal Circuit has also

sustained the interpretation that 19 U.S.C. § 1675(d) permits the conditional revocation of an

exporter or producer. *Sahaviriya Steel Indus. Pub. Co. v. United States*, 649 F.3d 1371, 1376

(Fed. Cir. 2011) ("This court concludes that § 1675(d) is ambiguous and that Commerce

reasonably interpreted § 1675(d) to permit the conditional revocation of an exporter or

producer"). Thus, Commerce need not conduct sunset reviews on a company-specific basis.

## III. Commerce Lawfully Determined That Good Cause To Consider Other Factors Pursuant To 19 U.S.C. § 1675a(c)(2) Did Not Exist And Determined It Would Be In Error To Report To The ITC A *De Minimis* Dumping Margin For Resolute

There is no good cause to give Resolute a do-over of earlier segments of the proceeding

based on its disagreement on differential pricing. Nevertheless, Resolute contends that

Commerce: (1) failed to revisit Resolute's rate from the investigation and arbitrarily rejected

Resolute's "good cause" showing under 19 U.S.C. § 1675a(c)(2); and (2) did not address

"extraordinary circumstances" compelling a *de minimis* margin. *Id.* Resolute's claims are

flawed, and the final results are supported by substantial evidence and in accordance with law.

### A. Commerce Did Not Abuse Its Discretion

Resolute contends that "good cause" to examine additional factors exists solely because

of its desire to revisit Commerce's reliance on the differential pricing methodology in the

investigation and, but for this methodology, Resolute's dumping margin would have been *de*

*minimis*. The calculation of Resolute's margin in the underlying investigation was lawful and

remains intact despite ongoing litigation, and Commerce found dumping by Resolute and others

at above *de minimis* levels. *Id.* at 18. Resolute nevertheless contends that Commerce abused its

discretion by not accounting for purported: (1) changes in jurisprudence, (2) differences in

statistical scholarship; and (3) World Trade Organization (WTO) jurisprudence. *Id*. at 25-37.

Resolute's assertions involving the Cohen's d test in its differential pricing methodology and its relationship to the Federal Circuit's decisions in *Stupp* and *Mid Continent* do not advance its cause. IDM at 16-18 (discussing *Stupp Corp. v. United States*, 5 F.4th 1341, 1357-60 (Fed. Cir. 2021); *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 667 (Fed. Cir. 2019)). Notably, the Court's concerns in *Stupp* and *Mid Continent* were specific to the facts of those cases and it merely remanded for further explanation. *Id*. at 16; *see Stupp*, 5 F.4th at 1357-60. Importantly, the Federal Circuit has *not* set aside Commerce's use of the Cohen's d test. IDM at 16; *Stupp*, 5 F.4th at 1360. Rather, after Commerce provided the ordered explanation, this Court has in both cases sustained Commerce's redeterminations in which the agency has continued to apply its differential pricing analysis. *Stupp Corporation v. United States*, 619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023), *appeal docketed*, No. 23-1663 (Fed. Cir. Mar. 27, 2023); *Mid Continent Steel & Wire, Inc. v. United States*, No. 15-00213, 2024 WL 546362, at *9 (Ct. Int'l Trade Feb. 12, 2024) ("Commerce has provided a reasonable explanation for its use of a simple average as instructed by the Court of Appeals and this Court.").

Accordingly, the use of differential pricing in individual segments cannot create good cause to consider any evidence other than the typical record created in sunset reviews pursuant to 19 U.S.C. § 1675a(c)(2). Commerce has completed sunset reviews in other proceedings where differential pricing methodology was also an issue in the investigation. *See e.g., Certain Steel Nails From the Republic of Korea, Malaysia, Taiwan, and the Socialist Republic of Vietnam: Final Results of the Expedited First Sunset Reviews of the Antidumping Duty Orders*, 85 Fed. Reg. 194 (Dep't of Commerce Oct. 6, 2020); *see also Welded Line Pipe From the Republic of Korea and the Republic of Turkey: Final Results of the Expedited First Sunset Reviews of the Antidumping Duty Orders*, 86 Fed. Reg. 12,172 (Dep't of Commerce Mar. 2, 2021). This case is

not special, nor does it meet the "good cause" standard. Resolute's assertion that Commerce must find good cause because of ongoing litigation in other proceedings is immaterial to Commerce's obligations when conducting the sunset review in the present case.

Next, Resolute attaches an expert report prepared for the purpose of Commerce proceedings to contend that academic literature questions the validity of using the Cohen's d test for international trade analysis, and allegedly the use of the Cohen's d test as the basis of a targeted dumping analysis is flawed. Resolute Br. at 34-35. Commerce addressed and rejected this contention, highlighting differences between the records in the administrative reviews of this proceeding and this sunset review, and both *Stupp* and *Mid Continent*. IDM at 16-18. In particular, in *Stupp*, certain academic literature had led the Federal Circuit to question whether the statistical criteria identified by plaintiff were relevant to Commerce's application of the Cohen's d test. IDM at 17; *Stupp*, 5 F.4th at 1357-60. Whereas, in *Mid Continent*, the Federal Circuit understood that other academic literature might undermine Commerce's simple average preference. IDM at 17; *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367, 1377-81 (Fed. Cir. 2022). As noted above, this Court has sustained Commerce's remand redeterminations in *Stupp* and *Mid Continent*, with respect to the use of a simple average. And although not final, those decisions support Commerce's use of the Cohen's d test here. In any event, no such evidence is on the record of the completed administrative reviews, or this sunset review. IDM at 17. Commerce thus determined that there was no academic literature on the record that might warrant "good cause" under 19 U.S.C. § 1675a(c)(2). *See American Silicon Technologies v. United States,* 273 F. Supp. 2d 1342, 1346 (Ct. Int'l Trade 2003) (where Commerce's action has not been overturned, a presumption of accuracy attaches). Resolute's argument that the statistical literature provides good cause is unconvincing.

Third, Resolute alleges good cause under the *Charming Besty* doctrine because the WTO has ruled that certain applications of the differential pricing methodology, including the use of zeroing in calculating dumping margins under the average to transaction method, are inconsistent with the United States' obligations under the Antidumping Agreement. Resolute Br. at 35-36; *Murray v. Schooner Charming Betsy*, 6 U.S. 64, 118 (1804); *see U.S.-Large Residential Washers* (*Korea*), WT/DS464/AB/R (adopted Sept. 26, 2016). This is unavailing.

WTO decisions are irrelevant to United States courts. "No person other than the United States" "(B) may challenge, in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States, any State, or any political subdivision of a State on the ground that such action or inaction is inconsistent with such agreement." 19 U.S.C § 3512(c)(1); *see also Timken Co. v. United States*, 354 F.3d 1334, 1344 (Fed. Cir. 2004). "The determination whether, when, and how to comply with {WTO decisions} involves delicate and subtle political judgments that are within the authority of the Executive and not the Judicial Branch." *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1291 (Fed. Cir. 2008). Further, "WTO findings are not self-executing under U.S. law," and the Federal Circuit has held that WTO reports are without effect under United States law, "unless and until such a ruling has been adopted pursuant to the specified statutory scheme" established by statute. *Corus Staal BV v. Dep't of Com.*, 395 F.3d 1343, 1349 (Fed. Cir. 2005)

In sum, Resolute's claim that there are other grounds for "good cause" lack merit.

## B. Commerce Acted Reasonably In Conducting Its Sunset Review

Resolute relatedly contends that "extraordinary circumstances" existed, due to the use of differential pricing methodology in the investigation, and therefore, Commerce should have reported to the ITC a zero margin for Resolute. Resolute Br. at 43-46. Resolute maintains that

"under the most extraordinary circumstances," Commerce may "rely on dumping margins . . . other than those it calculated and published in its prior determinations." this claim that the "*most extraordinary circumstances*" exist is also flawed. As previously discussed, Commerce determined that good cause did not exist to review margins other than those calculated in the investigation and administrative reviews, much less the "*most* extraordinary circumstances.*"

The use of the differential pricing in the investigation cannot amount to the "most extraordinary circumstances" given that Commerce found a lack of good cause on the same issue, and Commerce reasonably addressed Resolute's argument that the agency should report a zero margin to the ITC based on the differential pricing issue. IDM at 21; *NMB Sing. Ltd v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) ("Commerce must explain the basis for its decisions; while its explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court.").

Moreover, Resolute's cases are inapposite. *Dillinger* and the *Gov't of Uzbekistan* do not compel Commerce to use Resolute's unsubstantiated margin in this case. Resolute Br. at 44 (citing *Dillinger*, 193 F. Supp. 2d 1339; *Gov't. of Uzbekistan. v United States*, Ct. No. 08-00392, Slip Op. 01-114, 9-10 n. 5 (Ct. Int'l Trade Aug. 30, 2001) (*Gov't. of Uzb.*)).

*Dillinger* concerned a full sunset review, and the rejection of untimely information concerning grants, characterized as non-recurring benefits, that extended beyond the continuance of the sunset review. *Dillinger,* 193 F. Supp. 2d at 1345. Importantly, *Dillinger* distinguished full and expedited sunset reviews and confirmed that expedited reviews are based on facts available. *Dillinger,* 193 F. Supp. 2d at 1348 (expedited sunset reviews "based on facts available," because "{i}f parties provide no or inadequate information in response to a notice of

initiation, it is reasonable to conclude that they would not provide adequate information if the agencies conducted a full-fledged review."); *see also* SAA at 879-80.  Here, Commerce found Resolute's attempted substantive response  "inadequate because Resolute provided no information supporting that it made up 50 percent of total exports of softwood lumber to the United States."  IDM at 1 n.4 (citing 19 C.F.R.§ 351.218(e)(1)(ii)(A)).  As a result, Commerce determined it had only received inadequate responses from respondents, and therefore, conducted an expedited sunset review, and relied on facts available.  IDM at 2 (citing 19 U.S.C. § 1675(c)(3)(B)).  As such, the regulations provide that Commerce will "normally will rely on: (1) calculated countervailing duty rates or dumping margins, as applicable, from prior Department determinations; and (2) Information contained in the parties' substantive responses to the Notice of Initiation."  19 C.F.R. § 351.308(f).

Furthermore, what Resolute calls "actual margins" are merely its preferred, unsuccessful, margins from earlier segments.  Commerce considered the "actual margins" from the investigation."  IDM at 21.  And in any event, *Dillinger* undercuts Resolute's argument:  "A sunset review does not provide for recalculation of the original [] rate such that duties on entered imports that were subject to the order must be revised retroactively."  193 F. Supp. 2d at 1358.

*Gov't. of Uzbekistan* involved the dissolution of the Soviet Union, Uzbekistan's emergence as an independent country, and how to address a suspension agreement with respect to former Soviet Republics.

Additionally, *Carbon Steel Flat Products* and *Preserved Mushrooms* are inapposite.  *See* Resolute Br. at 44-45 (citing *Corrosion Resistant Carbon Steel Flat Products from Germany and the Republic of Korea:  Final Results of Full Sunset Reviews*, 77 Fed. Reg. 72.827 (Dep't of Commerce Dec. 6, 2012), and accompany IDM at 4; and *Certain Preserved Mushrooms from*

*Chile, India, Indonesia, and the People's Republic of China: Final Results of the Expedited Third Sunset Reviews of the Antidumping Duty Order*s, 80 Fed. Reg. 39,053 (Dep't of Commerce July 8, 2015) and accompanying IDM at 13). In both situations, Commerce had determined that its zeroing methodology was no longer consistent with its WTO obligations and implemented changes reflective of that determination. However, the same "extraordinary circumstances" that Resolute claims to be present in this case are absent because the differential pricing methodology used in the investigation remains lawful in the United States.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain the final results and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principle Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ CLAUDIA BURKE
Deputy Director

OF COUNSEL:
Jared M. Cynamon
Attorney
U.S. Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement and Compliance
Washington, D.C.
Telephone: (202) 353-0521

/s/ STEPHEN C. TOSINI
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-5196
Email: stephen.tosini@usdoj.gov

February 26, 2024

Attorneys for the United States

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this motion contains 5,836 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Stephen C. Tosini