IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RESOLUTE FP CANADA INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS; AND SIERRA PACIFIC INDUSTRIES <br><br> Defendant-Intervenors. | Court No. 23-00095 |

## **ORDER**

Upon consideration of plaintiff's motion to stay, defendant's response, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied.

.

Dated: _____          _____
       New York, NY                              SENIOR JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RESOLUTE FP CANADA INC., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 23-00095 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS; AND SIERRA PACIFIC INDUSTRIES | ) |
| Defendant-Intervenors. | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STAY**

Defendant, the United States, respectfully responds to Resolute FP Canada Inc.'s (Resolute) motion to stay. ECF No. 41. Contending that an issue raised in the original investigation is now before the Court of Appeals for the Federal Circuit, Resolute seeks a re-do of the Department of Commerce's (Commerce) original antidumping duty investigation in this sunset review, five years after the original investigation determination became final.[1] The Court should deny Resolute's motion because the subject of the pending appeal is irrelevant to the sole question presented here – whether Commerce lawfully concluded that revocation of the antidumping duty order on softwood lumber from Canada would lead to continued dumping.

---

[1] Resolute challenged the final determination in the investigation before a North American Free Trade Agreement binational panel under 19 U.S.C. § 1516a(g). That matter remains pending.

**ARGUMENT**

I.    **Standard Of Review**

"{S}tays pending appeal are an extraordinary and disfavored remedy." *Gerald Metals, Inc. v. United States*, 27 F. Supp. 2d 1351, 1354 n.6 (Ct. Int'l Trade 1998); *see also Hyundai Elecs. Co. v. United States*, 53 F. Supp. 2d 1334, 1336 n.2 (Ct. Int'l Trade 1999) (quotation omitted). Indeed, "{o}nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Thus, a party seeking a stay bears the burden to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*. Thus, "a movant must make a strong showing that a stay is necessary and that the disadvantageous effect on others would be clearly outweighed." *Georgetown Steel Co. v. United States*, 259 F. Supp. 2d 1344, 1346-1347 (Ct. Int'l Trade 2003).

II.    **Resolute Has Not Shown That Staying This Case Is Warranted**

Resolute contends that Commerce wrongly calculated its dumping margin in the original investigation using the agency's differential pricing methodology. Mot. at 4. Resolute then speculates that it would have received a *de minimis* dumping margin but for Commerce's application of its differential pricing methodology and, therefore, Commerce cannot find that it would "have continued or resumed to dump in the event of the revocation of the AD order." *Id*. at 4-5. Accordingly, Resolute contends that the Federal Circuit's decision in *Stupp* "could be" dispositive in this case. *Id.* Resolute's claims depend on an incorrect interpretation of 19 U.S.C. § 1675(a)(c)(2) and do not support a stay.

As an initial matter, Resolute does not contest that Commerce applied the preferred statutory sunset review methodology but, instead, contends that the agency should have found "good cause" under 19 U.S.C. § 1675a(c)(2), to re-calculate its antidumping duty rate from the investigation, because the Court of Appeals for the Federal Circuit is currently hearing an appeal that might upset this Court's affirmance of the differential pricing analysis. *See* Mot. at 7 (citing *Stupp Corp. v. United States*, 619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023), *appeal docketed* No. 23-1663 (Mar. 27, 2023)). Rather than being dispositive, any future decision in *Stupp* will have no bearing on the issue in this dispute.

To be sure, the Court has stayed cases due to pending appeals where "both cases raise the same general issue." *SKF USA Inc. v. United States*, 36 C.I.T. 842, 844 (2012). But those cases are inapposite. Unlike the zeroing cases that *Resolute* cites, including *SKF*, Mot. at 7, Commerce's decision here stems from straightforward application of 19 U.S.C. § 1675a(c)(1). Under that statute, in a sunset review, Commerce "shall determine whether revocation of an antidumping duty order or termination of a suspended investigation under section 1673c of this title would be likely to lead to continuation or recurrence of sales of the subject merchandise at less than fair value." The statute then directs that Commerce "shall consider--(A) the weighted average dumping margins determined in the investigation and subsequent reviews, and (B) the volume of imports of the subject merchandise for the period before and the period after the issuance of the antidumping duty order." *Id*. The statute allows a limited exception to the two considerations above, directing that, "[i]f good cause is shown, the administering authority shall also consider such other price, cost, market, or economic factors as it deems relevant." 19 U.S.C. § 1675a(c)(2). The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA) explained that "[o]nly under the most extraordinary

4

circumstances should Commerce rely on dumping margins. . . other than those it calculated and published in its prior determinations." SAA, H.R. Doc. 103-316, at 891 (1994), reprinted in 1994 U.S.C.C.A.N. 4163 at 4214.  And the existence of a methodology that is subject to a judicial challenge is not a "most extraordinary circumstance."  Indeed, it was fully reasonable for Commerce not to find the existence of a challenge to its differential pricing analysis "relevant" or "most extraordinary" given that this opens the door to recalculating all of the weighted-average dumping margins identified in section 1675a(c)(1) based on all methodologies that have changed over the life of an order or that are subject to Court challenges.

Similarly, the only antidumping authority supporting "good cause" under section 1675a(c)(2) that Resolute identified in its brief involved the dissolution of the Soviet Union, which was subject to the underlying orders, and the emergence of new nations.  *See* Resolute Br. at 26 (citing *Techsnabexport v. United States*, 515 F. Supp. 2d 1363, 1370 (Ct. Int'l Trade 2007)); *id*. at 44 (citing *Government of Uzbekistan v. United States*, 25 Ct. Int'l Trade 1084, 1087 n. 5 (2001)).  The unique circumstances involving the dissolution of the Soviet Union and emergence of new nations are not present in this case.

In addition to misapplying the "good cause" language in the statute, Resolute misapprehends how Commerce makes its determinations in sunset reviews.  This is significant, because Resolute's allegations fail to establish a *prima facie* case for the revocation. As explained in our response brief, Commerce lawfully assesses whether revocation of an order would be likely to lead to continuation or recurrence of dumping on an order-wide basis.  *See* USG Resp. Br. at 12-15; SAA at 879 ("Commerce and the Commission will make their sunset determinations on an order-wide, rather than a company-specific, basis.").  Yet Resolute does not assert that a final decision in *Stupp* will impact the likelihood of continuation or recurrence of

dumping on an order-wide basis – rather, Resolute contends only that *its* margin of dumping would have been zero or *de minimis* but for application of Commerce's differential pricing analysis. *See* Mot. at 4. But that is not the relevant standard and, thus, further underscores that *Stupp* is irrelevant to this case.[2]

In sum, Resolute has not demonstrated that the most extraordinary circumstances warranting a departure from 19 U.S.C. § 1675a(c)(1) exist, which is the central issue in this litigation. Conversely, the question in *Stupp* is whether Commerce's use of the Cohen's *d* test is reasonable when certain statistical criteria are not met. *See*, *e.g.*, "Statement of the Issue," Nonconfidential Brief for Defendant-Appellee United States, *Stupp* ECF No. 64. Thus, this case does not present the "same general issue" as *Stupp*. *SKF*, 36 C.I.T. at 844.

Notwithstanding that *Stupp* and this case present different issues, the caselaw supports Commerce's use of the Cohen's *d* test,[3] and this Court has issued numerous decisions, without staying proceedings, despite the ongoing nature of the *Stupp* litigation. *See, e.g., SeAH Steel Corp. v. United States*, 619 F. Supp. 3d 1309, 1313 (Ct. Int'l Trade 2023) (denying motion for reconsideration despite arguments that *Stupp* applied); *Garg Tube Exp. LLP v. United States,* No.

---

[2] Although the outcome in *Stupp* is not dispositive here, it is speculative for Resolute to assume that its margin could be zero or *de minimis* as a result of the *Stupp* litigation. The relevant statutory provision, 19 U.S.C. § 1677f-1(d)(1)(B), which permits Commerce to apply the alternative comparison methods remains in effect regardless of whether Commerce applies the Cohen's *d* test as part of its differential pricing analysis. Accordingly, no interested party can prejudge how 19 U.S.C. § 1677f-1(d)(1)(B) wouldbe implemented if Commerce were to abandon the Cohen's *d* test, let alone the outcome of such analysis respect to Resolute.

[3] The most recent court decisions in litigation challenging the Cohen's *d* test have sustained its use. *See*, *e.g., Stupp Corp.*, 619 F. Supp. 3d 1314, *appeal docketed* No. 23-1663 (Mar. 27, 2023); *Marmen Inc. v. United States*, 627 F. Supp. 3d 1312, 1322 (Ct. Int'l Trade 2023), *appeal docketed* No. 23-1877 (May 11, 2023); *NEXTEEL Co., Ltd. v. United States*, 676 F. Supp. 3d 1345, 1357 (Ct. Int'l Trade 2023) (now final); and *Mid Continent Steel & Wire, Inc. v. United States*, 680 F. Supp. 3d 1346 (Ct. Int'l Trade 2024), *appeal docketed* No. 24-1556 (Mar. 11, 2024).

21-00169, 2024 WL 1636521 (Ct. Int'l Trade Apr. 8, 2024) (declining to treat *Stupp* as an intervening judicial decision that would warrant excusing a party from its failure to exhaust its administrative remedies). While Resolute cites *Histeel* as an instance in which the Court stayed proceedings in consideration of *Stupp*, Mot. at 11 (citing *Histeel Co., Ltd. v. United States*, 653 F. Supp 3d 1341 (Ct. Int'l Trade 2023)), that case involved an administrative review in which Commerce's application of the differential pricing analysis was directly at issue. In contrast, Commerce did not apply the differential pricing analysis in the context of the sunset review challenged here. Rather, the central issue here is Commerce's determination that revocation of the order would likely lead to a continuation or recurrence of dumping, a determination that Commerce makes on an order-wide, rather than company-specific, basis. *See* SAA at 879.

Resolute's pleas to judicial economy and alleged lack of harm are similarly unavailing. Mot. at 10-12. Indeed, Resolute filed its summons on May 8, 2023, ECF No. 1, six weeks *after* Stupp had appealed from its final judgment. Resolute did not ask to stay the case at that time and, as a result, the Court and parties have had to expend significant resources that they would not have had to but for Resolute's decision to wait a year before raising *Stupp* as a reason for a stay. Now this case is fully briefed and ripe for decision after a possible argument. Accordingly, most of the parties' work in this case is already completed, rendering a stay unnecessary.

In any event, a stay will not conserve party resources. Even if *Stupp* were relevant, which it is not, the stay contemplated by Resolute would simply expend rather than preserve party and judicial resources. Notably, the stay proposed by Resolute is not contingent on final *and conclusive* resolution of *Stupp*. Instead, Resolute proposes that any stay lift when the Federal Circuit issues "the mandate" in *Stupp Corp. v. United States*, Court No. 23-1663. Mot. at Proposed Order. A mandate issues in every case "7 days after the time to file a petition for

7

rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing *en banc*, or motion for stay of mandate, whichever is later." *See* Fed. R. App. P. 41(b). Thus, a mandate issues regardless of whether the Federal Circuit affirms or remands to Commerce for further explanation or reconsideration. Additionally, a mandate does not affect parties' rights to petition the Supreme Court for a *writ of certiorari*. Thus, there are many scenarios in which a mandate could issue before a final and conclusive decision in *Stupp*.

Because there is a possibility of additional remands and appeals with respect to differential pricing in the *Stupp* litigation even after the next appellate ruling in that case, the stay contemplated by Resolute would not conserve party or judicial resources. Under the proposed stay, parties might be required to brief an intervening *Stupp* decision while it is pending before Commerce on remand (or the Supreme Court), and potentially again after Commerce issues a remand redetermination (and again as the case makes its way back through the courts). In fact, *Stupp* itself illustrates the problem: the mandate was issued following the first appellate decision in *Stupp* and the issue of use of Cohen's *d* test is on appeal again in *Stupp*. This type of piecemeal litigation, which would be focused on decisions that are not final and conclusive, would not conserve party resources. Thus, even if *Stupp* had any relevance to this case – which it does not – Resolute's conservation of participant resources argument fails.

Finally, contrary to Resolute's claim that there is no "'concrete cognizable harm' . . . 'associated with the requested stay,'" Mot. at 10 (quoting *Jiaxing Brother Fastener Co. v. United States*, 179 F. Supp. 3d 1156, 1167-68 (Ct. Int'l Trade 2016)), a stay here would cause prejudice. All parties have an interest in the prompt and effective resolution of this proceeding, which a stay would harm. Moreover, staying this proceeding would hinder the parties' ability to remain close to the facts of the case. Resolute's representations about the supposed lack of prejudice

here diverts attention from the core issue: it has failed to carry its burden of demonstrating "a clear case of hardship or inequity." *Landis*, 299 U.S. at 255. As this Court has stated, "{a} stay will not ordinarily be granted upon the mere representation that no damage or prejudice will result from its issuance, but upon a clear showing by the moving party that a hardship or inequity will result if the case proceeds." *Jinxiang Dong Yun Freezing Storage Co. v. United States*, 32 C.I.T. 1140 (2008) (citing *Landis*, 299 U.S. at 255; *Tak Fat Trading Co. v. United States*, 24 CIT 1376, 1377 (2000)). In sum, Resolute has failed to establish entitlement to this "extraordinary and disfavored remedy." *Gerald Metals*, 27 F. Supp. 2d at 1354 n.6 (Ct. Int'l Trade 1998).

## CONCLUSION

For these reasons, we respectfully request that the Court deny Resolute's motion to stay.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ CLAUDIA BURKE
Deputy Director

OF COUNSEL:
Elio Gonzalez
Senior Counsel
U.S. Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement and Compliance
Washington, D.C.
Tel.: (202) 353-0521

/s/ STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-5196
Email: stephen.tosini@usdoj.gov

June 6, 2024

Attorneys for the United States

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response contains 2,545 words, as calculated by the word processing system used to prepare this document (Microsoft Word).

/s/ Stephen C. Tosini