IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| **RESOLUTE FP CANADA INC.,**<br>      Plaintiff,<br>v.<br>**UNITED STATES,**<br>      Defendant,<br>and<br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,**<br>      Defendant-Intervenors. | Court No. 23-00095 |

## PROPOSED ORDER

Upon consideration of the Motion to Stay Proceedings (ECF 41) filed by plaintiff Resolute FP Canada Inc., the response thereto of defendant-intervenor the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the Motion to Stay Proceedings is **DENIED**.

**SO ORDERED.**

_____
The Honorable Jane A. Restani, Judge

Dated: _____
New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

| | |
|---|---|
| **RESOLUTE FP CANADA INC.,**<br>　　　　Plaintiff,<br>v.<br>**UNITED STATES,**<br>　　　　Defendant,<br>　　and<br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,**<br>　　　　Defendant-Intervenors. | Court No. 23-00095 |

**THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY PROCEEDINGS**

More than a year ago, the U.S. Department of Commerce ("Commerce") determined that revocation of the antidumping duty order on certain softwood lumber products from Canada would be likely to lead to the continuation or recurrence of dumping.  *Certain Softwood Lumber Products From Canada: Final Results of the Expedited First Sunset Review of the Antidumping Duty Order*, 88 Fed. Reg. 20,479 (Dep't Commerce Apr. 6, 2023) ("*Final Results*").  Resolute FP Canada Inc. ("Resolute") commenced this action to challenge Commerce's determination.  *See* Summons, May 8, 2023, ECF 1; Compl., May 8, 2023, ECF 2.  Now, with this action fully briefed, Resolute asks that this Court stay proceedings, arguing that a stay of indefinite length, tied to a case that is not dispositive of the issues presented in this appeal, would "promote judicial economy."  Pl.'s Mot. to Stay Proceedings at 11, May 16, 2024 ("Pl. Mot."), ECF 41.  As explained below, the Court should decline to stay this action.

**Court No. 23-00095**

## BACKGROUND

Commerce, in conjunction with the U.S. International Trade Commission (the "Commission"), is required to conduct five-year "sunset" reviews of antidumping duty orders and revoke such orders unless revocation would be likely to lead to the continuation or recurrence of dumping and material injury to the domestic industry. *See* 19 U.S.C. § 1675(c). The statute assigns Commerce two roles in conducting five-year sunset review. *See Procedures for Conducting Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders*, 63 Fed. Reg. 13,516 (Dep't Commerce Mar. 20, 19998) ("*Policy Bulletin*"). First, Commerce must determine whether revocation of an antidumping duty order would be likely to lead to a continuation or recurrence of dumping. *Id.* And, second, Commerce must report to the Commission the magnitude of the margin of dumping that is likely to prevail if the order is revoked or the suspended. *Id.*

Consistent with this directive, Commerce initiated a sunset review of the antidumping duty order on certain softwood lumber products from Canada on December 1, 2022. *See Initiation of Five-Year (Sunset) Reviews*, 87 Fed. Reg. 73,757 (Dep't Commerce Dec. 1, 2022). Resolute participated in Commerce's five-year review, arguing that the agency should: (1) make a company-specific determination and find that there is no likelihood of a continuation or recurrence of dumping with respect to Resolute; and (2) report 'zero' as the magnitude of the dumping margin likely to prevail if the order were revoked as to Resolute. *See* Commerce Memorandum, "Issues and Decision Memorandum for the Final Results of the Expedited First Sunset Review of the Antidumping Duty Order on Softwood Lumber from Canada" (Mar. 31, 2023) ("IDM"). Commerce rejected Resolute's arguments in the *Final Results* and concluded that revocation of the antidumping duty order would be likely to lead to the continuation or recurrence of dumping and the magnitude of the weighted-average dumping margin likely to

**Court No. 23-00095**

prevail is up to 7.28 percent (a margin calculated by Commerce in the underlying investigation). *Final Results*, 88 Fed. Reg. at 20,480.

Resolute appealed Commerce's determination to this Court alleging that the *Final Results* are "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law." *See* Compl. ¶6 (quoting 19 U.S.C. § 1516a(b)(1)(B)(ii)).[1] The four counts of Resolute's complaint contest: (1) Commerce's finding that revocation of the order with respect to Resolute would be likely to lead to the continuation or recurrence of dumping; (2) Commerce's failure to apply the "good cause" exception and reach a negative "likelihood" determination as to Resolute; (3) Commerce's failure to find "extraordinary circumstances" and report a zero margin as the magnitude of the weighted-average dumping margin likely to prevail if the order were revoked; and (4) Commerce's failure to revoke the antidumping duty order as to Resolute. *See id.* ¶¶16-23. Briefing on Resolute's challenge to the *Final Results* is complete.

## LEGAL STANDARD FOR A STAY OF PROCEEDINGS

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254 (1936). Whether to grant or deny a stay of proceedings rests "within the sound discretion of the trial court." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citation omitted).

---

[1] Unlike other final determinations by Commerce reviewable by this Court under the substantial evidence standard of review, final results of expedited sunset reviews are reviewed applying the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" review standard set forth in 19 U.S.C. § 1516a(b)(1)(B)(ii). *See* Resp. Br. of the Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negotiations in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. at 9, Feb. 26, 2024, ECF 31.

3

**Court No. 23-00095**

"Although the decision to grant or deny a stay rests within the court's sound discretion, courts must weigh and maintain an even balance between competing interest when deciding whether a stay is appropriate." *NEXTEEL Co. v. United States*, 556 F. Supp. 3d 1376, 1378 (Ct. Int'l. Trade 2022) (citing *Landis*, 299 U.S. at 254-55); *see also Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 592 F. Supp. 3d 1332, 1336 (Ct. Int'l Trade 2022) ("When deciding on a motion to stay the case, the court will exercise its judgment and 'weigh competing interests and maintain an even balance.'" (quoting *Landis*, 299 U.S. at 255)).

### THE COURT SHOULD DECLINE TO STAY THIS ACTION

Resolute's motion to stay proceedings argues that *Stupp Corp. v. United States*, an appeal currently pending before the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), "could be dispositive" and "impact directly" the Court's decision in this action. *See* Pl. Mot. 6-8. Resolute's motion significantly overstates the significance of *Stupp* to this action. *Stupp* is not dispositive of this litigation, nor will a stay conserve party resources. Accordingly, the COALITION respectfully submits that a stay of this action is inappropriate as further argued below.

**I.**     <u>***Stupp* Will Not Be Dispositive of the Issues Presented in this Appeal**</u>

The *Stupp* litigation stems from a 2015 determination issued by Commerce to conclude a less than fair value investigation of welded line pipe from South Korea. *See Welded Line Pipe From the Republic of Korea: Final Determination of Sales at Less Than Fair Value*, 80 Fed. Reg. 61,366 (Dep't Commerce Oct. 13, 2015). In that investigation, Commerce applied its standard differential pricing methodology to determine whether it was appropriate to calculate dumping margins by comparing the average of the normal values to the export prices (or

4

**Court No. 23-00095**

constructed export prices) of individual transactions (i.e., the "A-T" method). *See Stupp Corp. v. United States*, 359 F. Supp. 3d 1293, 1299 (Ct. Int'l Trade 2019) ("*Stupp I*").

In *Stupp I*, the CIT affirmed Commerce's application of the differential pricing methodology as a reasonable methodology for identifying patterns of prices that differ significantly. *See Stupp Corp. v. United States*, 359 F. Supp. 3d at 1306 (Ct. Int'l Trade 2019) ("*Stupp I*"). In 2021, the Federal Circuit vacated, in part, the CIT's judgment, remanding the challenged agency action to Commerce so that the agency could further explain its application of the Cohen's *d* test as part of the agency's differential pricing analysis. *See Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021) ("*Stupp III*"). The Federal Circuit's decision in *Stupp III* did not require that Commerce change its application of the Cohen's *d* test or require the agency to test whether the assumptions underlying the Cohen's *d* thresholds are satisfied. *See id.*

Commerce's redetermination following the Federal Circuit's decision in *Stupp III*, provided additional explanation regarding the agency's use of the Cohen's *d* test and made no changes to its application of that test as part of the agency's differential pricing methodology. *See Stupp Corp. v. United States*, 619 F. Supp. 3d 1314, 1321-28 (Ct. Int'l Trade 2023) ("*Stupp IV*").[2] Commerce's remand redetermination was sustained by the CIT. *See id.* at 1328. In

---

[2] As acknowledged by Resolute, in the ongoing appeal of the less than fair value investigation involving certain softwood lumber products from Canada, Commerce recently issued a remand redetermination in which it addressed the agency's use of the Cohen's *d* test as part of the differential pricing methodology. *See* Pl. Mot. 7 n.2. The agency made no change to its differential pricing methodology in that remand proceeding. Moreover, the agency continues to apply its differential pricing methodology in determining whether to apply an alternate comparison methodology to calculate dumping margins. *See, e.g., Certain Oil Country Tubular Goods From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg. 24,429 (Dep't Commerce Apr. 8, 2024), and accompanying IDM at 11 ("We continue to apply the Cohen's *d* test . . . as part of our differential pricing analysis in our calculations for the final results.") (ACCESS Barcode 4537725-02).

**Court No. 23-00095**

sustaining Commerce's use of the Cohen's *d* test as part of the agency's differential pricing methodology, the CIT noted the authority "Congress delegated to Commerce . . . to determine where a price difference is significant." *Id.* at 1327. Following the CIT's decision in *Stupp IV*, the case was appealed once again to the Federal Circuit on March 27, 2023. *See Stupp Corp. v. United States*, No. 2023-1663 (Fed. Cir. filed Mar. 27, 2023). As of June 6, oral argument has yet to be scheduled.

Contrary to Resolute's arguments, *Stupp* will not determine the outcome of this appeal. Unlike the issues presented in this appeal, *Stupp* does not involve Commerce's discretion under section 752(c)(1) of the Tariff Act of 1930, as amended (the "Act"), to consider "other factors" in a five-year sunset review if "good cause is shown." *See* 19 U.S.C. § 1675a(c)(2). Nor is *Stupp* relevant to the analysis of whether a respondent is able to demonstrate "most extraordinary circumstances" such that Commerce will rely on a dumping margin other than one published in a prior determination in making its decision in a sunset review. *See* 19 C.F.R. § 351.218. Indeed, nothing in *Stupp* is at all relevant to either of the two roles performed by Commerce in sunset reviews. *See Policy Bulletin*, 63 Fed. Reg. at 13,516 (identifying Commerce's roles as determining whether revocation of an antidumping duty order would be likely to lead to a continuation or recurrence of dumping and reporting to the Commission the magnitude of the margin of dumping that is likely to prevail if the order is revoked).

Moreover, *Stupp* is an appeal from an original less than fair value investigation where Commerce applied the Cohen's *d* test as part of the agency's differential pricing analysis to determine whether to apply the alternative A-T method to decide whether subject merchandise is being dumped. Unlike original investigations where Commerce calculates dumping margins, *see* 19 U.S.C. § 1673d, Commerce normally relies on dumping margins "calculated and published in

**Court No. 23-00095**

its prior determinations" when conducting five-year sunset reviews. *Policy Bulletin*, 63 Fed. Reg. at 13,519; *see also* Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, Vol. 1, at 891 (explaining that Commerce should rely on dumping margins other than those calculated and published in prior determinations "{o}nly under the most extraordinary circumstances"). Thus, given that Commerce did not, and is not required to calculate dumping margins in sunset reviews, *Stupp* has no relevance to this action, and Resolute's argument that *Stupp* may be dispositive of this case should be rejected.[3]

## II.    A Stay Will Not Conserve Resources

Resolute argues that a stay will conserve resources by "prevent{ing} an even greater expenditure of litigation resources." Pl. Mot. 10. But Resolute fails to explain how a stay tied to a proceeding that is unlikely to impact the ultimate disposition of this appeal preserves any resources. Instead, a stay only extends this litigation.[4] Moreover, Resolute's argument that a stay will conserve resources, appears even more suspect when the timing of this appeal and that of *Stupp* are compared. Resolute joined the Government of Canada's amicus brief submitted to the Federal Circuit in the *Stupp* appeal in August 2023. *See* Br. of Amici Curiae GOC et al. in Supp. of Def.-Appellant and Urging Reversal, *Stupp Corp. v. United States*, Case No. 23-1663, Aug. 28, 2023, ECF 59. Thus, if Resolute believed that a stay pending the outcome of *Stupp*

---

[3] The COALITION notes that Resolute has repeatedly asserted that it "is not attempting to relitigate" the underlying investigation. Reply of Pl. Resolute FP Canada Inc. at 3, May 2, 2024, ECF 38. However, the arguments presented in its motion to stay proceedings suggests relitigating the investigation is exactly what Resolute is attempting to do in this proceeding. *See, e.g.*, Pl. Mot. 4 (arguing that "Commerce imposed dumping duties on Resolute by applying the exceptional {A-T} methodology" and that, absent "resort to the {differential pricing methodology}," Resolute would not have been subject to the order").

[4] The COALITION, like all parties engaged in litigation at this Court, has an interest in the prompt and effective resolution of this proceeding. *See* USCIT Rule 1.

7

**Court No. 23-00095**

would conserve party resources, it should have sought a stay in this action before it chose to proceed with briefing on the merits.  Resolute instead elected to wait until parties expended significant resources briefing this case such that it is now ripe for decision.  Accordingly, a stay at this point in the litigation will not preserve resources.

## CONCLUSION

While, "{t}here is no talismanic formula for the determination of when a motion to stay proceedings should be granted," *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, 592 F. Supp. 3d 1332, 1339 (2022), the Court "must weigh competing interests and maintain an even balance," *Landis*, 299 U.S. at 254-55.  In this case, a stay is unlikely to serve the interest of judicial economy or conserve resources of the parties.  For these reasons, we request that this Court deny Resolute's motion to stay proceedings.

Respectfully submitted,

/s/ Zachary J. Walker

Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Ave. NW
Suite 700
Washington, DC 20036
(202) 888-0595

*Counsel to the COALITION*

Dated: June 6, 2024

8