## UNITED STATES COURT OF INTERNATIONAL TRADE

*Before*: The Honorable Jane A. Restani

| | |
|---|---|
| **RESOLUTE FP CANADA INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES,** | **Court No. 23-00095** |
| **Defendant,** | |
| **and** | **PUBLIC DOCUMENT** |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,** | |
| **Defendant-Intervenors.** | |

### SUPPLEMENTAL BRIEF ON SUBSEQUENT AUTHORITY OF PLAINTIFF RESOLUTE FP CANADA INC.

Elliot J. Feldman
Michael S. Snarr
Ronald J. Baumgarten
Tung A. Nguyen

**Baker Hostetler LLP**
1050 Connecticut Ave., NW
Suite 1100
Washington, D.C.  20036

Counsel to Resolute FP Canada Inc.

Dated: July 12, 2024

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................... 1

II.   *LOPER BRIGHT* AND THE STANDARD OF REVIEW ........................................ 2

III.  ARGUMENT ............................................................................................... 4

   A.  The Government's Argument About The Applicable Standard Of Review Is
       Inconsistent With *Loper Bright* .......................................................... 4

   B.  The Court Should Not Defer To The Government's Misinterpretation Of The
       Purpose Of The Sunset Review Statute ................................................ 5

   C.  The Application Of *Loper Bright* Affirms That Resolute Must Be Granted
       Company-Specific Relief Under The Sunset Review Statute......................... 8

   D.  The Court Should Not Defer To The Government's Interpretation Of "Good
       Cause" In 19 U.S.C. § 1675a(c)(2) ....................................................... 10

       1.  Congress Did Not Choose A Narrow Requirement ................................. 10

       2.  "Other Relevant Factors" In The Statute Are Only Examples .................. 12

       3.  Commerce's Method For Finding Resolute Dumping Is Another Relevant
           Factor ........................................................................................ 12

IV.   CONCLUSION ........................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ........................................................................................passim

*Loper Bright Enters. v. Raimondo*, No. 22-451,
603 U.S. __ (2024), 2024 U.S. LEXIS 2882 .......................................................passim

*Marbury v. Madison,* 1 Cranch 137 (1803) ............................................................ 3

*Marmen Inc. v. United States*, 545 F. Supp. 3d 1305 (Ct. Int'l Trade 2021) ................. 14

*Mid Continent Steel & Wire Inc. v. United States*, 31 F. 4th 1367 (Fed. Cir. 2022) ....... 13

*Mid Continent Steel & Wire Inc. v. United States*, 940 F. 3d 662 (Fed. Circ. 2019) ...... 13

*NEXTEEL Co., Ltd. v. United States,* 28 F. 4th 1226 (Fed. Cir. 2022) ......................... 14

*NSK Corp. v. Int'l Trade Comm'n*, 542 Fed. Appx. 950 (Fed. Cir. 2013) ...................... 3

*Relentless, Inc. v. Dep't of Commerce,* No. 22-1219,
603 U.S. __ (2024), 2024 LEXIS 2882 ................................................................. 1

*SeAH Steel Corp. v. United States,* 539 F. Supp. 3d 1341 (Ct. Int'l Trade 2021).......... 14

*Stupp Corp. v. United States*, 5 F. 4th 1341 (Fed. Cir. 2021)...................................... 13

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009)................................................... 4

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) .......................................................... 8

*Wyeth v. Levine,* 555 U.S. 555 (2009)...................................................................... 6

**Statutory Provisions**

19 U.S.C. § 1516a(b)(1)(B)(ii) ............................................................................ 2, 3

19 U.S.C. § 1673d(c)(2) ........................................................................................ 9

19 U.S.C. § 1675(c)(3)(A) ..................................................................................... 7

19 U.S.C. § 1675(d)(2) .................................................................................. 6, 7, 9

19 U.S.C. § 1675a(c)(2) ....................................................................................... 10

19 U.S.C. § 1677f-1(d)(1)(A) ................................................................................. 13

**Other Authorities**

*Black's Legal* Dictionary .................................................................................... 11

Law.com *Legal Dictionary* ................................................................................ 12

*Merriam-Webster* ............................................................................................. 12

Uruguay Round Agreements Act, Statement of Administrative Action,
H.R. Doc. 103-316, Vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040........ 7, 8, 11, 12

WTO Agreement on Subsidies and Countervailing Measures, Art. 21.3 ........................ 7

## I.    INTRODUCTION

Pursuant to this Court's Order of July 10, 2024, Plaintiff Resolute FP Canada Inc. ("Resolute" or "Plaintiff") files this Supplemental Brief on Subsequent Authority Prior To Oral Argument to address the U.S. Supreme Court's landmark decision in Loper Bright Enters. v. Raimondo, No. 22-451, 603 U.S. ___ (2024), 2024 U.S. LEXIS 2882, and its companion case, *Relentless, Inc. v. Dep't of Commerce,* No. 22-1219, 603 U.S. ___ (2024), 2024 LEXIS 2882.[1]  In *Loper Bright*, the U.S. Supreme Court, by a vote of 6 to 3, overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  The Supreme Court in *Chevron* held that federal courts should defer to agency interpretations of law when the court finds the meaning of the law to be ambiguous.

Resolute initiated this proceeding to challenge the U.S. Department of Commerce's ("Commerce") Final Results in the Expedited First Sunset Review of the antidumping duty ("AD") order on softwood lumber from Canada, Case No. A-122-857. *See Certain Softwood Lumber Products from Canada: Final Results of the Expedited First Sunset Review of the Antidumping Duty Order*, 88 Fed. Reg. 20,479 (Dep't Commerce Apr. 6, 2023), P.R. 46 ("Final Results"), and accompanying Issues and Decision Memorandum, March 31, 2023, P.R. 45 ("IDM"). Plaintiff's arguments to this Court on issues of statutory interpretation were formulated in the context of *Chevron,* which is no longer the applicable standard of review.  *See* Resolute Br. at 13-14, ECF #28.  This Court is now required to apply the standard of *Loper Bright* to the statutory

---

[1] As these two cases were decided in the same opinion, Resolute refers to them collectively as "*Loper Bright Enterps. v. Raimondo*" or "*Loper Bright*".

interpretation questions on appeal. This Court should find that Commerce's Final Results are unlawful and order Commerce to revoke the AD order as to Resolute.

## II.    *LOPER BRIGHT* AND THE STANDARD OF REVIEW

The statute requires that this Court review the Final Results of the Expedited First Sunset Review under 19 U.S.C. § 1516a(b)(1)(B)(ii), asking whether Commerce's decision is "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law."  Resolute explained in its R. 56.2 Brief that this Court was to assess whether Commerce's Final Results were "in accordance with law" by applying the two-step *Chevron* test to questions of statutory interpretation.  *See* Resolute Br. at 13-14, ECF #28.  Under the former standard of review on legal questions, when a court found that Congress had spoken unambiguously, the courts considered the issue resolved and no deference was owed to the agency's interpretation. *See Chevron,* 467 U.S. at 843-44.  An agency could fill gaps in the statute through its own statutory interpretation when a statute was "silent or ambiguous." *Id.* at 843.

The Supreme Court in *Loper Bright* granted *certiorari* for the sole purpose of determining "whether *Chevron* … should be overruled or clarified."  *Loper Bright,* No. 22-451, at 1.  The Supreme Court overruled *Chevron* and established a new standard of judicial review of an agency's statutory interpretations.  Chief Justice Roberts, writing for the majority, held:

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA[2] requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But

---

[2] Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

courts need not and under the APA may not defer to an agency
interpretation of the law simply because a statute is ambiguous.  *Id.* at 35.

Chevron supplanted the role of courts "to say what the law is," *Marbury v.*

*Madison,* 1 Cranch 137, 177 (1803), deferring to "reasonable" agency interpretations

when a statute is susceptible to more than one permissible interpretation.  Justice

Roberts wrote, "It … makes no sense to speak of a 'permissible' interpretation that is

not the one the court, after applying all relevant interpretive tools, concludes is best. In

the business of statutory interpretation, if it is not the best, it is not permissible." *Loper*

*Bright,* No. 22-451, at 23.

The Supreme Court found that *Chevron* ignored the dictates of the APA, which

"delineates the basic contours of judicial review of {agency} action." *Id.* at 13.  Under

APA, Section 706, "'to the extent necessary to decision and when presented, the

reviewing court shall decide all relevant questions of law, interpret constitutional and

statutory provisions, and determine the meaning or applicability of the terms of an

agency action.'" *Id.* at 13-14 (citing 5 U. S. C. § 706).  Additionally, the APA "requires

courts to 'hold unlawful and set aside agency action, findings, and conclusions found to

be … not in accordance with law.'"[3] *Id.* at 14 (citing 5 U.S.C. § 706(2)(A)).  This appeal,

which involves multiple issues of statutory interpretation, is subject to the same

standard as under the APA. *See NSK Corp. v. Int'l Trade Comm'n*, 542 Fed. Appx.

950, 953 (Fed. Cir. 2013) ("There is nothing in the statutes providing for review of

agency action by the Court of International Trade that makes that kind of review

different from conventional APA review. The pertinent review provisions of the trade

---

[3] Sec. 706(2)(A) mirrors the language of 19 U.S.C. § 1516a(b)(1)(B)(ii).

statutes track the APA. At the time it enacted those statutes, Congress expressed a desire that agency review by the Court of International Trade and this court would be modeled on APA review.").

### III.    ARGUMENT

   A.    The Government's Argument About The Applicable Standard Of Review Is Inconsistent With *Loper Bright*

The Government asked the Court to apply a highly deferential standard of review to Commerce's interpretations of law.  *See* Govt. Br. at 7, ECF #32.  While sidestepping a direct reference to *Chevron,* the Government cited to *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) for the proposition that "Commerce's statutory interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.'" Govt. Br. at 13 (quoting *Eurodif*), ECF #32.[4]  Defendant-Intervenor Sierra Pacific likewise argued for the Court to apply "substantial deference" under *Chevron.*  SP Br. at 7, ECF #33.

*Loper Bright* no longer permits this Court's deference to "reasonable" or "permissible" interpretations of the Tariff Act.  Instead, this Court must apply the new standard of review, exercising its "independent judgment" as to "whether an agency has acted within its statutory authority."  *Loper Bright,* No. 22-451, at 35.  The Court is to use its "full interpretive toolkit" to discern the meaning of the law, independently of the agency.  *Id.* at 31.

---

[4] The Government Brief omitted the Supreme Court's citation to *Chevron* in the passage quoted above.  *See Eurodif S.A.*, 555 U.S. at 316 (citing *United States v. Mead Corp.*, 533 U. S. 218, 229–230 (2001), citing *Chevron*).

Statutory ambiguity under *Chevron* was the gateway to deference, provided that Commerce had derived a "permissible interpretation" of a statute, even were that not the best interpretation. *Chevron,* 467 U.S. at 843 n.11. That Commerce may have one such "permissible interpretation" is no longer relevant. As the Supreme Court explained, having more than one permissible interpretation "makes no sense"; "if it is not the best, it is not permissible." *Loper Bright,* No. 22-451, at 23. The final word rests with this Court, and not Commerce, in this appeal.

B.    This Court Should Not Defer To The Government's Misinterpretation Of The Purpose Of The Sunset Review Statute

The Government erroneously claims that "Commerce conducted its review pursuant to the statute, congressional intent, and regulations, and there was no basis to revisit the results of earlier proceedings as Resolute suggests." Govt. Br. at 7, ECF #32. According to the Government, "{t}he purpose of a sunset review is to assess whether 'revocation of an antidumping … duty order … would be likely to lead to continuation or recurrence of dumping … and of material injury.'" Govt. Br. at 8 (citing 19 U.S.C. § 1675(c); 19 C.F.R. § 351.218(b)), ECF #32; *see also id.* at 11 ("First, the purpose of sunset reviews is to assess whether revocation of an order would likely lead to the continuation of dumping, and the magnitude of the margin of dumping likely to prevail if the order were revoked based on certain enumerated factors. Commerce thus conducted the sunset review in accordance with the statute, congressional intent, and regulations.").

The Government's argument misinterprets the overall statutory framework for sunset reviews. According to 19 U.S.C. § 1675(d)(2):

> In the case of a {five-year} review conducted under subsection (c), the administering authority shall revoke a countervailing duty order or an antidumping duty order … , unless—
> (A) the administering authority makes a determination that dumping … would be likely to continue or recur, and
> (B) the Commission[5] makes a determination that material injury would be likely to continue or recur … .

The statute is unambiguous as to why there are sunset reviews: an antidumping order *shall be* revoked after five years and may stay in place only when both prescribed conditions are met. The statute places the burden on Commerce and the International Trade Commission ("the Commission") to justify maintaining an order beyond five years. There is no discretion to maintain an order absent positive likelihood findings from both Commerce and the Commission.

*Loper Bright* directs the Court to the traditional tools of statutory construction, which include legislative history. *See Loper Bright,* No. 22-451, at 31 ("The statute still has a best meaning, necessarily discernible by a court deploying its full interpretive toolkit."); *see also Wyeth v. Levine,* 555 U.S. 555, 566-68 (2009) (looking to legislative history to determine whether Congress intended to overcome presumption embodied in substantive canon). The Statement of Administrative Action to the Uruguay Round Agreements Act ("SAA") underscores congressional intent behind the sunset review statute, which was to implement provisions in the World Trade Organization ("WTO") Antidumping Agreement ("the Agreement") concerning the duration of antidumping

---

[5] U.S. International Trade Commission.

orders.[6]  As the SAA explains: "For the first time, the Agreement sets a time limit on the imposition of antidumping measures. Article 11.3 requires that duties or price undertakings terminate (or 'sunset') not later than five years" after their imposition (or the last sunset review).  Uruguay Round Agreements Act, Statement of Administrative Action, H.R. DOC. 103-316, Vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4158.

The plain language of the statute, informed by legislative history, indicates that the default position is to sunset orders after five years. *See also id.* at 4215 ("… in a five-year review, Commerce will revoke an order" absent positive likelihood determinations).  Other provisions of the Act support this interpretation.  Commerce must automatically revoke an order in the absence of a response by domestic parties to Commerce's notice of initiation. *See* 19 U.S.C. § 1675(c)(3)(A).  The statute provides other procedural safeguards that were designed to ensure a fair and rigorous review by the Government.  *See, e.g.,* 19 U.S.C. § 1675(c).

Commerce has grown accustomed to deference under *Chevron* and in this review placed the burden on Resolute to demonstrate why the order should not remain in place.  By confounding the purpose of the law, Commerce puts undue emphasis on the exception (§ 1675(d)(2)(A) and (B)), resulting in a *de facto* presumption against respondents.  This approach inverts statutory intent, which was to prevent the never-ending imposition of dumping orders.  Under *Loper Bright*, Commerce may not shift the burden and presumption that dumping orders have a limited duration.

---

[6] Similar implementation was required as to sunset reviews for countervailing duty orders.  *See* WTO Agreement on Subsidies and Countervailing Measures, Art. 21.3.

C.    The Application Of *Loper Bright* Affirms That Resolute Must Be Granted
      Company-Specific Relief Under The Sunset Review Statute

Resolute has asked for company-specific relief.  *See, e.g.,* Complaint, ¶ 23,

Prayer for Judgment and Relief, ¶ 3, ECF #2; Resolute Br. at 18-24, 46, ECF #28;

Resolute Reply Br. at 8-11, ECF #38.   A question before this Court and as directed by

*Loper Bright* is whether the statute permits a company-specific finding of likelihood of

continuation or recurrence of dumping and, if so, whether Commerce may (or must)

revoke an order on a company-specific basis.

The Government and Petitioner argue that company-specific relief is not

available, relying mainly on the SAA's pronouncement that sunset determinations are

made on an "order-wide basis."  Govt. Br. 12-13 (citing SAA, 1994 U.S.C.C.A.N. at

4205), ECF #32; Coalition Br. at 12-13 (same), ECF #31; SP Br. at 8 (same), ECF #33.

This terminology is not itself contained in the statute, nor otherwise defined in the SAA.

*Loper Bright* charges the courts with finding the "best" interpretation of the

statute.  *Loper Bright,* No. 22-451, at 23.  Resolute already has demonstrated that,

applying the ordinary tools of statutory construction, the Tariff Act fundamentally

conceives dumping as company-specific; any approach disallowing company-specific

findings and relief in a sunset review would conflict with the Congressionally mandated

dumping scheme.  *See* Resolute Br. at 18-21, ECF #28; Resolute Reply Br. at 8-11,

ECF #38; *see also e.g., West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022).  Nothing in

the plain language of the sunset review statute precludes Commerce from making

company-specific likelihood determinations, particularly in light of the overall statutory

framework for dumping, which mandates company-specific exclusions from an order

upon a negative dumping determination in the investigation.  *See, e.g.,* 19 U.S.C. §

1673d(c)(2).  And even were Congress's intent ambiguous in this instance, Commerce no longer may profit from judicial deference to its gap-filling exercise.  *See, e.g., Loper Bright*, No. 22-451, at 21-25.

To continue imposing duties on that company would contradict the statutory requirement for revocation when dumping is not likely to continue or recur.  *See* 19 U.S.C. § 1675(d)(2).  Resolute was never dumping and could not continue to do something it was not doing in the first instance.  *See* Resolute Br. at 25-43, ECF #28; Resolute Reply Br. at 12-18, ECF #38.  Should the Court agree, then under the plain meaning of the sunset review statute, once Commerce reaches a negative likelihood determination as to Resolute, it also must revoke the antidumping duty order as to Resolute.[7]

"Order-wide," from the SAA (not the statute), appears to be the Government's reason for denying company-specific review.  It is an undefined term and, when interpreted by Defendant and Defendant-Intervenors, contradicts the whole architecture of the dumping law, penalizing a non-dumping company for the likely continued or resumed dumping of other respondents.  Countries do not dump, but companies do.  To interpret the statute otherwise would penalize a non-dumping company for the likely continued dumping of other respondents, which does not appear to have been the intent of Congress.  "Order-wide" must mean, therefore, that when a single company is

---

[7] The Government conceded that company-specific relief is possible under the sunset review statute.  *See* Govt. Br. at 14-15, ECF #32; *see also* Resolute Reply Br. at 11, ECF #38.  Agreement by the U.S. Government and Resolute on the meaning of this language should be persuasive to the Court when undertaking its own statutory analysis.

released from an order, the order continues as to all other respondent parties.[8]  This

interpretation remains faithful to congressional intent and is consistent with the overall

statutory architecture of the dumping law.

D.    This Court Should Not Defer To The Government's Interpretation Of
      "Good Cause" In 19 U.S.C. § 1675a(c)(2)

1.    Congress Did Not Choose A Narrow Requirement

The statute providing for Commerce's sunset reviews allows Commerce to

consider "other factors" than "the weighted average dumping margins determined in the

investigation and subsequent reviews" and the "volume of imports of the subject

merchandise" before and after the order, provided that "good cause" has been shown:

"(2) Consideration of other factors.  If good cause is shown, the administering authority

shall also consider such other price, cost, market, or economic factors as it deems

relevant."  19 U.S.C. § 1675a(c)(2).

Resolute has explained that Commerce's dumping calculations relying on the

Differential Pricing Methodology ("DPM") and Commerce's interpretation of the Cohen's

*d* test have been remanded back to Commerce either to be justified in accordance with

law or abandoned.  *See, e.g.,* Resolute Br. at 27-33, ECF #28; Resolute Reply Br. at 14-

15, ECF #38.  In Resolute's case, the use of the DPM and Commerce's version of the

Cohen's *d* test is material because, according to Commerce's own calculations in the

default and preferred average-to-average ("A-A") comparison methodology, Resolute

would not have been found to be dumping the subject merchandise.  *See, e.g.,* Resolute

Br. at 38, ECF #28.  Resolute posits that if the basis for the weighted-average dumping

---

[8] Resolute also made this argument during the sunset review proceeding.  *See*
Resolute Case Br. at 46 n. 49, P.R. 36.

margins in the investigation and first administrative review were a methodology that is indicated, by current remand determinations, to be unlawful, "good cause" exists for Commerce to consider other information in the sunset review.

Commerce stated in the IDM that its methodology for determining Resolute's AD rates was lawful. Hence, Commerce found no "good cause" to consider anything but the previous rates it derived with the DPM, and overall import volumes. *See* IDM at 18, 21, P.R. 45.

The Government's brief to this Court seems to have interpreted "good cause" to be limited to "other price, cost, market or economic factors as it deems relevant," Govt. Brief at 11, but under *Loper Bright*, the Court need not, and should not, defer to that interpretation. "Other factors" listed in the statute are not the defining parameters of "good cause;" rather, they are examples[9] of factors other than the previously determined dumping margins and import volumes that may be considered in the sunset review where "good cause" has been shown.

*Black's Law Dictionary* defines "good cause" as "mean{ing} that from a legal point of view there are sufficient grounds to act on" something.[10] According to Law.com's *Legal Dictionary*, "good cause" is a "legally sufficient reason for a ruling or other action

---

[9] The SAA furnishes notes that such other factors for consideration are "illustrative." SAA, 1994 U.S.C.C.A.N. at 4214.

[10] "GOOD CAUSE" (n.), *Black's Legal* Dictionary, *available at* https://thelawdictionary.org/good-cause/.

by a judge."[11]  "Sufficient" is defined as "enough to meet the needs of a situation or proposed end."[12]

Congress could have required respondents to offer "clear and convincing" or "compelling" reasons for considering other relevant factors in a sunset review.  Instead, Congress mandated a less demanding standard where the agency is to accept "other relevant factors" for "good cause." The SAA likewise indicates that the law is not hostile to "good cause," recognizing that such reasons can and do exist.  *See* SAA, 1994 U.S.C.C.A.N. at 4214.

2.    <u>"Other Relevant Factors" In The Statute Are Only Examples</u>

Once "good cause" is established, the statute commands that Commerce "shall consider" other relevant factors.  Among such factors in this case is the zero margin for Resolute lawfully calculated by Commerce with the statutorily preferred A-A methodology.  *See, e.g.,* Resolute Reply Br. at 21, ECF #38; Res. Final AD Calc Memo INV, at 3 (Resolute Sub. Resp., Exh. 1), P.R. 28, C.R. 1.  Commerce must fully consider other factors as an objective factfinder.  *See* Resolute Br. at 26-27, ECF #28.

3.    Commerce's Method For Finding Resolute Dumping Is
<u>Another Relevant Factor</u>

*Loper Bright* changes past practices of judicial deference such that the Court "must exercise {its} independent judgment in deciding whether an agency has acted within its statutory authority."  *Loper Bright,* No. 22-451, at 35.  Here, Commerce's narrow interpretation of "good cause" improperly limited consideration of other factors

---

[11] "good cause" (n.), Law.com *Legal Dictionary*, *available at* https://dictionary.law.com/Default.aspx?selected=818.

[12] "sufficient" (adj.), *Merriam-Webster, available at* https://www.merriam-webster.com/dictionary/sufficient.

than the previous dumping margins (found by relying on the discredited DPM) and overall import volumes to find a resumption of dumping where the basis for presuming dumping was unfounded.

Commerce has argued and relied on deference in dumping cases to justify its use of the DPM and its adoption of a version of the Cohen's *d* test that is inconsistent with fundamental principles of statistics. *See* IDM at 10-12, P.R. 45. Commerce also has relied on deference to develop an alternative to the A-A transaction method that is the general rule provided in the Tariff Act at 19 U.S.C. § 1677f-1(d)(1)(A). *See id.*

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has recognized that challenges to the Cohen's *d* test involve questions of statutory interpretation, *see Stupp Corp. v. United States*, 5 F. 4th 1341, 1352 (Fed. Cir. 2021), and, hence, had previously subjected Commerce's methodology to a reasonableness standard. *See id.* at 1353; *Mid Continent Steel & Wire Inc. v. United States*, 31 F. 4th 1367, 1376 (Fed. Cir. 2022) ("*Mid Continent II*"). Even when applying this deferential approach, the CAFC (and in many instances this Court) have found Commerce's explanations lacking. *See, e.g., Stupp Corp.,* 5 F.4th at 1357 ("Our concerns raise questions about the reasonableness of Commerce's use of the Cohen's *d* test in less-than-fair-value adjudications, warranting further supporting explanation from the Department."); *Mid Continent Steel & Wire Inc. v. United States*, 940 F. 3d 662, 674-75 (Fed. Circ. 2019) ("*Mid Continent I*") ("On the record before us, we cannot conclude that Commerce's methodology was a reasonable exercise of its agency discretion in light of the statutory constraints and policies."); *see also NEXTEEL Co., Ltd. v. United States,* 28 F. 4th 1226 (Fed. Cir.

13

2022); *Marmen Inc. v. United States*, 545 F. Supp. 3d 1305 (Ct. Int'l Trade 2021); *SeAH Steel Corp. v. United States,* 539 F. Supp. 3d 1341 (Ct. Int'l Trade 2021).

    *Loper Bright* has withdrawn the benefit to Commerce of judicial deference to agency interpretations of Tariff Act provisions for sunset reviews and targeted dumping analyses.  This Court should exercise its own judgment in saying what the law is for considering other factors than the previously determined dumping margins and import volumes. The Court should remand Commerce's sunset review determination for "good cause" shown, directing Commerce to consider both the evolving jurisprudence that rejects Commerce's implementation of the Cohen's *d* test in the DPM and the expert statistician's evidence provided by Resolute in this case expressly challenging Commerce's methodology that Commerce used to find Resolute to be dumping.[13]

## IV.    CONCLUSION

    For the reasons set forth in this Supplemental Brief, and in the Memorandum of Points and Authorities to Accompany Resolute's Motion for Judgment on the Agency Record and the Reply Brief, Resolute respectfully requests that this Court find Commerce's Final Results to be arbitrary, capricious and otherwise not in accordance with law.  Resolute asks for a remand to Commerce with instructions to:

    (i) find that there is no likelihood of the continuation or recurrence of dumping as to Plaintiff;

    (ii) revoke the antidumping duty order on softwood lumber from Canada as to Plaintiff; and

---

[13] *See* Hedges' Report (Exh. 9 to Resolute's Sub. Resp.), P.R. 28, C.R. 1.

(iii) grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

Elliot J. Feldman
Michael S. Snarr
Ronald J. Baumgarten
Tung A. Nguyen

Baker Hostetler LLP

Counsel to Resolute FP Canada Inc.

Dated: July 12, 2024