IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RESOLUTE FP CANADA INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> COMMITTEE OVERSEEING ACTION FOR ) <br> LUMBER INTERNATIONAL TRADE ) <br> INVESTIGATIONS OR NEGOTIATIONS; ) <br> AND SIERRA PACIFIC INDUSTRIES ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Court No. 23-00095 |

DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

                                          BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        PATRICIA M. McCARTHY
                                        Director

                                        CLAUDIA BURKE
                                        Deputy Director

OF COUNSEL:
Elio Gonzalez                             STEPHEN C. TOSINI
Senior Counsel                         Senior Trial Counsel
U.S. Department of Commerce      U.S. Department of Justice
Office of the Chief Counsel             Civil Division
  for Trade Enforcement and Compliance   Commercial Litigation Branch
Washington, D.C.                  P.O. Box 480, Ben Franklin Station
Tel.: (202) 353-0521               Washington, D.C. 20044
                                        Tel.: (202) 616-5196
                                        Email: stephen.tosini@usdoj.gov

July 26, 2024                          Attorneys for the United States

**TABLE OF CONTENTS**

A. *Loper Bright* ............................................................................................................. 1

B. Commerce's Broad Discretion Under the Antidumping and Countervailing Duty Laws ............................................................................................................................. 4

C. *Loper Bright* Does Not Undermine Commerce's Decision to Conduct Its Sunset Review on an Order-Wide Basis ................................................................................. 5

D. *Loper Bright* Does Not Implicate The Good Cause Standard In The Sunset Review Statute ........................................................................................................................... 9

CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*AG der Dillinger Huttenwerke v. United States*,
   193 F. Supp. 2d 1339 (Ct. Int'l Trade 2002) ............................................................................ 9

*Apex Frozen Foods Pvt. V. United States*,
   144 F. Supp. 3d 1308 (Ct. Int'l Trade 2016), *aff'd, Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1337 (Fed. Cir. 2017)....................................................................................... 11

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
   102 F.4th 1257 (Fed. Cir. 2024) .............................................................................................. 10

*Batterton v. Francis*,
   432 U.S. 416 (1977) ................................................................................................................ 10

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. am. Cast Iron Pipe Co.*,
   5 F.4th 1367 (Fed. Cir. 2021) .................................................................................................... 4

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020)............................................................................................................... 8

*Bureau of Alcohol, Tobacco and Firearms v. FLRA*,
   464 U.S. 89 (1983) .................................................................................................................... 2

*CBOCS West, Inc. v. Humphries*,
   553 U.S. 442 (2008) .................................................................................................................. 3

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ........................................................................................................ *passim*

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
   66 F.4th 968 (Fed. Cir. 2023) .................................................................................................... 5

*Dickerson v. United States*,
   530 U.S. 428 (2000) .................................................................................................................. 3

*Dillinger France SA v. United States*,
   981 F.3d 1318 (Fed. Cir. 2020) ............................................................................................... 12

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000) ................................................................................................. 4

*Fujitsu General Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ................................................................................................... 4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .................................................................................................. 3

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015) ............................................................................... 11

*Koenig & Bauer-Albert AG v. United States*,
  259 F.3d 1341 (Fed. Cir. 2001) ................................................................................. 7

*Lichter v. United States*,
  334 U.S. 742 (1948) ................................................................................................ 10

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024)..................................................................................... *passim*

*Michigan v. EPA*,
  576 U.S. 743 (2015) ................................................................................................ 10

*Micron Tech. Inc. v. United States*,
  243 F.3d 1301 (Fed. Cir. 2001) ................................................................................. 7

*Mid Continent I Steel & Wire, Inc. v. United States*,
  940 F.3d 662 (Fed. Cir. 2019) ................................................................................. 12

*Mid Continent Steel & Wire, Inc. v. United States*,
  31 F.4th 1367 (Fed. Cir. 2022) ................................................................................ 11

*Mid Continent Steel & Wire, Inc. v. United States*,
  680 F. Supp. 3d 1346 (Ct. Int'l Trade 2024), appeal docketed No. 24-1556 ........... 11

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) ................................................................................. 7

*Russello v. United States*,
  464 U.S. 16 (1983) .................................................................................................... 7

*SKF USA, Inc. v. United States*,
  630 F.3d 1365 (Fed. Cir. 2011) ............................................................................... 11

*Skidmore v. Swift & Co*,
  323 U.S. 134 (1944) .................................................................................................. 2

*Smith-Corona Group v. United States*,
  713 F.2d 1568 (Fed. Cir. 1983) ................................................................................. 4

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ............................................................................................. 5

*Stupp Corp. v. United States*,
   5 F.4th 1341 (Fed. Cir. 2021) ......................................................................................... 11, 12

*Stupp Corp. v. United States*,
   619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023) *appeal docketed* No. 23-1663 (Mar. 27, 2023) .. 11

*Timex V.I., Inc. v. United States*,
   157 F.3d 879 (Fed. Cir. 1998) ............................................................................................. 6

*Union Steel v. United States*,
   713 F.3d 1101 (Fed. Cir. 2013) ........................................................................................... 11

*Usinor Industeel, S.A. v. United States*,
   215 F. Supp. 2d 1356 (Ct. Int'l Trade 2002) ........................................................................ 7

*Wayman v. Southard*,
   10 Wheat. 1 (1825) ............................................................................................................. 10

**Regulations**

19 C.F.R. § 351.218(b) .............................................................................................................. 6

**Other Authorities**

*Modification to Regulation Concerning the Revocation of Antidumping and Countervailing Duty Orders*,
   77 Fed. Reg. 29,875 (Dep't of Commerce May 21, 2012) .................................................... 7

BLACK'S LAW DICTIONARY (12th Ed.) ............................................................................ 9

Statement of Administrative Action accompanying the Uruguay Round Agreements Act,
   H.R. Doc. 103-316, Vol. 1 (1994) ................................................................................. 4, 7, 8

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, SENIOR JUDGE

| | |
|---|---|
| RESOLUTE FP CANADA INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-00095 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| COMMITTEE OVERSEEING ACTION FOR ) | |
| LUMBER INTERNATIONAL TRADE ) | |
| INVESTIGATIONS OR NEGOTIATIONS; ) | |
| AND SIERRA PACIFIC INDUSTRIES ) | |
| ) | |
| Defendant-Intervenors. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF**

Defendant, the United States, respectfully responds to Resolute FP Canada Inc.'s (Resolute) supplemental brief. ECF No. 49 (Supp. Br.). Resolute raises *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), as relevant subsequent authority. As explained below, *Loper Bright* does not advance Resolute's case. The Department of Commerce's (Commerce) final results are supported by substantial evidence and in accordance with law, and thus, the Court should sustain those results and enter judgment for the United States.

A.  ***Loper Bright***

Construing the Administrative Procedure Act, 5 U.S.C. § 706, *Loper Bright* overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (*Chevron*). Under *Chevron*, courts employed a two-step framework for an agency's

interpretation of statutes that Congress entrusted them to administer. Under step one, a court discerned whether Congress had directly spoken to the precise question at issue, and if congressional intent was clear, that ended the inquiry. *Loper Bright*, 144 S. Ct. at 2254 (citing *Chevron*). Under step two, if a court determined that the statute was silent or ambiguous with respect to the specific issue at hand, the court deferred to the agency's interpretation if it as based on a permissible construction of the statute. *Id*. **The courts thus deferred to reasonable agency interpretations of statutory ambiguities or gap-filling.** ***Chevron*, 267 U.S. at 844.**

In *Loper Bright*, the Court held that "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 144 S. Ct. at 2273. Although it overruled step two of the *Chevron* framework, in which courts deferred to agencies' reasonable interpretation of silent or ambiguous statutes, the Court stated:

> In exercising such judgment, though, courts may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. Such interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance" consistent with the {Administrative Procedures Act}.

*Id.* at 2262 (quoting *Skidmore v. Swift & Co*, 323 U.S. 134 (1944) (*Skidmore*)). Further, in cases in which a statutory ambiguity implicates a technical matter, the Court observed that:

> In an agency case in particular, the court will go about its task with the agency's "body of experience and informed judgment," among other information, at its disposal. And although an agency's interpretation of a statute "cannot bind a court," it may be especially informative "to the extent it rests on factual premises within {the agency's} expertise." Such expertise has always been one of the factors which may give an Executive Branch interpretation particular "power to persuade, if lacking power to control."

2

*Id.* at 2267 (quoting *Skidmore*, 323 U.S. at 140; *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98, n. 8 (1983)).  Thus, courts are informed by agencies' interpretation and experience with statutes that Congress entrusted them to administer.

The Court also recognized there are instances in which a statute either expressly or impliedly authorizes an agency to exercise discretion and flexibility:

> the statute's meaning may well be that the agency is authorized to exercise a degree of discretion.  Congress has often enacted such statutes.  For example, some statutes expressly delegate{} to an agency the authority to give meaning to a particular statutory term.  Others empower an agency to prescribe rules to fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as appropriate or reasonable.

*Loper Bright*, 144 S. Ct. at 2263 (internal citations and quotation marks omitted).  In such instances, reviewing courts "independently interpret the statute and effectuate the will of Congress subject to constitutional limits" "by recognizing constitutional delegations, fix{ing} the boundaries of {the} delegated authority, and ensuring the agency has engaged in reasonable decisionmaking within those boundaries."  *Id.* (internal citations and quotation marks omitted).

Additionally, the Court directed that earlier cases relying on *Chevron* remain good law:

> {H}owever, we do not call into question prior cases that relied on the *Chevron* framework.  The holdings of those cases that specific agency actions are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite our change in interpretive methodology.  Mere reliance on *Chevron* cannot constitute a "special justification" for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just an argument that the precedent was wrongly decided.  That is not enough to justify overruling a statutory precedent.

*Id.* at 2273 (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 456 (2008); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014); *Dickerson v. United States*, 530 U.S. 428, 443 (2000)).  Thus, precedent sustaining Commerce's interpretation of the antidumping and

3

countervailing duty statutes remains in effect under the principle of *stare decisis* even if a court had reached its decision under step two of the *Chevron* analysis.

And lastly, *Loper Bright* construed the APA, which "specifies that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action, . . . —even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it." 144 S. Ct. at 2261 (quoting 5 U.S.C. § 706) (emphasis by Court). Unlike *Loper Bright*'s reliance on the APA, the standard of review for Commerce's sunset proceedings lacks any similar admonition. 19 U.S.C. § 1516a(b)(1)(B)(i) (standard limited to setting aside determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law").

      **B.**    **Commerce's Broad Discretion Under the Antidumping and Countervailing Duty Laws**

Although *Loper Bright* overruled *Chevron* deference to agency interpretations of silent or ambiguous statutes under the APA, it did not disturb the Federal Circuit's longstanding recognition that Commerce's determinations in antidumping and countervailing duty matters are entitled to deference *distinct* from *Chevron*, due to the Act's complex and technical nature. *Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.,* 5 F.4th 1367, 1374-75 (Fed. Cir. 2021) (recognizing "deference {that} is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise"); *Fujitsu General Ltd. v. United States*, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (same); *Smith-Corona Group v. United States*, 713 F.2d 1568, 1582 (Fed. Cir. 1983) (holding that "review of the statute reveals tremendous deference to the expertise of {} Commerce in administering the antidumping law"); *F.lli De Cecco Di Filippo Fara S. Martino*

4

*S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("Commerce's special expertise makes it the 'master' of the anti-dumping law, entitling its decisions to great deference").

Indeed, the statutory scheme reinforces that Congress intended to delegate significant discretion to Commerce in its implementation of the antidumping duty laws.  For example, in the Uruguay Round Agreements Act (URAA), which enacted 19 U.S.C. § 1675(c), Congress expressly approved the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), designated the SAA an "authoritative expression by the United States concerning the interpretation and application of" the URAA.  19 U.S.C. § 3512(d).  Similarly, the URAA delegated authority to "Commerce to adopt 'such regulations as may be necessary to ensure that any provision of {the URAA}, or amendment made by {the URAA}, that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date.'" *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 977 (Fed. Cir. 2023) (quoting 19 U.S.C. § 3513(a)(2)) (bracketing by Court).

### C.  *Loper Bright* Does Not Undermine Commerce's Decision To Conduct Its Sunset Review On An Order-Wide Basis

*Loper Bright* overturned the second step of the *Chevron* analysis, directing courts to "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity."  144 S. Ct. at 2266.  However, here there is no statutory ambiguity to resolve because the traditional tools of statutory construction establish the meaning of the statute.  And to the extent there is any gap or ambiguity in the statute, Congress delegated authority to Commerce to fill it.

In its supplemental brief, Resolute asserts that the statute is unambiguous in its purpose and provides that "the default position is to sunset orders after five years."  Supp. Br. at 5-7.

5

Resolute thus contends that the statute permits revocation of an order to be company-specific. *Id.* at 7-10. Resolute is wrong. As an initial matter, although it now contends there is no ambiguity, in its earlier briefing in this case, Resolute contradictorily asserted that the statute *is* ambiguous because revocation can be "in whole or in part" for purposes of administrative and changed circumstance reviews, 19 U.S.C. § 1675(d)(1), but the statute does not contain that language for purposes of sunset reviews, *see* 19 U.S.C. 1675(d)(2). Resolute Br. at 21-24; Resolute Rep. at 10-11. Resolute does not explain any basis for its about face, and because it failed to raise the argument that the statute is unambiguous in its opening brief – and, in fact, argued to the contrary – Resolute has waived its new argument. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("arguments not raised in the opening brief are waived."). Either way, Resolute's arguments fail after *Loper Bright* just as they failed before because Congress's intent that sunset reviews be performed on an order-wide basis is clear from the statute and legislative history.

  First, the plain language of the statute does not provide for company-specific revocation. The statute states that Commerce shall conduct a sunset review to determine "whether revocation of the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of dumping." 19 U.S.C. § 1675(c); 19 C.F.R. § 351.218(b). In doing so, Commerce shall consider the weighted-average dumping margins determined in the investigation and subsequent reviews, as well as the volume of imports of subject merchandise for the period before and after the issuance of an antidumping duty order. 19 U.S.C. § 1675a(c)(1)(A)-(B). Upon completion of a sunset review, Commerce revokes an antidumping duty order unless it "makes a determination that dumping . . . would be likely to continue or recur, and {the International Trade Commission} makes a determination that material injury would be likely to continue or recur."

19 U.S.C. § 1675(d)(2).  Nothing in the plain language of the statute provides for, permits, or even envisions company-specific revocation.

Second, Resolute's argument that the term "revocation" is ambiguous cuts against its contention that the statute permits company-specific revocation of an order.  "Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction." *Loper Bright*, 144 S. Ct. at 2268.  To the extent the statute's text does not explicitly address the precise question, the analysis relies on the traditional tools of statutory construction, which "include the statute's structure, canons of statutory construction, and legislative history." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).  That Congress provided that revocations may be "in whole or in part" in administrative and changed circumstance reviews, *see* 19 U.S.C. § 1675(d)(1),[1] but does not include that language for sunset reviews in another section of the same statute, 19 U.S.C. § 1675(d)(2), demonstrates that Congress did not intend for revocations in sunset reviews to be company-specific (that is, "in part").  In employing the traditional tools of statutory construction and examining a statute's structure, "{w}here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  Here, Congress elected not to provide for partial revocations (in particular, company-specific revocations) in sunset reviews.

The SAA further confirms that Commerce's determinations of the likelihood of recurrence of dumping are made on an order-wide, rather than company-specific, basis.  As

---

[1] In 2012, Commerce modified its regulations to remove provisions permitting company-specific revocations under 19 U.S.C. § 1675(d)(1), the statutory provision pertaining to administrative and changed circumstance reviews. *See Modification to Regulation Concerning the Revocation of Antidumping and Countervailing Duty Orders*, 77 Fed. Reg. 29,875, 29,877  (Dep't of Commerce May 21, 2012) ("Company-specific revocations are not required by U.S. law, and thus, the elimination of such revocations is consistent with U.S. law.").

explained above, the SAA is "'an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and the {Uruguay Round Agreements} Act in any judicial proceeding in which a question arises concerning such interpretation or application.'"  *Koenig & Bauer-Albert AG v. United States*, 259 F.3d 1341, 1345 (Fed. Cir. 2001) (quoting 19 U.S.C. § 3512(d)); *see also Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (discussing the "legislative history found in the {SAA}"); *Micron Tech. Inc. v. United States*, 243 F.3d 1301, 1309 (Fed. Cir. 2001) ("The SAA, of course, is more than mere legislative history."); *Usinor Industeel, S.A. v. United States*, 215 F. Supp. 2d 1356, 1358 (Ct. Int'l Trade 2002) ("Apart from its statutory approval in 19 U.S.C. § 3512(d), in practical terms the SAA is more compelling than ordinary statutory legislative history.").  The SAA explicitly provides that "Commerce and the Commission will make their sunset determinations on an *order-wide*, rather than company-specific, basis." SAA at 879 (emphasis added).  Thus, employing the traditional tools of statutory construction demonstrates that company-specific revocations in sunset determinations are not provided for in the statute.

Resolute articulates no legal basis for company-specific revocations in sunsets reviews and instead asserts that order-wide is "undefined" and "{c}ountries do not dump, but companies do," and thus, "order-wide" must mean "that when a single company is released from an order, the order continues as to all other respondent parties." Supp. Br. at 8-10.  Order-wide means what is says and says what it means – over the entire order.  "This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.  After all, only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738 (2020).  The statute does not require company-specific revocation determinations in sunset reviews and the SAA expressly

8

directs that sunset determinations are made order-wide. The Court should reject Resolute's unorthodox statutory construction. The plain language of the statute and the SAA's clear intent confirm that sunset determinations are made on an order-wide basis.

      **D.**    *Loper Bright* **Does Not Implicate The Good Cause Standard In The Sunset Review Statute**

In determining whether there is a likelihood of continuation or recurrence of dumping, the statute provides that Commerce consider (1) the weighted average dumping margins determined in the investigation and subsequent reviews; and (2) the volume of imports of subject merchandise for the period before and the period after the issuance of the antidumping duty order. 19 U.S.C. § 1675a(c)(1). The statute further states that "{i}f good cause is shown, {Commerce} shall also consider such other price, cost, market, or economic factors as it deems relevant." 19 U.S.C. § 1675a(c)(2). The statute does not define "good cause," but leaves it to Commerce to determine what facts satisfy that standard and what factors it may "deem relevant" to an evaluation of likelihood of continuation or recurrence of dumping.

Resolute contends that the Court should not defer to Commerce's interpretation of "good cause." Supp. Br. at 10-12. According to Resolute, Commerce erroneously concluded that "good cause" is limited to "other price, cost, market or economic factors as it deems relevant," when these factors are simply examples of what may be considered in a sunset review where good cause has been shown. *Id*. at 11-12. Citing a *Black's Law Dictionary* definition, Resolute asserts that "good cause" is a low bar which, if met, compels Commerce to credit factors that Resolute deems relevant. These arguments misapprehend *Loper Bright* and Commerce's findings in this case.

As an initial matter, the Government did not determine that "good cause" is limited to "other price, cost, market, or economic factors" but instead stated that sunset reviews are not an

9

avenue to recalculate rates from other segments of the proceeding, which at its core, is what Resolute seeks by requesting that Commerce revoke the antidumping duty order as to Resolute. *See* U.S. Br. at 11-12; *AG der Dillinger Huttenwerke v. United States*, 193 F. Supp. 2d 1339, 1358 (Ct. Int'l Trade 2002) ("A sunset review does not provide for recalculation of the original {} rate such that duties on entered imports that were subject to the order must be revised retroactively."). Thus, Resolute mischaracterizes Commerce's interpretation of good cause.

Moreover, Resolute is wrong that *Loper Bright* requires that the Court interpret the "good cause" requirement *de novo*. *Loper Bright* recognized that certain statutes by their nature delegate to agencies a degree of discretion and flexibility. 144 S. Ct. at 2263. For example, certain statutes "expressly delegate" authority to give meaning to particular statutory terms, or "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,' such as 'appropriate' or 'reasonable.'" *Id.* (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977); *Wayman v. Southard*, 10 Wheat. 1, 43 (1825); *Michigan v. EPA*, 576 U.S. 743, 752 (2015)). The term "good cause" in 19 U.S.C. § 1675a(c)(2), like the terms "appropriate" or "reasonable," is precisely the type of term that provides an agency with flexibility. Therefore, this Court should only "ensur{e} the agency has engaged in reasoned decisionmaking within those boundaries." *Loper Bright,* 144 S. Ct. at 2263 (citations and quotation marks omitted).

The Federal Circuit recently recognized that certain statutory terms are "general in nature, indicating that Congress intended to delegate the question of whether particular facts satisfy the statute's requirements to Commerce." *Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1259 (Fed. Cir. 2023). There, the Court found that "broad," "nonspecific statutory language" like the term "substantially dependent"

reflects Congress's "expression of its well-considered judgment as to the degree of administrative authority which it was necessary to grant." *Id.* at 1259-60 (citing *Lichter v. United States*, 334 U.S. 742 (1948)). If a term is "general but not ambiguous," a case is "more properly viewed as one involving implied delegation of adjudicative authority to the agency rather than deference to the agency's interpretation of an ambiguous statute." *Id.* at 1261. Likewise, the broad term "good cause" is inherently discretionary and delegates to Commerce the adjudicative authority to determine whether certain factual scenarios meet the standard.

In this case, Commerce evaluated Resolute's claim that good cause exists to consider information beyond that listed in 19 U.S.C. § 1675a(c)(1), and Commerce reasonably concluded that good cause does not exist. *See* U.S. Br. at 15-21; IDM at 16-18. Commerce addressed separate litigation challenging the Cohen's *d* test, one narrow aspect of Commerce's differential pricing analysis, which remains ongoing and are specific to the facts of those cases. Moreover, the Federal Circuit has not held that Commerce's Cohen's *d* test is unlawful but has merely remanded for further explanation. *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021); *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367 (Fed. Cir. 2022).[2] Commerce's determinations are routinely challenged, and these challenges may last for years (the *Stupp* and *Mid Continent* litigation has been ongoing since 2015). It would be unreasonable to permit do-overs of earlier segments of the proceeding under the auspices of "good cause," particularly when the underlying basis remains in flux due to ongoing litigation.

Rather than demonstrating any sort of "good cause," Resolute merely relitigates issues from separate segments of the proceeding, which are subject to ongoing litigation before North

---

[2] These cases are before the Federal Circuit after the Court sustained Commerce's further explanation. *See Stupp Corp. v. United States*, 619 F. Supp. 3d 1314 (Ct. Int'l Trade 2023), *appeal docketed* No. 23-1663 (Mar. 27, 2023); *Mid Continent Steel & Wire, Inc. v. United States*, 680 F. Supp. 3d 1346 (Ct. Int'l Trade 2024), *appeal docketed* No. 24-1556.

America Free Trade Agreement and United States-Mexico-Canada binational panels. U.S. Br. at 10-12. Resolute contends that the basis for the margin it received in the investigation and first administrative review is "unlawful," and as such "good cause" exists for Commerce to consider other information in the sunset review. Supp. Br. at 10-11. But again, Resolute rests on the Federal Circuit's remands for explanation in *Stupp* and *Mid Continent*. Moreover, this Court and the appellate court have repeatedly sustained various aspects of the differential pricing analysis as reasonable. *See, e.g., Apex Frozen Foods Pvt., Ltd. v. United States*, 144 F. Supp. 3d 1308 (Ct. Int'l Trade 2016), *aff'd, Apex Frozen Foods Pvt., Ltd. v. United States*, 862 F.3d 1337 (Fed. Cir. 2017); *SKF USA, Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011); *Union Steel v. United States*, 713 F.3d 1101 (Fed. Cir. 2013); *JBF RAK LLC v. United States*, 790 F.3d 1358 (Fed. Cir. 2015); *Dillinger France SA v. United States*, 981 F.3d 1318 (Fed. Cir. 2020); *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021), *Mid Continent I Steel & Wire, Inc. v. United States*, 940 F.3d 662 (Fed. Cir. 2019). *Loper Bright* confirms that these cases remain good law. 144 S. Ct. at 2273 ("we do not call into question prior cases that relied on the *Chevron* framework").

Furthermore, Resolute relies on an unsupported assumption that, but for the differential pricing analysis, it would not have been subject to the antidumping duty order at all. However, it is speculative to assume that its margin would be zero or *de minimis*, because of separate, ongoing litigation in cases involving different products and orders. Rather, the relevant statute, 19 U.S.C. § 1677f-1(d)(1)(B), permits alternative comparison methods regardless of whether Commerce applies the Cohen's *d* test as part of its differential pricing analysis. Thus, even were Commerce to abandon the Cohen's *d* test in *Stupp* and *Mid Continent*, no person can prejudge how Commerce might implement section 1677f-1(d)(1)(B), let alone, the ultimate disposition of

12

claim. In any event, Resolute's investigation margin will be resolved in the appropriate NAFTA forum, and Commerce lawfully found that a sunset review was not such a forum.

Resolute also contends that "once 'good cause' is established," Commerce must credit other factors such as the possibility that Resolute would have had a zero margin but for Commerce's application of its differential pricing methodology in the investigation. Supp. Br. at 12. Even if Resolute had shown good cause, which it did not, Congress authorized Commerce to consider the factors that "it deems relevant." 19 U.S.C. § 1675a(c)(2). Thus, Congress did not mandate that Commerce credit every factor brought to its attention in a sunset review; rather, it delegated to Commerce the discretion to consider only those factors that the agency may deem relevant. That Resolute contends that Commerce's differential pricing methodology a relevant factor does not mean that Commerce was compelled to reach the same conclusion when exercising its delegated discretion.

## CONCLUSION

In sum, *Loper Bright* does not alter the relevant legal authority to assess whether Commerce's final results of the first expedited sunset review of the antidumping duty order on softwood lumber from Canada are supported by substantial evidence and in accordance with law. For these reasons, we respectfully request that the Court sustain Commerce's final results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ CLAUDIA BURKE
Deputy Director

| | |
|---|---|
| OF COUNSEL:<br>Elio Gonzalez<br>Senior Counsel<br>U.S. Department of Commerce<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>Washington, D.C.<br>Tel.: (202) 353-0521 | /s/ STEPHEN C. TOSINI<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel.: (202) 616-5196<br>Email: stephen.tosini@usdoj.gov |
| July 25, 2024 | Attorneys for the United States |