**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

| | |
|---|---|
| **RESOLUTE FP CANADA INC.,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**UNITED STATES,**<br><br>        **Defendant,**<br><br>    **and**<br><br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,** *et al.*,<br><br>        **Defendant-Intervenors.** | **Court No. 23-00095** |

**RESPONSE BRIEF OF THE COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS TO PLAINTIFF RESOLUTE FP CANADA INC.'S SUPPLEMENTAL BRIEF ON SUBSEQUENT AUTHORITY**

Andrew W. Kentz
Zachary J. Walker
Sophia J.C. Lin

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW
Suite 700
Washington, DC 20036
(202) 888-0595

*Counsel to the COALITION*

July 25, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

    I.    Commerce's Conduct of Five-Year Sunset Reviews .................................................. 1

    II.   Commerce's Expedited Sunset Review of the Antidumping Duty Order on Softwood Lumber From Canada ............................................................................................. 3

ARGUMENT ....................................................................................................................... 4

    I.    Commerce's *Final Results* Are in Accordance with Law ......................................... 4

        A.   The Government Did Not Misinterpret the Sunset Review Statute in Explaining the Statutory Framework ............................................................. 5

        B.   Commerce Lawfully Conducted Its Sunset Review on an Order-Wide Basis ... 6

        C.   Commerce Lawfully Declined to Consider 'Other Factors' After Determining that Resolute Failed to Establish 'Good Cause' ............................................ 9

    II.   Commerce's Statutory Interpretation Is Entitled to *Skidmore* Deference ................. 10

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Ceramica Regiomontana, S.A. v. United States*,
  636 F. Supp. 961 (Ct. Int'l Trade 1986) ...................................................................11

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) .......................................................................................... 7

*Lindh v. Murphy*,
  521 U.S. 320 (1997) .......................................................................................... 7

*Loper Bright Enters. v. Raimondo*,
  603 U.S. __, 144 S. Ct. 2244 (2024) ............................................................... *passim*

*Micron Tech., Inc. v. United States*,
  243 F.3d 1301 (Fed. Cir. 2001) ......................................................................... 3

*SKF USA Inc. v. United States*,
  263 F.3d 1369 (Fed. Cir. 2001) ......................................................................... 3

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ..........................................................................................11

## Statutes

19 U.S.C. § 1516a ......................................................................................... 1, 2

19 U.S.C. § 1675 ..................................................................................... 1, 5, 6, 7

19 U.S.C. § 1675a ....................................................................................... *passim*

19 U.S.C. § 3512 ............................................................................................ 3, 7

## Administrative Determinations

*Certain Softwood Lumber Products From Canada: Continuation of Antidumping and
  Countervailing Duty Orders*, 89 Fed. Reg. 1,537 (Dep't Commerce Jan. 10, 2024) .............. 4

*Certain Softwood Lumber Products From Canada: Final Results of the Expedited First
  Sunset Review of the Antidumping Duty Order*, 88 Fed. Reg. 20,479 (Dep't Commerce
  Apr. 6, 2023) ......................................................................................... 3, 4, 9

*Certain Softwood Lumber Products from Canada: Initiation of Less-Than-Fair-Value
  Investigation*, 81 Fed. Reg. 93,892 (Dep't Commerce Dec. 22, 2016)................................... 7

**Other Authorities**

H.R. Rep. No. 103-826 (1994)................................................................................ 1, 2, 7

*Policies Regarding the Conduct of Five-year ("Sunset") Reviews of Antidumping and
    Countervailing Duty Orders; Policy Bulletin*, 63 Fed. Reg. 18,871 (Dep't Commerce
    Apr. 16, 1998) ............................................................................................................ 8

Uruguay Round Agreements Act, Statement of Administrative Action,
    H.R. Doc. No. 103-316, (1994) .................................................................... 2, 3, 7, 8

Court No. 23-00095

# INTRODUCTION

Plaintiff Resolute FP Canada Inc. ("Resolute" or "Plaintiff") argues in its supplemental brief that the U.S. Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. __, 144 S. Ct. 2244 (2024) requires that this Court remand the final determination issued by the U.S. Department of Commerce ("Commerce") to conclude the agency's five-year sunset review of the antidumping duty order on certain softwood lumber products from Canada. *See* Suppl. Br. on Subsequent Authority of Pl. Resolute FP Canada Inc., July 12, 2024 ("Pl.'s Suppl. Br."), ECF 49.  Contrary to Resolute's arguments, *Loper Bright*, while relevant to this Court's interpretation of sections 751 and 752 of the Tariff Act of 1930, as amended (the "Act"), does not require remand to Commerce, as the challenged agency determination remains fully "in accordance with law."  *See* 19 U.S.C. § 1516a(b)(1)(B)(ii).

## I.    Commerce's Conduct of Five-Year Sunset Reviews

Prior to the Uruguay Rounds Agreements Act ("URAA"), there was no provision in U.S. law for sunset reviews of antidumping and countervailing duty orders.  *See* H.R. Rep. No. 103-826, pt. 1, at 5 (1994) ("House Report") (noting that the URAA amended U.S. law, in part, to "require a mandatory injury review {of antidumping duty orders} every five years").  In enacting the URAA, Congress revised the U.S. antidumping law to require the revocation of an antidumping duty order after five years unless revocation of the order would be likely to lead to a continuation or recurrence of dumping and material injury to the domestic industry.  *See* Uruguay Round Agreements Act § 220, 19 U.S.C. § 1675(d)(2).

Section 752(c) of the Tariff Act of 1930, as amended (the "Act"), sets forth the factors for Commerce to consider in determining whether revocation of an antidumping duty order would be likely to lead to the continuation or recurrence of dumping.  *See* 19 U.S.C. § 1675a(c). Precisely, section 752 of the Act states, in relevant part:

Court No. 23-00095

(c) DETERMINATION OF LIKELIHOOD OF CONTINUATION OR RECURRENCE OF DUMPING.—

(1) IN GENERAL.—In a review conducted under section 751(c), the administering authority shall determine whether revocation of an antidumping duty order or termination of a suspended investigation under section 734 would be likely to lead to continuation or recurrence of sales of the subject merchandise at less than fair value. The administering authority shall consider—

(A) the weighted average dumping margins determined in the investigation and subsequent reviews, and

(B) the volume of imports of the subject merchandise for the period before and the period after the issuance of the antidumping duty order or acceptance of the suspension agreement.

(2) CONSIDERATION OF OTHER FACTORS.—If good cause is shown, the administering authority shall also consider such other price, cost, market, or economic factors as it deems relevant.

(3) MAGNITUDE OF THE MARGIN OF DUMPING.—The administering authority shall provide to the Commission the magnitude of the margin of dumping that is likely to prevail if the order is revoked or the suspended investigation is terminated. The administering authority shall normally choose a margin that was determined under section 735 or under subsection (a) or (b)(1) of section 751.

19 U.S.C. § 1675a(c).

The Statement of Administrative Action ("SAA") submitted to the Congress described how the URAA would change existing U.S. law and provided guidance regarding how Commerce would conduct five-year sunset reviews. *See* Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 879-91 (1994) ("SAA"). The SAA explained, for example, that Commerce would make its sunset determinations on an order-wide, rather than a company-specific, basis. SAA at 879 ("Commerce and the Commission will make their sunset determinations on an order-wide, rather than a company-specific, basis."); *see also* House Report at 56 (same). The explanation provided in the SAA is important to discerning the correct interpretation of the Act's sunset provisions, as the SAA "is more than mere legislative history." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1309

2

**Court No. 23-00095**

(Fed. Cir. 2001).  Congress has instructed that the SAA is to be "regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act {(i.e., the URAA)} in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d); *see also SKF USA Inc. v. United States*, 263 F.3d 1369, 1373, n.3 (Fed. Cir. 2001) ("The SAA, of course, is more than mere legislative history.").

## II.   <u>Commerce's Expedited Sunset Review of the Antidumping Duty Order on Softwood Lumber From Canada</u>

The final results of Commerce's sunset review of the antidumping duty order on certain softwood lumber products from Canada analyzed whether revocation of the order would likely lead to the continuation or recurrence of dumping and determined the magnitude of dumping likely to prevail if the order were revoked.  *See Certain Softwood Lumber Products From Canada: Final Results of the Expedited First Sunset Review of the Antidumping Duty Order*, 88 Fed. Reg. 20,479 (Dep't Commerce Apr. 6, 2023) ("*Final Results*"), P.R. 46.[1]  Commerce's final determination found that Resolute failed to submit information or evidence sufficient to demonstrate "good cause" for the agency to consider other factors in section 752(c)(2) of the Act. IDM at 18, P.R. 45; *see also* 19 U.S.C. § 1675a(c)(2) (instructing Commerce to "consider such other price, cost, market, or economic factors as it deems relevant" when "good cause is shown").  Commerce also rejected Resolute's argument that the agency should provide to the Commission a zero percent dumping margin as the margin of dumping that is likely to prevail if

---

[1]  Commerce's determinations, findings, and conclusions were set out primarily in the "Issues and Decision Memorandum" accompanying the final results.  *See* Commerce Memorandum, "Issues and Decision Memorandum for the Final Results of the Expedited First Sunset Review of the Antidumping Duty Order on Softwood Lumber from Canada" (Mar. 31, 2023) ("IDM"), P.R. 45.

**Court No. 23-00095**

the order is revoked with respect to Resolute, noting that a zero percent dumping margin has

never been assigned to the respondent.  IDM at 21, P.R. 45.[2]  Thereafter, Commerce published a

notice of continuation of the antidumping duty order in the *Federal Register*.  *Certain Softwood*

*Lumber Products From Canada: Continuation of Antidumping and Countervailing Duty Orders*,

89 Fed. Reg. 1,537 (Dep't Commerce Jan. 10, 2024).

## ARGUMENT

### I.   Commerce's *Final Results* Are in Accordance with Law

The response briefs filed in this case demonstrate that Commerce lawfully assessed

whether revocation of the antidumping duty order would be likely to lead to the continuation or

recurrence of dumping on an order-wide basis and lawfully determined the magnitude of the

margin of dumping likely to prevail if the order is revoked.  *See, e.g.*, Resp. Br. of the

COALITION in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R., Feb. 26, 2024

("COALITION Resp. Br."), ECF 31.  Resolute's supplemental brief argues that "*Loper Bright* no

longer permits this Court's deference to 'reasonable' or 'permissible' interpretations of the Tariff

Act."  Pl.'s Suppl. Br. 4.  According to Resolute, Commerce's statutory interpretations in the

final results are impermissible because they do not represent the best statutory interpretation.

*See id.* at 3.  Resolute's arguments regarding Commerce's statutory interpretations must fail,

however, as Plaintiff fails to properly apply *Loper Bright* to the issues presented in this case.  As

---

[2]  Resolute was assigned a dumping margin of 3.20 percent in the original investigation based on Commerce's analysis of the company's own sales and cost information.  *See* IDM at 21 (citation omitted), P.R. 45.  Resolute was also assigned an above *de minimis* dumping margin when it was reviewed as a mandatory respondent in the first administrative review.  *Id.* at 22 (citation omitted).  In no segment of this proceeding has Commerce assigned Resolute a zero or *de minimis* dumping margin.  *See id.* at 21-22 (summarizing the dumping margins calculated in the original investigation and subsequent administrative reviews).  Thus, Resolute's repeated statements to this Court that it "was never dumping," *see, e.g.*, Pl.'s Suppl. Br. 9, is an inaccurate representation of the determinations made by Commerce under this antidumping duty order.

Court No. 23-00095

a result, this Court should hold that Commerce acted within its statutory authority in the final results of the challenged expedited sunset review and enter judgment in favor of defendant United States.

    A.    <u>The Government Did Not Misinterpret the Sunset Review Statute in Explaining the Statutory Framework</u>

Resolute's supplemental brief claims that the Government "misinterprets the overall statutory framework for sunset reviews" by "plac{ing} the burden on Resolute to demonstrate why the order should not remain in place." Pl.'s Suppl. Br. 5-7. Resolute's brief alleges inconsistency where none exists. Contrary to Resolute's argument, Commerce did not "invert" the statutory intent. *See id.* at 7 (claiming that Commerce "invert{ed} statutory intent"). Rather, Commerce declined to revoke the antidumping duty order only after finding that the conditions set forth in section 751(d)(2) of the Act to maintain the order were met. *See* 19 U.S.C. § 1675(d)(2). The statute requires that Commerce consider "the weighted average dumping margins determined in the investigation and subsequent reviews" and "the volume of imports of the subject merchandise for the period before and the period after the issuance of the antidumping duty order" in determining whether revocation of an antidumping duty order would be likely to lead to continuation or recurrence of dumping. *Id.* § 1675a(c)(1). The final results show that Commerce considered both of these factors in reaching its likelihood determination. *See* IDM at 18 (considering the dumping margins calculated by the Department), 18-19 (considering the volume of imports), P.R. 45. Thus, Resolute's belief that the Government's statement that "{t}he purpose of a sunset review is to assess whether 'revocation of an antidumping . . . duty order . . . would be likely to lead to continuation or recurrence of dumping . . . and of material injury," Def.'s Opp'n to Pl.'s Mot. for J. on the Administrative R. 8,

**Court No. 23-00095**

Feb. 26, 2024, ECF 32, "misinterprets the overall statutory framework for sunset reviews" is wide of the mark and should be rejected.[3]  *See* Pl.'s Suppl. Br. 6.

      B.    <u>Commerce Lawfully Conducted Its Sunset Review on an Order-Wide Basis</u>

      Resolute's supplemental brief maintains that "application of *Loper Bright* affirms that Resolute must be granted company-specific relief under the sunset review statute."  Pl.'s Suppl. Br. 8.  Resolute asserts that this case concerns "whether the statute permits a company-specific finding of likelihood of continuation or recurrence of dumping and, if so, whether Commerce may (or must) revoke an order on a company-specific basis."  *Id.*  Resolute's argument that *Loper Bright* supports its preferred statutory interpretation fails because the Supreme Court's decision directs Courts to "deploy{} its full interpretative toolkit" to find the best meaning of a statute.  *Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2271.  Application of the full interpretative toolkit supports Commerce's decision to conduct sunset reviews on an order-wide basis.

      The statutory provisions at issue in this case detail when "the administering authority shall revoke . . . an antidumping duty order."  19 U.S.C. § 1675(d)(2); *see also id.* § 1675a(c)(1) (instructing that Commerce, in conducting sunset reviews, "shall determine whether revocation of an antidumping duty order . . . would be likely to lead to continuation or recurrence" of dumping).  Nothing in the plain language of the relevant statutes suggests that Congress intended for the administering authority to make revocation decisions on a company-specific basis.[4]

---

[3]  Because the statutory requisites for maintaining the antidumping duty order beyond five years were found to be met, Resolute's statement that "{t}here is no discretion to maintain an order absent positive likelihood findings from both Commerce and the Commission," Pl.'s Suppl. Br. 6, is of no moment.  Moreover, because Commerce acted consistent with the plain language of the statute, Resolute's attempts to invoke *Loper Bright* fail.  *See id.*

[4]  Resolute's announcement that "{c}ountries do not dump, but companies do," Pl.'s Suppl. Br. 9, falters as antidumping duty investigations are conducted (and antidumping duty orders are imposed) on the basis of an individual country, rather than with respect to individual companies.  *See, e.g.*, *Certain Softwood Lumber Products from Canada: Initiation of Less-Than-*

Court No. 23-00095

Instead, the SAA, which is to be "regarded as an authoritative expression by the United States

concerning the interpretation and application" of the URAA, 19 U.S.C. § 3512(d), demonstrates

that Commerce correctly interpreted the statute when it conducted its sunset review on an

order-wide, rather than a company-specific, basis. *See* SAA at 879; House Report at 56.

Resolute's argument regarding company-specific relief also conflicts with the principle that a

negative inference may be drawn from the exclusion of language from one statutory provision

that is included in other provisions of the same statute. *See Hamdan v. Rumsfeld*, 548 U.S. 557,

578 (2006) (citing *Lindh v. Murphy*, 521 U.S. 320, 330 (1997)). While Congress included

language allowing for the partial revocation of an antidumping or countervailing duty order after

an administrative review or a changed circumstances review, *see* 19 U.S.C. § 1675(d)(1), it did

not apply such language to five-year sunset reviews conducted under section 751(c) of the Act.

*Compare* 19 U.S.C. § 1675(d)(1), *with id.* § 1675(d)(2). Thus, the language of the statute does

not support Commerce revoking an antidumping duty order "in part" as a result of a sunset

review.

Moreover, the fact that Commerce's interpretation of the relevant statutory provisions has

remained consistent since the enactment of the URAA further supports the agency's

interpretation. *See Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2258 (explaining that respect to

Executive Branch's interpretation of federal statutes is "especially warranted" when the

interpretation was issued "roughly contemporaneously" with the statute) (citations omitted).

Commerce's interpretation that sunset reviews are to be conducted on an order-wide basis dates

back over 25 years to roughly when the URAA was enacted. *See Policies Regarding the*

---

*Fair-Value Investigation*, 81 Fed. Reg. 93,892 (Dep't Commerce Dec. 22, 2016) (initiating an
investigation on receipt of an antidumping duty petition concerning imports of certain softwood
lumber products <u>from Canada</u>) (emphasis added).

Court No. 23-00095

*Conduct of Five-year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders;*
*Policy Bulletin*, 63 Fed. Reg. 18,871, 18,872 (Dep't Commerce Apr. 16, 1998) ("*Policy*
*Bulletin*") ("Consistent with the SAA at 879, and the House Report at 56, the Department will
make its determination of likelihood on an order-wide basis.").  Thus, Commerce's interpretation
issued in the *Policy Bulletin* roughly contemporaneously with the statute requires that this Court
afford respect to the agency's interpretation.  *See Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2262
(citations omitted).[5]

        In summary, the "interpretive toolkit" used to determine the correct interpretation of the
statute necessarily includes the SAA.  *See Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2271
(explaining that a statute's "best meaning" is discernible "by a court deploying its full
interpretive toolkit").  The SAA confirms that Commerce acted consistent with Congress's
direction when it declined to grant Resolute "company-specific" relief.  The mere fact that other
parts of the Tariff Act may "conceive{} dumping as company-specific,"  Pl.'s Suppl. Br. 8, does
not show that Resolute's preferred statutory interpretation is correct.  As such, *Loper Bright* does
not support Resolute's argument that Commerce erred in conducting its sunset review on a
country or order-wide basis.

---

        [5]  Resolute claims that Commerce's practice of conducting sunset reviews on an order-
wide basis "contradict{} the whole architecture of the dumping law" by "penaliz{ing} a non-
dumping company for the likely continued dumping of other respondents."  Pl.'s Suppl. Br. 9.
Resolute is not a "non-dumping company" being penalized for the unfair trade practices of
others.  Commerce's review of Resolute's <u>own sales and cost</u> information demonstrated that the
company made sales at dumped prices in the underlying investigation (and again when Resolute
was individually reviewed in the first administrative review).  *See* IDM at 21-22 (reporting the
dumping margins assigned to Resolute), P.R. 45.  Thus, there was never any basis for
"releas{ing}" Resolute from the antidumping duty order.

Court No. 23-00095

      C.     <u>Commerce Lawfully Declined to Consider 'Other Factors' After Determining that Resolute Failed to Establish 'Good Cause'</u>

      Resolute's supplemental brief also argues that Commerce's interpretation of the term "good cause" was impermissibly narrow under the standard elucidated in *Loper Bright* and that Commerce should have found "good cause" to exist and considered alternative dumping margins. *See* Pl.'s Suppl. Br. 10-14. Contrary to Resolute's argument, *Loper Bright* does not call into question Commerce's statutory interpretation or its factual finding that Resolute failed to demonstrate "good cause" that would support the agency's consideration of additional factors in making its likelihood determination.

      In its agency case brief, Resolute argued that jurisprudence regarding Commerce's differential pricing methodology ("DPM"), academic literature about the statistical tests that compose the DPM, and an expert report commissioned by the Government of Canada constituted "good cause" for the agency to consider "other factors" in determining whether revocation of the antidumping duty order would be likely to lead to continuation or recurrence of dumping. Letter from Baker & Hostetler LLP to Commerce, "Resolute's Case Brief" (Mar. 3, 2023) ("Resolute's Case Brief"), at 38-42, P.R. 36. In the final results, Commerce found that Resolute failed to demonstrate "good cause" for the agency to consider other factors beyond those included in section 752(c)(1)(A)-(B) of the Act. IDM at 18, P.R. 45. Commerce's decision memorandum addressed, at length, Resolute's arguments regarding the DPM and how the respondent's claims failed to support consideration of other factors beyond those required by section 752(c)(1) of the Act. *See id.* at 8-19.

      Resolute's supplemental brief argues that "Commerce's narrow interpretation of 'good cause' improperly limited consideration of other factors" in a manner that conflicts with *Loper Bright*. Pl.'s Suppl. Br. 12-13. Resolute's argument fails as the Supreme Court acknowledged in

Court No. 23-00095

*Loper Bright* that Congress possesses the ability to "delegate{} authority to an agency consistent with constitutional limits." *Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2273. In such situations, a reviewing court "must respect the delegation," and its task is to ensure "that the agency acts within it." *Id.* The language used by Congress in section 752(c)(2) of the Act reflects Congress's delegation to Commerce the authority to decide whether the factual record developed in a particular sunset review warrants the consideration of other factors. *See* 19 U.S.C. § 1675a(c)(2). Specifically, while Commerce must consider "the weighted average dumping margins determined in the investigation and subsequent reviews" and "the volume of imports of the subject merchandise for the period before and the period after the issuance of the antidumping duty order" under section 752(c)(1) of the Act, section 752(c)(2) only directs Commerce to "consider such other price, cost, market, or economic factors <u>as it deems relevant</u>" "<u>{i}f good cause </u>is shown." *Id.* (emphasis added). Thus, Congress intended to delegate to the agency the authority to determine whether the interested party met its burden by providing information or evidence that would warrant Commerce's consideration of other factors.

## II.    Commerce's Statutory Interpretation Is Entitled to *Skidmore* Deference

In discussing *Loper Bright* and the Supreme Court's decision to overrule *Chevron*, Resolute states that "this Court must apply the new standard of review" in determining whether the final results of Commerce's sunset review are in accordance with law. Pl.'s Suppl. Br. 4 (citation omitted). In overruling *Chevron*, *Loper Bright* notes, however, that "{c}areful attention to the judgment of the Executive Branch may help inform" an inquiry into whether an agency has acted within its statutory authority. *Loper Bright*, 603 U.S. at __, 144 S. Ct. at 2273. Thus, *Loper Bright* did not create a "new standard of review" but rather returned "the final 'interpretation of the laws'" to the courts. *See id.*, 603 U.S. at __, 144 S. Ct. at 2257 (citing The Federalist No. 78, p. 525 (A. Hamilton)).

**Court No. 23-00095**

Post *Loper Bright*, courts must still consider the "body of experience and informed judgment" of the agency in performing its duty of discerning the meaning the law. *Id.*, 603 U.S. at __, 144 S. Ct. at 2267 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In this case, the thoroughness and validity of Commerce's reasoning afford its determination in the final results the power to persuade. *See Skidmore*, 323 U.S. at 140; *Ceramica Regiomontana, S.A. v. United States*, 636 F. Supp. 961, 966 (Ct. Int'l Trade 1986) (citing *Skidmore* and explaining that "a reviewing court must accord due weight to an agency's interpretation of a statute that it administers" (citations omitted)). As detailed in the COALITION's response brief, Commerce's interpretations of sections 751 and 752 of the Act in the final results were consistent with the intent that sunset reviews be conducted on an order-wide basis and that the agency should generally rely only on those margins calculated and published in prior determinations. *See* COALITION Resp. Br. at 12-18. Thus, the Court should afford Commerce's interpretation deference in accordance with *Skidmore*.

**Court No. 23-00095**

## CONCLUSION

For these reasons, and as further explained in the COALITION's response to Plaintiff's motion for judgment on the agency record, the COALITION respectfully requests that this Court sustain the final results of Commerce's expedited sunset review and enter judgment in favor of defendant United States.

Respectfully submitted,

/s/ Zachary J. Walker

Andrew W. Kentz
Zachary J. Walker
Sophia J.C. Lin

**PICARD KENTZ & ROWE LLP**
1155 Connecticut Avenue NW
Suite 700
Washington, DC 20036
(202) 888-0595

*Counsel to the COALITION*

July 25, 2024

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this response to Plaintiff Resolute FP

Canada Inc.'s Supplemental Brief on Subsequent Authority complies with the page limitation

established in this Court's order granting Plaintiff's Motion for Leave to File Supplemental

Briefing on Subsequent Legal Authority Prior to Oral Argument on Subsequent Legal Authority

Prior to Oral Argument.  *See* ECF 48.

Respectfully submitted,

/s/ Zachary J. Walker
Zachary J. Walker

**PICARD KENTZ & ROWE LLP**
*Counsel to the COALITION*

July 25, 2024