# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. JANE RESTANI, JUDGE

| | |
|---|---|
| **RESOLUTE FP CANADA INC.,** | |
| **Plaintiff,** | |
| **v.** | **Court No. 23-00095** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,** | |
| **and** | |
| **SIERRA PACIFIC INDUSTRIES,** | |
| **Defendant-Intervenors.** | |

## SIERRA PACIFIC INDUSTRIES', INCLUDING ITS SUBSIDIARY SENECA SAWMILL COMPANY, RESPONSE BRIEF ON SUBSEQUENT AUTHORITY

David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

WILMER CUTLER PICKERING HALE AND
DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

*Counsel for Defendant-Intervenor Sierra
Pacific Industries, including its
subsidiary Seneca Sawmill Company*

July 25, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ON *LOPER BRIGHT* AND THE STANDARD OF REVIEW ......................... 2

ARGUMENT ...................................................................................................................... 4

I.    *LOPER BRIGHT* HAS NO BEARING ON THIS CASE BECAUSE THE
      LAWFULNESS OF COMMERCE'S DETERMINATION DOES NOT
      RELY ON *CHEVRON* DEFERENCE ......................................................................... 4

      A.    The Five-Year Review Provisions of the Tariff Act Are Unambiguous, and
            Commerce's Interpretation of the Provisions
            Is Correct ................................................................................................. 5

      B.    Resolute Fails to Demonstrate That Commerce's Decision to
            Consider Revocation On An Order-Wide Basis Was Unlawful ............................ 8

      C.    Commerce Correctly Applied the Sunset Review Provision
            When It Determined that "Good Cause" Did Not Exist to
            Consider Resolute's Additional Information ....................................................... 11

            1.    The statute does not allow Commerce to reevaluate its
                  dumping methodology or re-calculate dumping margins
                  under § 1675a(c)(2) ........................................................................ 11

            2.    *Loper Bright* does not implicate the lawfulness of
                  Commerce's DPM .......................................................................... 13

II.   CONCLUSION ...................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

Page(s)

*Batterton v. Francis,*
    432 U.S. 416 (1977)............................................................................................3

*Chevron, U.S.A., Inc. v. Naural Resource Defense Council, Inc.,*
    467 U.S. 837 (1984)............................................................................................1

*Industriales de Aceitunas de Mesa v. United States,*
    429 F. Supp. 3d 1325 (CIT 2020).......................................................................2

*Iselin v. United States,*
    270 U.S. 245 (1926)..........................................................................................10

*Loper Bright Enterprises v. Raimondo,*
    No. 22-451, 144 S. Ct. 2244 (2024)...........................................1, 2, 3, 6, 13, 14

*Michigan v. EPA,*
    576 U.S. 743 (2015)......................................................................................3, 14

*Mid Continent Steel & Wire,*
    940 F.3d 662 (Fed. Cir. 2019)...........................................................................14

*Nichols v. United States,*
    578 U.S. 104 (2016)..........................................................................................10

*Pesquera Mares Australes Ltda. v. United States,*
    266 F.3d 1372 (Fed. Cir. 2001)...........................................................................2

*Qingdao Qihang Tyre Co. v. United* States,
    308 F. Supp. 3d 1329 (CIT 2018).......................................................................2

*Rotkiske v. Klemm,*
    589 U.S. 8 (2019)..............................................................................................10

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944)............................................................................................3

*United States v. American Trucking Associans., Inc.,*
    310 U.S. 534 (1940)............................................................................................3

*Wayman v. Southard,*
    10 Wheat. 1 (1825) ........................................................................................3, 14

**STATUTORY PROVISIONS**

19 U.S.C. § 1675(a)(2)(B)(i) ....................................................................................9

19 U.S.C. § 1675(c)(1) ...........................................................................................5

19 U.S.C. § 1675(c)(1)(C) .......................................................................................8

19 U.S.C. § 1675(c)(2) ...........................................................................................5

19 U.S.C. § 1675(c)(3)(A) .......................................................................................6

19 U.S.C. § 1675(d)(1) ...........................................................................................10

19 U.S.C. § 1675(d)(2) ....................................................................................5, 6, 7

19 U.S.C. § 1675a(c)(2) ...........................................................................1, 11, 12, 13

**ADMINITRATIVE DECISIONS**

*Lightweight Thermal Paper From Germany: Final Results of the First Full Sunset Review of the Antidumping Duty Order*, 79 Fed. Reg. 32,218 (Dep't Commerce June 4, 2014) ......................................................................10

*Policies Regarding the Conduct of Five-Year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders;Policy Bulletin*, 63 Fed. Reg. 18,871, 18,872 (Dep't Commerce Apr. 16, 1998) .........................................10

*Modification to Regulation Concerning the Revocation of Antidumping and Countervailing Duty Orders*, 76 Fed. Reg. 29,875 (Dep't Commerce May 21, 2012) ......................................................................10

**OTHER AUTHORITIES**

Scalia, Antonin & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012) .............................................................10

Statement of Administrative Action, Uruguay Round Trade Agreements Act of 1994, H.R. Rep. 316 103rd Cong., 2d Sess., vol. 1 ...................................5, 6, 8, 10, 12, 13

# INTRODUCTION

Pursuant to this Court's Order of July 10, 2024, Defendant-Intervenor Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company (collectively "Sierra Pacific"), respectfully submits this Response Brief on Subsequent Authority Prior to Oral Argument. Plaintiff Resolute FP Canada Inc. ("Resolute" or "Plaintiff") requested supplemental briefing following the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, No. 22-451, 144 S. Ct. 2244 (2024), and its companion case, *Relentless, Inc. v. Dep't of Commerce*, No. 22-1219, 144 S. Ct. 2244 (2024) (referred to collectively as "*Loper Bright*"). Although Resolute's Supplemental Brief on Subsequent Authority Prior to Oral Argument ("Resolute Supp. Br.") purports to address the impact of *Loper Bright* on the standard of review applicable in this case, in reality it is nothing more than an opportunistic attempt to file an additional brief on the merits.

Plaintiff baldly asserts that *Loper Bright* frees this Court to rule in Plaintiff's favor. However, this case never hinged on court deference to Commerce's statutory interpretations under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Loper Bright* is therefore inapposite, and Resolute's arguments fail in the first instance. Moreover, even if *Loper Bright* were applicable to this case, this Court should still reject Resolute's arguments because *Loper Bright* allows for deference to agency interpretations in circumstances relevant to this case. Resolute fails to show the prior Federal Circuit and CIT cases that interpreted the "good cause" provision in § 1675a(c)(2) of the Tariff Act of 1930, as amended (the "Tariff Act"), and affirmed Commerce's differential pricing methodology ("DPM") turned on deference to the agency's interpretation of the statute.

Because *Loper Bright* has no bearing on this case, and, in the alternative, does not require this Court to jettison almost 30 years of precedent, Sierra Pacific respectfully requests that the

Court reject Plaintiff's arguments and affirm Commerce's final determination in the underlying five-year review.

### BACKGROUND ON *LOPER BRIGHT* AND THE STANDARD OF REVIEW

Plaintiff asserts that *Loper Bright* overruled *Chevron*, thereby "establish{ing} a new standard of judicial review of an agency's statutory interpretations." Resolute Supp. Br. at 2. In reality, however, the Supreme Court's decision is more narrow in its implications for judicial review of agency interpretations.

Prior to *Loper Bright*, under *Chevron* Step One, Commerce's interpretation of the antidumping statute would not be accorded deference where the reviewing court found the meaning of statutory language to be clear and unambiguous. *See Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 429 F. Supp. 3d 1325, 1342 (CIT 2020); *Qingdao Qihang Tyre Co. v. United* States, 308 F. Supp. 3d 1329, 1346 (CIT 2018) ("Because the Department's interpretation of {the statute} . . . is not supported by plain meaning and is contrary to congressional intent, it must be set aside according to *Chevron* Step One."). Only if the reviewing court found the statute to be ambiguous would it accord deference to Commerce's interpretation under *Chevron* Step Two. *See Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001). Under *Loper Bright*, the Supreme Court now charges courts with resolving ambiguities in statutory language by "us{ing} every tool at their disposal to determine the best reading of the statute . . . ." *Loper Bright*, 144 S. Ct. at 2266.

However, *Loper Bright* does not eliminate deference to agency interpretation wholesale. Rather, the Supreme Court acknowledged that Congress has often enacted statutes under which "the agency is authorized to exercise a degree of discretion." *Id.* at 2263. In other words, where

Congress has delegated discretion to an agency, the courts must respect an agency's interpretation of the statute pursuant to that delegation.

The Supreme Court then provided examples of statutory delegations. First, "some statutes expressly delegate to an agency the authority to give meaning to a particular statutory term." *Id.* (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977) (emphasis deleted)). Second, some statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme." *Id.* (quoting *Wayman v. Southard*, 10 Wheat. 1, 43 (1825)). Third, a statute may delegate authority to "regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,'" *id.* (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)), where such terms might include "appropriate" or "reasonable." *Id.*

Moreover, the Supreme Court explained that, under the APA, although courts must exercise independent judgment in determining the meaning of statutory provisions, the exercise of that judgment involves, "as {it has} from the start," "seek{ing} aid from the interpretations of those responsible for implementing particular statutes." *Id.* at 2262. The Supreme Court continues that "{s}uch interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In addition, "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Id.* (citing *Skidmore*, 323 U.S. at 140; *United States v. Ame. Trucking Ass'ns., Inc.*, 310 U.S. 534, 549 (1940)). Thus, *Skidmore* remains good law, and one important consideration in this Court's interpretation of ambiguous statutory text is the existence of longstanding, consistent agency interpretations.

In sum, contrary to Resolute's overbroad assertions, *Loper Bright* does not eliminate deference to agency interpretations, but instead articulates a layered approach to statutory interpretation that encompasses all tools of statutory interpretation while respecting congressional delegations of authority and *Skidmore*.

## ARGUMENT

**I.    *Loper Bright* Has No Bearing on this Case Because the Lawfulness of Commerce's Determination Does Not Rely on *Chevron* Deference**

Resolute cites *Loper Bright* for the proposition that this Court should not defer to Commerce's "misinterpretation" of the five-year review provisions of the Tariff Act.  According to Resolute, the correct interpretation of the statute is that antidumping orders shall be revoked by default after five years, and Commerce inverted this statutory intent by improperly placing the burden on Resolute to demonstrate why the order should not remain in place.  Resolute also argues that the statute permits company-specific findings in five-year reviews, and that Commerce's allegedly improper use of its DPM in prior administrative reviews of the antidumping order on softwood lumber from Canada constitutes "good cause" to recalculate Resolute's dumping margins from those reviews, and, ultimately, to revoke the order with respect to Resolute.  Although Resolute makes a number of arguments in support of its position–some of which are newly-developed since this case was fully briefed–none hinge on the question of whether this Court should accord deference to Commerce's interpretation of ambiguous statutory text.  Thus, *Loper Bright* is inapposite to this Court's review of Commerce's determinations.  The Court should reject Resolute's arguments and uphold Commerce's determination as reasonable, supported by substantial evidence, and otherwise in accordance with law.

- 4 -

A.    **The Five-Year Review Provisions of the Tariff Act Are Unambiguous, and Commerce's Interpretation of the Provisions Is Correct**

Resolute first argues that Commerce improperly placed the burden on Resolute to demonstrate why the order should not remain in place, when the "plain language of the statute, informed by legislative history {specifically, the Statement of Administrative Action, Uruguay Round Trade Agreements Act of 1994, H.R. Rep. 316, 103rd Cong., 2d Sess., vol. 1 (hereinafter "SAA")}, indicates that the default position is to sunset orders after five years."  Resolute Supp. Br. at 7.  As a threshold matter, although Resolute addressed the SAA in its opening and reply brief, it failed to present this novel interpretation of the statute in either submission.  Resolute's request for supplemental briefing on *Loper Bright* is a thinly veiled attempt to re-argue the merits of its case, and the Court should reject Resolute's argument for this reason alone.

Moreover, even if Resolute had previously raised its new interpretation of the five-year review provisions in its earlier submissions, this Court should still reject Resolute's argument, because Commerce did not misinterpret the statute.  The term "sunset" appears nowhere in the statute, nor does the statute provide for "automatic" revocation after five years.  To the contrary, the statute requires Commerce and the U.S. International Trade Commission ("ITC") to conduct a five-year review of every antidumping order to determine whether revocation of the order would be likely to lead to continuation or recurrence of dumping and material injury.  19 U.S.C. § 1675(c)(1).  In furtherance of this process, the statute requires Commerce to publish a notice of initiation of each review and to request that domestic and foreign interested parties express a willingness to participate in the review by providing information requested by Commerce and the ITC.  *Id.* § 1675(c)(2).  Depending on the results of the Commerce and ITC reviews, Commerce may or may not ultimately revoke an order.  *See id.* § 1675(d)(2).  However, there is no "default" requirement in the statute that Commerce must automatically revoke orders after

five years.  *See id.*  Rather, the statute only requires Commerce to revoke an order with no

further investigation where *no* domestic interested party has responded to a notice of initiation to

express a willingness to participate in the review, which was not the case here.  *See id.* §

1675(c)(3)(A).  Resolute's argument is contrary to the unambiguous language of the statute,

without resort to any type of deference to Commerce's interpretation.

The SAA also contradicts Resolute's interpretation.  *See Loper Bright*, 144 S. Ct. at 2262

(discussing legislative history of the APA as support for analysis of plain meaning).  For

example, Resolute correctly notes that the SAA discusses Article 11 of the WTO Antidumping

Agreement, which for the first time set a time limit on the imposition of antidumping measures.

Resolute Supp. Br. at 6-7 (citing SAA at 817).  However, Resolute fails to note the context in

which the SAA discusses this issue.  Specifically, the discussion appears in the section of the

SAA that addresses so-called "transition" orders, which are antidumping and countervailing duty

orders that were already in effect during the negotiation of the Uruguay Round.  The SAA

explains that some countries proposed during the negotiations that such orders should be revoked

immediately if they had been in effect for more than five years as of the date of entry into force

of the WTO Agreement, and that the United States resisted these efforts.  The SAA also explains

that the rules that were ultimately agreed–which Congress incorporated into the statute–provided

instead that such transition orders "shall be deemed issued as of the date of entry into force of the

WTO Agreement for the particular member imposing the measure."  SAA at 817.  Thus, the

legislative history shows that the United States successfully *opposed* the idea of automatic

termination, even in the case of orders that had *already* been in effect for more than five years at

the time the WTO Agreements entered into force.

Furthermore, the subsequent paragraph of the discussion in the SAA (which Resolute also omitted from its supplemental brief) is even more pertinent to this case, because it explicitly states that "national authorities may conduct a 'five-year' review to determine whether termination of the antidumping measure would be likely to lead to the continuation or recurrence of dumping and injury," and that "{t}he duty may remain in force pending the outcome of such a review, and may continue for *another* five years if the authorities make affirmative findings of likely continuation or recurrence of dumping and injury." *Id.* (emphasis added).

In addition, it is also important to note that while Resolute argues that Commerce improperly shifted the burden to Resolute, Resolute fails to explain what particular aspect of Commerce's conduct of the five-year reflects this alleged shift, or how this alleged action resulted from a misinterpretation of the Tariff Act. For example, Resolute argues that Commerce "puts undue emphasis on the exception (§ 1675(d)(2)(A) and (B)), resulting in a *de facto* presumption against respondents." Resolute Supp. Br. at 7. Apart from this bald assertion, Resolute does not explain how Commerce placed undue emphasis on the purported "exception" (which in reality is nothing of the sort), how Commerce applied this alleged *de facto* presumption in the review, or how the alleged presumption resulted from a misinterpretation of the statute.

Similarly, Resolute argues that the Government misinterprets the statutory framework for five-year reviews because the Government's brief stated that "{t}he purpose of a sunset review is to assess whether 'revocation of an antidumping . . . duty order . . . would be likely to lead to continuation or recurrence of dumping . . . and of material injury.'" Resolute Supp. Br. at 5 (citing Govt. Br. at 8). As an initial matter, even if the Government had misinterpreted the statutory framework in its brief, it would not automatically follow that Commerce did the same,

which is the relevant question for purposes of *Loper Bright*.  But the Government did not

misinterpret the statutory framework.  Both the statute and the SAA use almost precisely the

same formulation as the Government's brief in describing the purpose of five-year reviews.  *See*

19 U.S.C. § 1675(c)(1)(C) (stating that Commerce and the ITC "shall conduct a review to

determine . . . whether revocation of the . . . antidumping duty order . . . would be likely to lead

to continuation or recurrence of dumping . . . and of material injury"); SAA at 879 ("New

Section 751(c)(1) requires Commerce and the Commission to conduct a review no later than five

years after the issuance of an antidumping duty order . . . to determine whether revocation of the

order . . . would be likely to lead to continuation or recurrence of dumping . . . and injury.").[1]

In sum, Resolute's argument that Commerce misinterpreted the five-year review

provisions in the statute is without merit, and *Loper Bright* provides no basis for this Court to

overturn Commerce's determination.

**B.    Resolute Fails to Demonstrate that Commerce's Decision to Consider Revocation On an Order-Wide Basis Was Unlawful**

In addition to arguing that Commerce misinterpreted the statute, Resolute rehashes its

arguments about why it believes it is entitled to company-specific relief.[2]  Resolute argues that

the "best" interpretation of the statute allows for company-specific relief because "the Tariff Act

fundamentally conceives dumping as company-specific," "{n}othing in the plain language of the

sunset review statute precludes Commerce from making company-specific likelihood

---

[1] Resolute also argues that "{t}here is no discretion to maintain an order absent positive likelihood findings from both Commerce and the Commission."  Resolute Supp. Br. at 6.  But this is a red herring, because Commerce never claimed otherwise.  In this case, Commerce and the ITC both did reach affirmative findings.

[2] It bears noting that Resolute is inconsistent in discussing this issue, arguing alternatively that Resolute "must" be granted company-specific relief; that there is a question whether the statute "permits" a company-specific finding; that nothing in the statute "precludes" Commerce from making company-specific exclusions, etc.  *See, e.g.*, *id*. at 8.

determinations," and "penalizing a non-dumping company for the likely continued or resumed dumping of other respondents . . . does not appear to have been the intent of Congress." Resolute Supp. Br. at 8-9. Defendant U.S. Government and Defendant-Intervenors, including Sierra Pacific, have already explained in detail why this argument is meritless. *See* Sierra Pacific's Memorandum in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("Sierra Pacific's Response") at 7-11; Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record ("Def. Br.") at 10-12. It remains so, irrespective of *Loper Bright*.

As explained in Sierra Pacific's Response, in denying Resolute's request to be reviewed individually, on a company-specific basis, Commerce relied on the legislative history of the five-year review provisions in the Tariff Act. Specifically, the SAA and the House Report for the Uruguay Round Agreements Act ("URAA") both state explicitly that Commerce will make its determinations in five-year reviews "on an order-wide, rather than a company-specific, basis." Sierra Pacific's Response at 4-5 (quoting Brief from Wilmer Cutler Pickering Hale and Dorr LLP to Sec. of Commerce Pertaining to Sierra Pacific Rebuttal Brief, at 2, P.R. 43); *id.* at 7-8. This statement is a clear indication of Congress' actual intent when enacting the statute, and it directly contradicts Resolute's meritless interpretation of the statute.

Resolute's arguments about the "fundamental" nature of the Tariff Act are equally unavailing. Congress knew how to establish provisions for individual or company-specific review when it wanted to, for example in 19 U.S.C. § 1675(a)(2)(B)(i). This provision requires Commerce to "conduct a review under this subsection to establish an *individual* weighted average dumping margin or an *individual* countervailing duty rate (as the case may be) for such exporter or producer." (emphasis added). While Resolute claims the provisions of the Tariff Act

that call for individual review are indicative of Congress' overall approach, Resolute Supp. Br. at 8, the better reading of the text is that Congress chose to provide for individual review in the context of investigations and annual administrative reviews, but deliberately chose not to provide for individual review in five-year reviews.  *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision{s} cannot {} be supplied by the courts.'") (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012)); *Nichols v. United States*, 578 U.S. 104, 110 (2016) (declining to add text to statute because to do so "is not a construction of a statute, but, in effect, an enlargement of it by the court.") (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).

In sum, the statute unambiguously does not allow for individual, company-specific determinations in five-year reviews.[3]  As there is no ambiguity in the text, *Loper Bright* is

---

[3] In the alternative, if the Court finds there is ambiguity in the text, the Court should accord deference to Commerce's interpretation under *Skidmore*.  Commerce has had an established practice for over 25 years of making its determinations in five-year reviews on an order-wide basis.  *See Policies Regarding the Conduct of Five-Year ("Sunset") Reviews of Antidumping and Countervailing Duty Orders; Policy Bulletin*, 63 Fed. Reg. 18,871, 18,872 (Dep't Commerce Apr. 16, 1998) ("Consistent with the SAA at 879, and the House Report at 56, the Department will make its determination of likelihood on an order-wide basis.") ("*Policy Bulletin*").

Resolute fails to identify a single case in which Commerce has made a five-year review determination on a company-specific basis, and indeed Commerce has consistently rejected arguments that it should do so.  *See, e.g.*, *Lightweight Thermal Paper From Germany: Final Results of the First Full Sunset Review of the Antidumping Duty Order*, 79 Fed. Reg. 32,218 (Dep't Commerce June 4, 2014), and accompanying Issues and Decision Memorandum at 10 ("{W}e stress that the determination of likelihood is made on an order-wide basis.").

Commerce also expressly considered, and rejected, this option when it amended its five-year review regulations in 2011.  *See* Def. Br. at 14-15 (citing *Modification to Regulation Concerning the Revocation of Antidumping and Countervailing Duty Orders*, 76 Fed. Reg. 29,875, 29,877 (Dep't Commerce May 21, 2012) ("the use of the word 'may' {in 19 U.S.C. § 1675(d)(1)} indicates that revocations under this section of the {Tariff} Act, whether in whole or in part, are not required … and {Commerce} is not required to interpret it to include company-specific revocations.")).

inapposite, and the Court should affirm Commerce's decision to deny Resolute's request for company-specific relief.

C.    **Commerce Correctly Applied the Sunset Review Provision When It Determined that "Good Cause" Did Not Exist to Consider Resolute's Additional Information**

Resolute's final argument stems from one of Commerce's determinations in the original investigation. *See* Def. Br. at 10 ("Resolute misapprehends the purpose of sunset reviews and attempts to relitigate issues from individual segments."). As a threshold matter, if the Court agrees that revocation of an order must be "order-wide," as discussed above, then Resolute's arguments as to whether "good cause" existed for Commerce to consider "other factors" specific to Resolute are moot. *See* Sierra Pacific's Response at 11-12, 19.

Resolute argues that Commerce erred in rejecting its argument that "good cause" existed to consider other information in the sunset review because the methodology that Commerce used to calculate Resolute's dumping margins is "indicated, by current remand determinations, to be unlawful." Resolute Supp. Br. at 10-11. Resolute asserts that there are two issues of statutory interpretation underlying Commerce's decision that implicate *Loper Bright*: (1) Commerce's interpretation of "good cause" to encompass only the factors provided in § 1675a(c)(2), Resolute Supp. Br. at 11; and (2) Commerce's use of the DPM and its "adoption of a version of the Cohen's *d* test," Resolute Supp. Br. at 13. None of Resolute's arguments is novel, and they continue to fail.

1.    <u>The statute does not allow Commerce to reevaluate its dumping methodology or re-calculate dumping margins under § 1675a(c)(2).</u>

Resolute's argument about the interpretation of § 1675a(c)(2) mischaracterizes Commerce's decision and the Government's response brief. Resolute states:

> The Government's brief to this Court seems to have interpreted "good cause" to be limited to "other price, cost, market or economic factors as it deems relevant," Govt. Brief at 11, but under *Loper Bright*, the Court need not, and should not, defer to that interpretation. "Other factors" listed in the statute are not the defining parameters of "good cause;" rather, they are examples of factors other than the previously determined dumping margins and import volumes that may be considered in the sunset review where "good cause" has been shown.

Resolute Supp. Br. at 11. The Government did not argue that the "other factors" listed in § 1675a(c)(2) are the defining parameters of the term "good cause." Rather, Defendant stated, "if Congress had envisioned Commerce revisiting individual calculational decisions from earlier segments, it would not have limited the 'good cause' paragraph to '*other* price, cost, market, or economic factors as it deems relevant.'" Def. Br. at 11 (quoting 19 U.S.C. § 1675a(c)(2)) (emphasis in original).

This interpretation of § 1675a(c)(2) is reasonable and entirely consistent with the text: if good cause is shown, the statute requires Commerce to "also consider such other price, cost, market, or economic factors as it relevant." As is clear from the text, this provision does not provide authority for Commerce to consider information that is not a "price, cost, market, or economic factor," such as individual decisions by Commerce itself in earlier segments of a proceeding or so-called "evolving jurisprudence."

The legislative history confirms this interpretation of the text. Specifically, the SAA explains that "{n}ew section 752(c)(2) provides that, for good cause shown, Commerce also will consider *other information regarding price, cost, market or economic factors* it deems relevant. Such factors might include the market share of foreign producers subject to the antidumping proceeding; changes in exchange rates, inventory levels, production capacity, and capacity utilization; any history of sales below cost of production; changes in manufacturing technology

of the industry; and prevailing prices in relevant markets."  SAA at 890 (emphasis added).  Prior Commerce decisions are not included in this illustrative list and are not "price, cost, market or economic factors."  Resolute's argument to the contrary is without merit.

Thus, even if the Court accepts Resolute's argument that the "other relevant factors" listed in § 1675a(c)(2) are only examples, Resolute Supp. Br. at 12, the text unambiguously does *not* allow Commerce to reconsider its dumping methodology or re-calculate dumping margins under § 1675a(c)(2).  Further, because the text is unambiguous, this issue does not implicate *Chevron* deference, and thus *Loper Bright* is once again inapposite.

In the alternative, if the Court considers that the meaning of the text is ambiguous, the Court should nonetheless accord deference to Commerce's interpretation of § 1675a(c)(2) because the statute leaves the agency flexibility to decide what other factors are relevant and thus "to exercise a degree of discretion."  *Loper Bright*, 144 S. Ct. at 2263.  Specifically, the text states "{i}f good cause is shown, the administering authority shall also consider such other price, cost, market, or economic factors *as it deems relevant*."  19 U.S.C. § 1675a(c)(2) (emphasis added).  Similar to terms such as "appropriate" and "reasonable," *see Loper Bright*, 144 S. Ct. at 2263, this "good cause" language evinces an express desire by Congress to empower Commerce with the discretion to determine whether there is good cause to consider other factors.

The Court should therefore accord deference to Commerce's interpretation of § 1675a(c)(2) and affirm Commerce's decision not to re-consider Resolute's dumping margins.

2.    <u>*Loper Bright* does not implicate the lawfulness of Commerce's DPM.</u>

Next, Resolute asserts that "*Loper Bright* changes past practices of judicial deference such that the Court 'must exercise {its} independent judgment in deciding whether an agency has acted within its statutory authority.'"  Resolute Supp. Br. at 12.  But *Loper Bright* does not

purport to overturn *all* past cases where a court accorded deference to an agency's interpretation of the law.  Indeed, as discussed above, *Loper Bright* expressly recognizes that deference to agency interpretations is appropriate where Congress has delegated discretion to the agency and under *Skidmore*.  *Loper Bright*, 144 S. Ct. at 2262.

Moreover, Resolute fails to show that the prior decisions of this court and the CAFC affirming Commerce's DPM involved *Chevron*-style deference that could be implicated by *Loper Bright*.  In its supplemental brief, Resolute asserts only that the CAFC "previously subjected Commerce's methodology to a reasonableness standard," which it characterizes as a "deferential approach."  Resolute Supp. Br. at 13.  But *Loper Bright* acknowledges that an agency interpretation that is reasonable may merit deference.

Specifically, the Supreme Court stated that a statute may delegate authority to "regulate subject to the limits imposed by a term or phrase that 'leaves agencies with flexibility,'" *Loper Bright*, 144 S. Ct. at 2263 (quoting *Michigan*, 576 U.S. at 752), where such terms might include "appropriate" or "reasonable."  *Id*.  In *Mid Continent Steel & Wire*, the CAFC affirmed Commerce's DPM because the court found that the "statute prescribes preconditions for Commerce to use an {average-to-transaction or A-T} method in making the less-than-fair-value determination" and provides that, "if the preconditions are met, Commerce 'may'" use the A-T methodology; thus, the "{s}tatute leaves a choice for Commerce to make reasonably."  *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 672-73 (Fed. Cir. 2019).  Thus, this is an example of a statute that "empower{s} an agency to prescribe rules to 'fill up the details' of a statutory scheme," *Loper Bright*, 144 S. Ct. at 2263 (quoting *Wayman*, 10 Wheat. at 43), and Commerce's use of its DPM has repeatedly been affirmed by the courts as a reasonable exercise of that discretion.

Thus, this Court should reject Resolute's invitation to revisit prior cases that upheld Commerce's DPM as reasonable and otherwise in accordance with law.

## II.     CONCLUSION

For the foregoing reasons, the Court should uphold Commerce's determination as reasonable, supported by substantial evidence, and otherwise in accordance with law and reject Resolute's motion for judgment on the administrative record.

/s/ David J. Ross

David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6000

*Counsel for Defendant-Intervenor Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company*

- 15 -

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Order, dated July 10, 2024, the undersigned certifies that this brief complies with the page limitation requirement. The page count for Sierra Pacific Industries' Response Brief on Subsequent Authority is <u>15</u> pages.


<u>/s/ David J. Ross</u>
Signature of Attorney

<u>David J. Ross</u>
Name of Attorney

<u>Sierra Pacific Industries, including its subsidiary Seneca Sawmill Company</u>
Representative of

<u>July 25, 2024</u>
Date