Slip Op. 24-95

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RESOLUTE FP CANADA INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, and SIERRA PACIFIC INDUSTRIES, <br><br> Defendant-Intervenors. | Before: Jane A. Restani, Judge <br><br> Court No. 23-00095 |

**OPINION AND ORDER**

Dated: August 19, 2024

[Sustaining the U.S. Department of Commerce's final results of the first expedited sunset review of the antidumping duty order on softwood lumber from Canada.]

    Elliot J. Feldman, Ronald J. Baumgarten, Jr., Michael S. Snarr, and Tung A. Nguyen, Baker & Hostetler, LLP, of Washington, DC, for the plaintiff Resolute FP Canada Inc.

    Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant United States.  With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Deputy Director.  Of Counsel on the brief was Jared M. Cynamon, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

    Zachary J. Walker, Andrew W. Kentz, and Jessica M. Link, Picard, Kentz & Rowe, LLP, of Washington, DC, for the defendant-intervenor Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.

    David J. Ross, Jeffrey I. Kessler, and Stephanie E. Hartmann, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, of Washington DC, for the defendant-intervenor Sierra Pacific Industries.

Restani, Judge: Before the court are the United States Department of Commerce's ("Commerce") Final Results of the Expedited First Sunset Review of the Antidumping Duty Order on softwood lumber from Canada.  See Certain Softwood Lumber Products from Canada: Final Results of the Expedited First Sunset Review of the Antidumping Duty Order, 88 Fed. Reg. 20,479 (Dep't Commerce Apr. 6, 2023) ("Final Results") and accompanying Issues and Decision Memorandum for the Final Results of the Expedited First Sunset Review of the Antidumping Duty Order on Softwood Lumber from Canada, A-122-857, Sunset Review (Dep't Commerce Mar. 31, 2023) ("IDM").  Plaintiff Resolute FP Canada Inc. ("Resolute"), a foreign producer of softwood lumber, challenges Commerce's determination that revocation of the antidumping order would be likely to lead to continuation or recurrence of dumping.  Broadly, Resolute argues that Commerce's methodology and use of the Cohen's d test in the original investigation was flawed, and that without it Resolute's dumping margin would have been zero.  Accordingly, Resolute argues that Commerce should have used its discretion in the expedited sunset review to amend this error, report a zero-dumping margin, and revoke the order as to Resolute.[1]  The government asserts that Commerce's use of the Cohen's d test has been repeatedly upheld by this court and the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), and thus Commerce was correct to reject Resolute's arguments.

---

[1] Resolute asserts that Commerce has the discretion to revoke an antidumping order on a company-specific basis, and that Commerce should have done so here.  Rule 56.2 Mot. for J. on Agency R. by Pl. Resolute at 22, ECF No. 28 (Nov. 6, 2023) ("Resolute Br.").  This argument is premised on Resolute's assertion that absent the use of Cohen's d in Commerce's methodology, its rate would have been zero or de minimis.  Id. at 18.  The court concludes, however, that Commerce's use of Cohen's d was reasonable here.  See infra at pp. 6–10.  Thus, assuming arguendo that Commerce can revoke an AD order on a company specific basis, the conditions for such theoretical revocation would not be met here as Resolute would have a rate greater than the de minimis standard.  Accordingly, Commerce's decision not to recommend revocation of the AD order as to Resolute was not arbitrary or capricious.

## BACKGROUND

I.        **The History of the Relevant Antidumping Order**

On November 25, 2016, the domestic softwood lumber industry, namely the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION"), filed antidumping petitions with Commerce and the U.S. International Trade Commission ("ITC") concerning imports of softwood lumber from Canada. Commerce investigated, and issued a final affirmative determination that subject merchandise was being sold in the United States at less-than-fair value. See Certain Softwood Lumber Products From Canada: Initiation of Less-Than-Fair-Value Investigation, 81 Fed. Reg. 93,892 (Dep't Commerce Dec. 22, 2016); Certain Softwood Lumber Products From Canada: Final Affirmative Determination of Sales at Less Than Fair Value and Affirmative Final Determination of Critical Circumstances, 82 Fed. Reg. 51,806 (Dep't Commerce Nov. 8, 2017). Subsequently, Commerce published an antidumping duty ("AD") order, assigning Resolute a weighted average dumping margin of 3.2 percent. See Certain Softwood Lumber Products From Canada: Antidumping Duty Order and Partial Amended Final Determination, 83 Fed. Reg. 350 (Dep't Commerce Jan. 3, 2018). Since the original AD order, Resolute has participated in each annual administrative review in differing capacities, as either a mandatory respondent or a non-examined company. See Rule 56.2 Mot. for J. on Agency R. by Pl. Resolute at 5–7, ECF No. 28 (Nov. 6, 2023) ("Resolute Br."). At issue here, is the first expedited sunset review of this AD order.

II.       **Framework of Sunset Reviews and Expedited Sunset Reviews**

Sunset reviews of duty orders are mandated reviews that occur five years after the publication of an antidumping duty order to determine whether termination of the order would be likely to lead to continuation or recurrence of dumping or injury. 19 U.S.C. § 1675(c) (2018). If

Commerce finds no likelihood of continuation or recurrence of dumping, the order must be revoked.² 19 U.S.C. § 1675(d). The statute provides that Commerce publish a notice of initiation of a sunset review no later than thirty days before the fifth anniversary of the date of publication of an antidumping order. 19 U.S.C. § 1675(c)(2). Interested parties may then submit information expressing their willingness to participate in the review, state the likely effects of revocation, and provide any other information or industry data they deem relevant. Id. If no interested party responds, the order is revoked. 19 U.S.C. § 1675(c)(3)(A). If interested parties respond, Commerce will either conduct a full or expedited review depending on the adequacy of said response.³ 19 U.S.C. § 1675(c)(3)(B); see Neenah Foundry Co. v. United States, 25 CIT 287, 142 F. Supp. 2d 1008 (2001).

Expedited reviews differ from full-fledged sunset reviews, which involve more fact gathering. See AG der Dillinger Huttenwerke v. United States, 26 CIT 298, 305, 193 F. Supp. 2d 1339, 1348 (2002) (stating that "in a 'full review,' Commerce must engage in an analysis that is at least somewhat more searching than simply continuing to apply the [duty] rate determined in the original investigation"). Expedited reviews, by contrast, are based on facts available, and normally rely on calculated dumping rates from prior determinations and information contained in the parties' responses.⁴ See 19 C.F.R. § 351.308(f) (2022).

---

² Sunset reviews also involve separate proceedings conducted by the ITC which determines whether material injury to a U.S. industry is likely to continue or recur if an order is revoked. See 19 U.S.C. § 1675a. Resolute does not challenge the ITC proceedings. See Resolute Br. at 43 n.15.
³ Under the applicable regulation, a response may be inadequate if the substantive responses from respondent interested parties account for 50 percent or less of the total exports of subject merchandise to the United States over the five calendar years preceding the year of the publication of the notice of initiation. See 19 C.F.R. § 351.218 (2022).
⁴ Expedited reviews are justified because "[i]f parties provide no or inadequate information in response to a notice of initiation, it is reasonable to conclude that they would not provide adequate information if the agencies conducted a full-fledged review." Uruguay Round Agreements Act,

Commerce is required to consider certain factors in its sunset review of an AD order: namely, the weighted average dumping margins determined in the investigation and subsequent reviews, and the volume of imports of the subject merchandise for the period before and the period after the issuance of the antidumping duty order. 19 U.S.C. § 1675a(c)(1); see also Uruguay Round Agreements Act, Statement of Administrative Action, H.R.Rep. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4213–14 ("SAA"). If "good cause" is shown, Commerce shall also consider such other price, cost, market, or economic factors as it deems relevant. 19 U.S.C. § 1675a(c)(2). Commerce then reports to the ITC the magnitude of dumping that is likely to prevail if the order is revoked. 19 U.S.C. § 1675a(c)(3). Normally, Commerce will select the dumping margin determined in the original investigation because that is the only calculated rate that reflects the behavior of exporters without the discipline of an order in place. SAA at 4214.

### III. The Expedited Sunset Review at Issue

On December 1, 2022, Commerce initiated a sunset review of the AD order on softwood lumber from Canada as required by 19 U.S.C. § 1675(c). See Initiation of Five-Year (Sunset) Reviews, 87 Fed. Reg. 73,757 (Dep't Commerce Dec. 1, 2022). The COALITION and Sierra Pacific Industries ("Sierra Pacific") (collectively, "defendant-intervenors") filed their notices of intent to participate in the sunset review as domestic interested parties. Notice of Intent to Participate, P.R. 10 (Dec. 5, 2022); Notice of Intent to Participate in Sunset Review, P.R. 21 (Dec. 16, 2022). Similarly, Resolute submitted a substantive response as a respondent interested party. Substantive Response of Resolute, P.R. 28–29, C.R. 1–2 (Jan. 5, 2023). No other respondent interested party submitted a substantive response. See IDM at 2. Commerce determined that the

---

Statement of Administrative Action, H.R.Rep. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4206 ("SAA").

responses from respondent interested parties were inadequate and thus conducted an expedited sunset review.[5] Id.

On March 3, 2023, Resolute submitted a case brief arguing that Commerce should find no likelihood of continuation or recurrence of dumping as to Resolute due to alleged flaws with the Cohen's d methodology underlying previous findings of dumping. Resolute's Case Brief at 7, P.R. 36 (Mar. 3, 2023). Commerce disagreed, finding that the use of the Cohen's d test was reasonable and in accordance with law. IDM at 10. Deciding to follow its practice of "select[ing] the weighted-average dumping margins from the final determination in the original investigation," Commerce reported to the ITC that "revocation of the Order would be likely to lead to the continuation or recurrence of dumping, and the magnitude of the weighted-average dumping margin likely to prevail is up to 7.28 percent." Final Results, 88 Fed. Reg. at 20,480; IDM at 22. Commerce did not report a margin specific to Resolute. See IDM.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2018). The court shall hold unlawful any determination, finding, or conclusion in an expedited sunset review unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(ii) (2018).

## DISCUSSION

**A.     The Cohen's d Test Has Not Been Overruled By Recent Jurisprudence**

---

[5] Here, Resolute was the only respondent interested party that responded to the notice of initiation. IDM at 1–2. Thus, to provide an adequate response, Resolute alone would have needed to account for more than 50 percent of total exports of subject merchandise to the United States from Canada during the five years preceding the year of the initiation of this sunset review. See IDM at 2; 19 C.F.R. § 351.218(e)(1)(ii)(A) (2022). Commerce determined that Resolute failed to meet this standard and Resolute did not dispute that determination. IDM at 2.

Resolute contends that "[c]hanges in jurisprudence" have illustrated that Commerce's differential pricing methodology ("DPM" or "methodology") underlying the 7.28 percent rate is flawed, and that Commerce's refusal to reconsider the rate was arbitrary and capricious. Resolute Br. at 10–11. Specifically, Resolute takes issue with the use of the "Cohen's d test" in Commerce's methodology and asserts that had Commerce not used a methodology that utilizes said test, Resolute's rate would have been zero.[6] Id. at 1–3, 15. The government responds that any concerns the Federal Circuit has had with the Cohen's d test were specific to the facts of those cases, and that neither the Federal Circuit nor this court have "set aside Commerce's use of the Cohen's d test." Def.'s Opp'n to Pl.'s Mot. for J. on the Administrative R. at 16, ECF No. 32 (Feb. 26, 2024) ("Gov. Br.").

In an antidumping investigation, Commerce typically compares "the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise" unless it determines another method is appropriate. 19 U.S.C. § 1677f-1(d)(1)(A)(i); 19 C.F.R. § 351.414(c)(1) (2022). This is referred to as an average-to-average ("A-to-A") calculation as it compares the average normal prices in a producer's home market to the average export prices in the United States. See Apex Frozen Foods Priv. Ltd. v. United States, 862 F.3d 1337, 1340–41 (Fed. Cir. 2017). The A-to-A calculation, however, can fail to identify dumping in instances of "targeted" or "masked" dumping, which occurs when an exporter sells at a dumped price to particular customers or regions, while selling at higher prices to other customers or regions. See id. Higher-priced products can thereby offset or mask dumped products in an A-

---

[6] Resolute fleetingly challenges Commerce's use of the ratio and meaningful difference tests in its differential pricing methodology but fails to substantiate these arguments in binding law. Resolute Br. at 16–17, 35–36; Resolute's Case Br. at 34–35, P.R. 36 (Mar. 3, 2023); see also infra at 13–15.

to-A calculation.

To address this concern, Commerce may use an average-to-transaction ("A-to-T") calculation instead of A-to-A if certain criteria are met.[7] See 19 U.S.C. § 1677f-1(d)(1)(B). An A-to-T calculation compares the "weighted average of the normal values to the export prices . . . of individual transactions." Id. To ensure that the statutory criteria allowing an A-to-T calculation are met, Commerce utilizes its differential pricing methodology consisting of three tests: (1) the Cohen's d test;[8] (2) the ratio test;[9] and, (3) the meaningful difference test.[10] See Apex Frozen Foods Priv. Ltd. v. United States, 144 F. Supp. 3d 1308, 1323–32 (CIT 2016), aff'd, 862 F.3d 1337 (Fed. Cir. 2017). Further, along with these calculations, Commerce employs a method of "zeroing"[11] to "precisely examine[] the impact of the amount of dumping which is hidden." See

---

[7] The statute allows Commerce to compare "the weighted average of the normal values to the export prices . . . of individual transactions for comparable merchandise, if-- (i) there is a pattern of export prices . . . for comparable merchandise that differ significantly among purchasers, regions or periods of time, and (ii) [Commerce] explains why such differences cannot be taken into account using [the A-to-A method]." 19 U.S.C. § 1677f-1(d)(1)(B)(i)–(ii) (emphasis added).

[8] Commerce performs the Cohen's d test by calculating the difference between the weighted-average sales prices of a test group and its corresponding comparison group, and subsequently comparing that difference in relation to the pooled standard deviation of the two groups. Apex Frozen Foods Priv. Ltd. v. United States, 144 F. Supp. 3d 1308, 1324 (CIT 2016). The resulting value is known as the Cohen's d coefficient. Id. Commerce considers test group sales to pass the Cohen's d test if the resulting Cohen's d coefficient is equal to or greater than 0.8, which Commerce deems to be a strong indication of significant price differences. Id.

[9] Under the ratio test, if 33% of respondent's sales or less pass the Cohen's d test, Commerce uses the A-to-A method, and if 66% or more pass, Commerce uses the A-to-T method. Stupp Corp. v. United States, 619 F. Supp. 3d 1314, 1322 (CIT 2023). In those cases where between 33% and 66% of the value of a respondent's U.S. sales pass the Cohen's d test, Commerce applies a hybrid methodology. Id.

[10] If Commerce has not selected the A-to-A method for all sales, it applies the "meaningful difference" test to determine whether the A-to-A method could nevertheless account for the disparate pricing. Stupp, 619 F. Supp 3d at 1322–23.

[11] "Zeroing" is a practice by which negative dumping margins (i.e., margins of sales of merchandise sold at nondumped prices) are given a value of zero and only positive dumping margins (i.e., margins for sales of merchandise sold at dumped prices) are aggregated. Union Steel v. United States, 713 F.3d 1101, 1104 (Fed. Cir. 2013).

IDM at 14. These steps, all together, determine whether a pattern of significant price differences exist among purchasers, regions, or periods of time such that an A-to-T calculation is warranted. See Apex, 862 F.3d at 1342 n.2.

In the underlying investigation, Commerce "calculated a margin of 3.20 percent [as to Resolute] using its standard A-to-T comparison methodology." IDM at 18. Commerce explained that the A-to-A method could not account for the pattern of significant price differences among Resolute's sales and that the A-to-T method was therefore warranted. Id. at 13. Nevertheless, several opinions by the Federal Circuit and this court have questioned Commerce's choice of methodology in certain circumstances. See, e.g., Stupp Corp. v. United States, 5 F.4th 1341, 1357–60 (Fed. Cir. 2021) (questioning the usefulness of Commerce's application of the Cohen's d test to data that do not satisfy the assumptions on which the test is based). Thus, the question before the court is whether recent jurisprudence regarding specific applications of Commerce's DPM—the first step of which is the Cohen's d test—undermines Commerce's use of DPM in the original investigation that Commerce relied on in the sunset review.

Based upon the present record, the court cannot conclude that Commerce abused its discretion in carrying out its statutory objective in this sunset review. The two cases Resolute primarily relies upon are Stupp and Mid Continent. See Resolute Br. at 28–31. As Commerce illustrates in the IDM, each of these are distinguishable. See IDM at 16–18. In Stupp, the Federal Circuit was concerned with the efficacy of Cohen's d in specific statistical scenarios; namely, when assumptions regarding sample size, normality, and distribution were in question.[12] See

---

[12] Resolute does not allege any of these statistical assumptions were violated here. In its supplemental briefing, Resolute reaffirms its objection to Commerce's use of Cohen's d in its methodology at all, rather than under specific statistical circumstances. Resolute Resp. to Questions of the Ct. at 5–6, ECF No. 57 (Aug. 5, 2024) (stating that, "[t]he issue here is the methodology, not the peculiar facts of any particular case," and that "[t]he differences from one

Stupp, 5 F.4th at 1357–60.  The Federal Circuit thus remanded the case to Commerce for further explanation, and this court has affirmed said explanation.  Id.  In Mid Continent, the Federal Circuit remanded due to academic literature undermining Commerce's preference for using a simple average in the denominator of the Cohen's d test.  Mid Continent Steel & Wire, Inc. v. United States, 31 F.4th 1367 (Fed. Cir. 2022) (holding that Commerce needs a reasonable justification for departing from what the published literature teaches about Cohen's d).  No such academic literature exists on this record,[13] and this court has subsequently affirmed Commerce's updated explanation defending its preference for using a simple average.  See Mid Continent Steel & Wire, Inc. v. United States, 680 F. Supp. 3d 1346 (2024).

Resolute's reliance on Federal Circuit precedent to question the reasonableness of Commerce's methodology is overstated.  If and until the Federal Circuit invalidates the standard use of Cohen's d in Commerce's DPM, Commerce is free to utilize it if adequately explained.  See, e.g., Apex, 144 F. Supp. 3d at 1322 (finding Commerce's adoption of the alternative A-to-T methodology as not arbitrary); Stupp, 619 F. Supp. 3d at 1328 (holding Commerce's use of Cohen's d, when applied as a component of its differential pricing analysis, to be reasonable); NEXTEEL Co. v. United States, 676 F. Supp. 3d 1345, 1357 (CIT 2023) (holding that Commerce

---

case to another . . . are irrelevant").  Because the Federal Circuit has not invalidated the use of Cohen's d in Commerce's DPM, Resolute's argument fails.

[13] Although Resolute argues that the Hedges Report constitutes academic literature, it is not a published paper but instead a report specially prepared for the Government of Canada.  See Review and Analysis of the Cohen's d Test as Used in the U.S. Department of Commerce's Differential Pricing Methodology by Prof. Larry V. Hedges, ECF No. 40 at Ex. 9 (May 16, 2024) ("Hedges Report").  As the court later explains, for the purposes of an expedited sunset review Commerce has sufficiently addressed and refuted the claims made by the report here.  See infra pp. 15–17.  This court does not address whether this explanation would be sufficient during an initial investigation, annual review, or full sunset review.

adequately explained how its use of the Cohen's d test was reasonable). Accordingly, the court concludes that recent precedent does not prohibit the standard application of the Cohen's d test.

### B. There Was Not Good Cause to Consider Other Factors

Resolute argues that Federal Circuit precedent and a submitted expert report questioning the "reasonableness" of Commerce's application of Cohen's d constitutes "good cause" under 19 U.S.C. § 1675a(c)(2) for Commerce to consider "other factors" in this sunset review. Resolute Br. at 25–35; 19 U.S.C. § 1675a(c)(2) (providing that "[i]f good cause is shown, [Commerce] shall also consider such other price, cost, market, or economic factors as it deems relevant").[14] Resolute argues it made the requisite showing of good cause for Commerce to abandon its reliance on the dumping rate calculated in the original investigation using an A-to-T methodology and find a zero dumping margin as to Resolute. Resolute Br. at 25–27.

The government responds that Resolute's disagreement with Commerce's choice of using A-to-T methodology in the original investigation does not amount to "good cause" to reconsider it in an expedited sunset review. Gov. Br. at 15. The government argues that Commerce's methodology, including the use of Cohen's d, was lawful and remains intact even after recent judicial decisions. Id. at 15–17; see also Sierra Pacific Industries' Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. at 20, ECF No. 33 (Feb. 26, 2024) (arguing that "unsettled case law that involves ongoing judicial and administrative proceedings does not meet the high threshold for "good cause").

---

[14] This list of factors is illustrative, and Commerce will analyze such information on a case-by-case basis. SAA at 4214.

Although the statute does not define what constitutes "good cause" in a sunset review, the Statement of Administrative Action[15] ("SAA") accompanying this statute states that interested parties may "provide information indicating that observed patterns regarding dumping margins and import volumes are not necessarily indicative of the likelihood of dumping. The list of ["other"] factors is illustrative, and the Administration intends that Commerce will analyze such information on a case-by-case basis." SAA at 4214. In prior proceedings, Commerce has rejected certain "good cause" arguments which it determined to be speculative or unsupported. See, e.g., Preliminary Results Issues and Decision Memorandum for the Full Sunset Review of the Antidumping Duty (AD) Order on Lightweight Thermal Paper from Germany, A-428-840, Sunset Review (Dep't Commerce Feb. 10, 2014).

In the expedited sunset review, Commerce rejected Resolute's argument that ongoing litigation at the Federal Circuit should stop Commerce from using Cohen's d in its DPM and found that "the methodology [] relied on to calculate Resolute's margin in the underlying investigation of the Order was in accordance with the law" because Commerce had used "standard A-to-T comparison methodology." IDM at 18.

Commerce's decision that there was not "good cause" to abandon Resolute's dumping margin calculated in the original investigation was not arbitrary and capricious. As the court has already concluded, the Federal Circuit and the CIT have not set aside Commerce's use of Cohen's d in Stupp, Mid Continent, or any subsequent decision at the time of this opinion. See supra at pp. 9–10. Accordingly, Resolute's argument that ongoing litigation invalidates (or will invalidate)

---

[15] Congress has recognized the SAA as "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements." 19 U.S.C. § 3512(d) (2018); see Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1310 (Fed. Cir. 2004).

Commerce's use of Cohen's d is merely speculative. In the light of the line of cases from this court affirming Commerce's use of Cohen's d and its larger DPM, the court concludes that Commerce's decision to not find "good cause" on this basis was reasonable.

### C. Extraordinary Circumstances Were Not Present

Similar to its argument under "good cause," Resolute asserts that "extraordinary circumstances" exist to allow Commerce to rely on dumping margins other than those calculated in prior determinations.[16] Resolute Br. at 43–44 (citing SAA at 4214). The extraordinary circumstances here, Resolute contends, are, again, the recent challenges to Cohen's d in ongoing litigation at the Federal Circuit and the CIT. Id. Further, Resolute argues Commerce failed to address this argument in the IDM. Id. at 45. The government contends that Commerce addressed these arguments by finding a lack of "good cause" on the same issues and that "extraordinary circumstances," therefore, do not and cannot exist. Gov. Br. at 19–21.

The "extraordinary circumstances" exception cited by Resolute is found in the legislative history accompanying 19 U.S.C. § 1675a(c)(2): "[o]nly under the most extraordinary

---

[16] Additionally, Resolute highlights multiple World Trade Organization ("WTO") decisions as relevant to its claim of "extraordinary circumstances." Resolute Br. at 44–45. In these instances, however, Commerce instituted a policy specific to those cases to not utilize methods that were inconsistent with the WTO. See Certain Preserved Mushrooms from Chile, India, Indonesia, and the People's Republic of China: Final Results of the Expedited Third Sunset Reviews of the Antidumping Duty Orders, 80 Fed. Reg. 39,053 (Dep't Commerce July 8, 2015) ("[I]n accordance with the Final Modification for Reviews, the Department did not rely on weighted-average dumping margins that were calculated using a WTO-inconsistent methodology."); Corrosion-Resistant Carbon Steel Flat Products from Germany and the Republic of Korea: Final Results of Full Sunset Reviews, 77 Fed. Reg. 72,827 (Dep't Commerce Dec. 6, 2012) ("The Final Modification of Reviews states that the Department will not rely on a rate based on a methodology found to be WTO-inconsistent."). Here, however, Commerce has not instituted any policy or statement to condemn A-to-T analysis, Commerce's methodology, or the use of Cohen's d. On the contrary, Commerce routinely implements—and the government successfully defends—these methods in both this court and in the Federal Circuit. Accordingly, it was reasonable here for Commerce to distinguish those reviews and disregard the WTO opinions.

circumstances should Commerce rely on dumping margins . . . other than those it calculated and published in its prior determinations."[17]  SAA at 4214 (emphasis added).  "Extraordinary circumstances" have been found by Commerce where there have been explicit changes in departmental policy or jurisprudence, or when outside factors create a very high likelihood that existing margins are inaccurate.  See Certain Preserved Mushrooms from Chile, India, Indonesia and the People's Republic of China: Final Results of Expedited Third Sunset Reviews of the Antidumping Duty Orders, 80 Fed. Reg. 39,053 (Dep't Commerce July 8, 2015); and Corrosion-Resistant Carbon Steel Flat Products From Germany and the Republic of Korea: Final Results of Full Sunset Reviews, 77 Fed. Reg. 72,827 (Dep't Commerce Dec. 6, 2012) (finding that Commerce's announcement that it would not rely on certain dumping margins found to be WTO inconsistent amounted to "extraordinary circumstances," leading Commerce to calculate new margins); see also Government of Uzbekistan v. United States, 25 CIT 1084, 1088 (2001) (stating that the dissolution of the Soviet Union and subsequent creation of Uzbekistan as a country amounted to "extraordinary circumstances" requiring Commerce to "consider factors outside the norm").

Assuming arguendo that a change in law could constitute "the most extraordinary circumstances," such circumstances are not present here.  The Federal Circuit has not set aside Commerce's use of Cohen's d the way Resolute alleges.  The court rejects Resolute's argument that the circumstances in Uzbekistan (involving the fall of the Soviet Union and birth of Uzbekistan as a country) "are no more extraordinary than Commerce's continued insistence on an

---

[17] The regulation pertaining to full sunset reviews parallels this language, stating that "[e]ven where the Department conducts a full sunset review, only under the most extraordinary circumstances will the Secretary rely on a [duty] rate . . . other than those it calculated and published in its prior determinations . . . ."  19 C.F.R. § 351.218(e)(2)(i) (2022).

unreasonable methodology." Pl. Resolute Reply in Supp. of its Rule 56.2 Mot. for J. on the Agency R. at 21, ECF No. 38 (May 2, 2024). As previously discussed, Commerce's use of Cohen's d has been repeatedly upheld by this court and the Federal Circuit. Commerce also adequately explained its reasoning for relying upon the original margin calculations, which utilized Cohen's d, in this expedited sunset review. See IDM at 10–19. For the aforementioned reasons, the court concludes that Commerce did not abuse its discretion in finding that there were no "extraordinary circumstances" to justify abandoning its prior methodology in place of Resolute's preferred methodology.

D. **Commerce Adequately Addressed the Expert Report**

Resolute contends that Commerce failed to address statistical literature challenging the "reasonableness of Commerce's Cohen's d test" that was placed on the record.[18] Resolute Br. at 34–36, 41–43. The government argues that "no academic literature on the record" exists that might warrant "good cause," and that Resolute's arguments were adequately addressed by Commerce in the IDM. Gov. Br. at 17.

---

[18] Resolute also contends that WTO rulings on certain applications of its methodology amount to "good cause" and were left unaddressed. Resolute Br. at 35–36. Resolute, however, admits that WTO decisions are not binding on this court. See 19 U.S.C. § 1516a(b)(3); Dillinger France S.A. v. United States, 981 F.3d 1318, 1325–26 (Fed. Cir. 2020) ("WTO decisions are 'not binding on the United States, much less this court.'") (citation omitted); Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343, 1349 (Fed. Cir. 2005) ("[W]e therefore refuse to overturn Commerce's zeroing practice based on any ruling by the WTO or other international body unless and until such [a report] has been adopted pursuant to the specified statutory scheme."). As previously stated, the Federal Circuit and the CIT have recently and repeatedly affirmed the use of zeroing in A-to-T analysis. "Good cause" will not be found in this case when the application of zeroing is supported by binding precedent. Resolute also argues that Commerce is "[a]t a minimum" required to "explain why it rejected the WTO jurisprudence rather than dismiss it because it is not binding." Resolute Br. at 36. Commerce, however, need not address every argument or explain every possible reason for its conclusions. See Synopsys, Inc. v. Mentor Graphics Corp., 814 F.3d 1309, 1322 (Fed. Cir. 2016). Thus, Commerce was not required to explicitly address the WTO jurisprudence after already considering precedent from the CIT and the Federal Circuit.

In an administrative review, an agency is not free to dismiss relevant evidence. See Seneca Foods Corp. v. United States, 663 F. Supp. 3d 1325, 1339–40 (CIT 2023). Nevertheless, Commerce does not need to address "every argument raised by a party or explain every possible reason supporting its conclusion." See Synopsys, Inc. v. Mentor Graphics Corp., 814 F.3d 1309, 1322 (Fed. Cir. 2016)); see Al Ghurair Iron & Steel LLC v. United States, 65 F.4th 1351, 1362 (Fed. Cir. 2023) ("While Commerce must reasonably explain its findings, its explanations [are only required to be] sufficient to afford adequate review.").

Resolute submitted an expert report "exposing issues in Commerce's use of the Cohen's d test when performing antidumping calculations." Resolute Br. at 34. The report discusses several components of Cohen's d at length, including the importance of same standard deviations in a population or sample and statistical assumptions such as normality and equal variances. See Hedges Report.

Commerce did not explicitly address the Hedges Report in its sunset review. See IDM. Commerce did respond, however, to the substance of the report in the IDM and included analysis of ongoing case law. See IDM at 8–15 (discussing at length the justification for using the A-to-T methodology and how it utilizes the precursor Cohen's d test and accounts for potential deficiencies); see also IDM at 16–18 (discussing Stupp, 619 F. Supp. 3d at 1323–26 (explaining that Cohen's d operates "together with the ratio test and the 'meaningful difference' test to hedge against potential inaccuracies due to standard deviation differences in populations") and Mid Continent, 380 F. Supp 3d at 1356–57 ("Commerce has explained its rationale as based on the equal reliability of both full populations and equal sized samples. It has also explained that standard deviation is specific to the mean to which it relates.")).

The court concludes that considering this is an expedited sunset review, Commerce

adequately addressed the concerns raised by the Hedges Report.[19]  The Hedges Report questions components of Cohen's d such as standard deviation requirements and other statistical assumptions.  See Hedges Report.  These components are discussed at length by Commerce in the IDM, and by the cases that Commerce relied upon for support in the IDM.  Accordingly, the Hedges Report was adequately addressed by Commerce.

## CONCLUSION

In sum, Commerce did not abuse its discretion in conducting this expedited sunset review based on facts available.  Per its normal practice, Commerce relied upon dumping margins calculated in the original investigation in its determination of continuance or recurrence of dumping.  Resolute's challenge to Commerce's DPM utilized in the original investigation based on ongoing litigation at the Federal Circuit is strained—the Federal Circuit has not invalidated the use of Cohen's d full stop, the way Resolute alleges.  If and until such a decision is issued, Commerce's reliance upon its previously utilized methodology in the context of an expedited sunset review does not amount to an abuse of discretion.

For the foregoing reasons, Commerce's Final Results are in accordance with law and are therefore sustained.  Judgment will enter accordingly.

/s/Jane A. Restani  
Jane A. Restani, Judge

Dated: August 19, 2024  
       New York, New York

---

[19] The court does not address whether this explanation would be sufficient during an initial investigation, annual review, or full sunset review.